# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7th FLOOR • NEW YORK, NY 10022 • PH. 212-446-2300 • FAX 212-446-2350

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 11, 2016

**ENDORSED**

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JUN 13 2016

**BY ELECTRONIC MAIL**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States v. Jason Galanis, et al.*, 16 Cr. 371 (RA)

Dear Judge Abrams:

    We represent Devon Archer, one of the defendants in the above-referenced case. I write to respectfully request the Court's permission for Mr. Archer to take a business trip to Italy, to attend Board of Director meetings for two associated companies with which Mr. Archer is involved. The Court's Pretrial Services Office consents to this request, but the Government objects. For the reasons that follow, I respectfully submit that Mr. Archer – who is absolutely no risk of flight – should be allowed to take this important trip, which is essential to the position from which Mr. Archer derives his income.

    The proposed trip would be from June 17 to June 20 (with meetings outside Rome on the 18th, 19th, and 20th) to attend Board of Directors and other business meetings for two affiliated energy companies of which Mr. Archer serves as a director. Mr. Archer has provided an itinerary to his Pretrial Services Officer, who as noted consents to this request. A copy of Mr. Archer's proposed airline and meeting space/hotel information is attached as Exhibit A, which we respectfully request be filed under seal.

    Mr. Archer's compensation as a board member from these two related energy companies is his primary source of outside income. As a result of being charged in this case, Mr. Archer has already voluntarily resigned or taken leaves from a number of other corporate boards on which he serves (mostly in an unpaid capacity), and is in the process of unwinding or restructuring a number of investments. While he is by no means without resources, the payments he receives from the energy companies represent his only real ongoing *income*, and are essential to paying his and his family's daily expenses. Since being arrested, Mr. Archer has already missed one critical event: an annual conference on renewable energy hosted by the companies in Europe earlier this month, at which the Board of Directors also met. In order for him to maintain his position as a Director, it is important that he be able to participate in at least some of their Board meetings. Indeed, while one of the energy companies will be holding a regular meeting of

the Board of Directors in Italy, the other intends to convene a special meeting of the Board specifically to debrief Mr. Archer with respect to developments resulting from the renewable energy conference and the quarterly Board meeting that was held earlier in June. Mr. Archer and the other Board members also have meetings scheduled with members of senior management and counsel, as well as other meetings concerning the businesses.

The likely duration of this case also makes it important for Mr. Archer to maintain his existing business relationships. The next pretrial conference in this case is set for November, and as the Court explained, Your Honor intends to first set a motion schedule at that time. Thus, trial is likely to be a year away or longer. One of the principle reasons articulated in Court this week for the somewhat protracted schedule is that three of the defendants in this case – Jason Galanis, John Galanis, and Gary Hirst – are also indicted in a separate case pending before Judge Castel that is scheduled for trial in September. Mr. Archer is not part of that case, and is eager to resolve this one. But if, as seems likely, this case will remain pending for a year or more, it is simply not tenable for Mr. Archer to lose his main source of income.

Most importantly, Mr. Archer is absolutely no risk of flight. Alone among the defendants charged in this case – as the Government noted in Court earlier this week – Mr. Archer already is permitted to travel without restriction in the continental United States. That sort of travel is also necessary for Mr. Archer's business, but the fact that the Court imposed and the Government consented to the condition speaks volumes about their faith in Mr. Archer's compliance.

That faith is well-founded. Mr. Archer has known about this investigation for months, and has been entirely cooperative. On the very day that the Government first identified Mr. Archer as a "target" of its investigation – just a week prior to his arrest – Mr. Archer was out of the country on business. He immediately returned to the United States, that very day. Mr. Archer also made a substantial production of documents to the Government on the same day the criminal complaint was sworn out, and though it was sealed, the Government had made plain that it intended to charge Mr. Archer that week. And every morning on the week that he expected to be arrested, Mr. Archer sat on his front stoop at 6 AM waiting to surrender himself to law enforcement. (He waited outside principally so that his wife and three small children would not be frightened by an arrest in the home). Even *after* Mr. Archer was arrested, his defense team met with the Government to provide information and documents to attempt to convince them that an indictment of Mr. Archer was not in the interest of justice. In short, Mr. Archer – who has no criminal history at all – has repeatedly demonstrated that he intends to engage fully with the Government, either through persuasion or litigation; he is no risk of flight. To that end, it is worth repeating that Mr. Archer's Pretrial Services Officer consents to this application.

Moreover, Mr. Archer would be willing to submit to any reasonable additional measures that the Court feels appropriate to ensure his return. Currently, Mr. Archer is free on a $1 million bond, fully secured by property, and as noted his travel is only restricted to the continental United States. Although we respectfully submit that these conditions are already significantly more than are necessary to ensure his appearance, if the Court believes it necessary, it could order additional measures, such as:

- Mr. Archer could report to Pretrial Services every day while he is away, or even more frequently if the Court believes it appropriate.

- Mr. Archer could sign a larger appearance bond, and post a corresponding increase in the security required.

- Mr. Archer's wife and children – who are not travelling with him and whose continued presence in New York provide the most powerful disincentive to flee – would be willing to surrender their passports to the Government while Mr. Archer is out of the country.

- Mr. Archer could voluntarily sign a waiver of extradition.

Mr. Archer would voluntarily agree to any or all of these conditions, or any other reasonable condition that the Court might impose, because he has absolutely no intention of fleeing. But he ought to be permitted to continue to earn a living. Accordingly, on behalf of Mr. Archer, I respectfully request that he be permitted to travel to Italy on June 17-20, 2016.

Thank you for your consideration of this request.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

cc: BY ELECTRONIC MAIL

AUSAS Brian Blais, Aimee Hector, and Rebecca Mermelstein
U.S. Pretrial Services Officer Andrew R. Kessler-Cleary

Application granted. Mr. Archer shall report daily to Pretrial Services during his trip and shall execute a waiver of extradition before his departure. In addition, his wife and children shall surrender their passports while he is out of the country. Because it contains private travel information, the exhibit attached to Mr. Schwartz's letter shall be filed under seal. So ordered.

Ronnie Abrams, U.S.D.J.
June 13, 2016

3