**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 15, 2016

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    **United States v. Jason Galanis et al.,**
             **16 Cr. 371 (RA)**

Dear Judge Abrams:

    The Government writes in response to the letter submitted to the Court by counsel for defendant Jason Galanis, dated August 12, 2016 ("Galanis Ltr."), in which Galanis requests that the Court maintain Galanis's Form CJA 23 affidavit (the "Affidavit") under seal and deny the Government access to the Affidavit. Galanis's position is contrary to the terms of the Criminal Justice Act Plan developed by the Board of Judges in this District and developed case law on this issue. As a result, Galanis's request that this Court block the Government's access to his Affidavit should be denied.

    The Criminal Justice Act directs "each United States District Court [to] set in place a plan for furnishing representation for any person financially unable to obtain adequate representation." 18 U.S.C. § 3006A; *see also United States v. Hilsen*, 03 Cr. 919 (RWS), 2004 WL 2284388 at *3 (S.D.N.Y. Oct. 12, 2004). According to the Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act as adopted on March 1, 2016 (the "CJA Plan") by the Board of Judges of this District, a defendant who is unable to afford counsel may establish his eligibility for appointed counsel either "1) by affidavit sworn to before a district judge, magistrate judge, court clerk, deputy clerk, or notary public; or 2) under oath in open court before a district judge or magistrate judge." CJA Plan ¶ VI(C). Moreover, "[w]henever possible, the standard forms provided by the Administrative Office of the United States Courts shall be utilized in such inquiry." *Id.* In addition, "At the time of determining financial eligibility, the judicial officer shall inform the person seeking appointment of counsel of the penalties for making a false statement, and of the obligation to inform the Court of any changes in his or her financial status." *Id.*

1

It is the defendant's burden to establish financial eligibility for appointed counsel. *Hilsen*, 2004 WL 2284388 at *3 (citing *United States v. O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997)). The defendant must "prove by a preponderance of the evidence that he is financially unable to afford counsel." *Id.* (citing *United States v. Harris*, 707 F.2d 653, 660 (2d Cir. 1983)). "[W]here a defendant's inability to afford counsel has been put into doubt, he has the burden of coming forward with evidence to rebut the government's evidence of ability to afford counsel. If a defendant fails to come forward with additional evidence instead of relying on a terse form affidavit, and fails to prove by a preponderance of the evidence that he is financially unable to afford counsel, appointed counsel may be terminated." *Harris*, 707 F.2d at 661.

The CJA Plan guards against a potential conflict between a defendant's Fifth and Sixth Amendment rights by limiting the adversarial use of a defendant's statements. In fact, "The Government may not use as part of its direct case, other than a prosecution for perjury or false statements, any information provided by a defendant in connection with his or her request for the appointment of counsel pursuant to this plan." CJA Plan VI(E).[1] This safeguard protects against the possibility that the defendant may be forced to waive his Fifth Amendment right against self-incrimination because the Government cannot use information provided in a CJA financial affidavit in its case-in-chief. On the other hand, the Government's role in ensuring that the Court receives an accurate picture of the defendant's finances is important, as the Government is often in a better position to assess the validity of a defendant's assertions related to his financial circumstances in light of its investigation.

These principles and protections were articulated by the Second Circuit in *Harris*, the controlling case in this Circuit on the issue. In *Harris*, the Court of Appeals upheld a district court's termination of CJA counsel following the defendant's refusal to submit evidence of his inability to afford counsel in a proceeding that was not *ex parte* and under seal, reasoning that "'facts are best determined in adversary proceedings,' the importance of which process outweighs any 'speculative possibility of inadequate protection of defendant's fifth amendment rights,' particularly where those rights are otherwise protected by limitations imposed on the government's use of information supplied by a defendant in aid of his or her application for appointed counsel." 707 F.2d at 654, 659, 662-63. *See also Hilsen*, 2004 WL 2284388 at *11 ("Where, as here, a defendant has sought to file a CJA 23 *ex parte* and under seal, and that application has been denied because the assertion of a Fifth Amendment privilege is both premature and speculative, it is appropriate to reiterate the protection afforded the defendant in this circuit, namely, that should the defendant choose to submit a CJA 23 or otherwise place before the court financial information setting forth his or her eligibility the government shall not be permitted to use as part of its direct case any testimony given by the defendant in support of his or her application for assignment of counsel."); *United States v. Coniam*, 574 F. Supp. 615

---

[1] Of course, as a matter of logic, the Government is unable to "use" a defendant's CJA affidavit in any context if, as Galanis's argues, the Government is unable as a matter of law to obtain the affidavit. *A fortiori*, the Government cannot assess whether a defendant has committed perjury in his representations regarding his financial condition if the Government's access to those very representations is disabled.

2

(D. Conn. 1983) (reversing a magistrate judge's order sealing a defendant's financial affidavit where the court's review of the affidavit revealed that it contained nothing likely to constitute a disclosure protected by the Fifth Amendment and the defendant had 'merely suggested' that unsealing the affidavit might provide the government with access to information that might be developed into inculpatory evidence without supplying any specific details in support of the speculation."); *United States* v. *Durante*, No. 15 Cr. 171 (ALC) (S.D.N.Y.) (Docket Entry 68 at 19-20 ("I'm not inclined to believe that my determination of his eligibility for appointment of counsel should be done ex parte."); 21 ("This needs to be done in open court. This should not be done in an ex parte manner.")).[2]

In support of his argument that his Affidavit should be shielded from disclosure, Galanis cites only to the Judicial Conference's guidance on what documents should be included in a public case file. Galanis Ltr. at 1. Although that guidance does indicate that CJA affidavits should be excluded from the public case file, that guidance offers no commentary on whether *the Government* should have access to CJA affidavits. As described above, both the CJA plan, which restricts the Government's use of such affidavits, but which necessarily contemplates the Government's *access* to such affidavits, and case law in this Circuit, make clear that the

---

[2] In any event, Galanis has already consented to the entry of a $37,591,681.10 forfeiture order against him in his other criminal case in this District, *United States* v. *Jason Galanis*, 15 Cr. 643 (PKC). Although the consent order has not yet been formally entered, when it is entered, the Government will have the ability to "conduct any discovery the court considers proper in identifying, locating, or disposing of [forfeitable property]." Fed. R. Crim. P. 32.2(b)(3). In light of the impending entry of the forfeiture order against him, Galanis's ability to shield the nature of his assets from the Government will, in any event, soon be foreclosed.

3

Government should have access to the Affidavit. As a result, Galanis's request that this Court block the Government's access to the Affidavit should be denied.[3]

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/ Brian R. Blais
    Brian R. Blais
    Aimee Hector
    Rebecca Mermelstein
    Assistant United States Attorneys
    (212) 637-2521/2203/2360

cc:     All counsel of record (by electronic mail)

---

Should he want to respond to the Government's letter, Mr. Galanis shall have until August 22, 2016 to do so. By separate order issued today, the Court approved Ms. Scolari's request to appoint Mr. Madiou as co-counsel to Mr. Galanis. Mr. Madiou may thus respond to the Government's letter on Mr. Galanis' behalf while Ms. Scolari is unavailable. In addition, the parties shall appear for a conference to discuss this issue on August 24, 2016 at 3:30 p.m. So ordered.

Ronnie Abrams, U.S.D.J.
August 15, 2016

---

[3] In her August 12, 2016 letter to the Court, Ms. Scolari, who appeared on Galanis's behalf at the August 12 proceeding before Your Honor, requested leave to respond to any submission by the Government after she returns from a three-week vacation. The Government opposes such an extensive period of delay for a response to a straightforward issue, particularly in light of the fact that Ms. Scolari represented to the Court during the August 12 proceeding that her co-counsel in this matter, Christopher Madiou, Esq., would be fully prepared to assist in this matter during her absence, including by beginning to review the Government's discovery productions.

4