

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

July 27, 2017

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Jason Galanis, et al.*, S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

As the Court is aware, I represent Devon Archer, and write in reply to the government's letter of earlier today [ECF No. 195] and in further support of Mr. Archer's motion for an order requiring the return of materials improperly produced to the defendants in contravention of the Warrant [ECF No. 191].[1]

At base, the government's letter articulates a remarkable and legally untenable position: the government argues that it cannot simultaneously honor its obligation under the Fourth Amendment to search through and seize only information responsive to the Warrant, while at the same time fulfilling its obligations under the Due Process Clause to produce *Brady* information to the defendants. On the horns of this imagined dilemma, the government asks the Court to absolve it of either one of these Constitutional obligations. *See* Gov. Letter at 1 ("if the Court concludes that the Government does not 'possess' Archer's non-responsive emails for *Brady* purposes or otherwise has no *Brady* obligations with respect to those materials, the Government does not object to Archer's request that the full email production be replaced by a production solely of responsive documents. If, however, the Court determines that the Government is 'in possession,' of such materials, it requests that Archer's application be denied" and that his co-defendants be allowed to keep non-responsive, personal, and confidential materials).

The government's position should be rejected for at least three fundamental reasons.

*First*, there is no tension between the government's obligations under the Fourth and Fifth Amendments. The government claims that it seized and produced non-responsive information – personal, financial, privileged, and other irrelevant communications – "in an

1 Capitalized terms in this letter have the same meaning as in Mr. Archer's moving letter.

abundance of caution," because it might contain *Brady* material. Gov. Letter at 6.[2] But by its definition – because it would be evidence "material either to guilt or to punishment" that is "favorable to an accused," 373 U.S. 83, 87 (1963) – *Brady* material is responsive to the Warrant. There is no need for the government to seize and produce non-responsive material in order to satisfy its *Brady* obligations precisely because *Brady* material is necessarily responsive.

*Second*, although there may be practical difficulties in complying with both the Fourth and Fifth Amendments on these facts, that is the government's burden. As counsel and the Court recognized at the outset with this Warrant, "the risk is on the government." 1/31/2017 Tr. at 16, 18. It is entirely inappropriate for the government to now ask to be relieved of that risk because the practical realities are daunting.[3]

The government chose to seek the Warrant and it chose to execute it the way it did – over strenuous objection from Mr. Archer, who also suggested to the government much easier and less fraught ways to proceed. The government now has to live with the consequences of its choices. For example, the government says that it is conducting a "responsiveness review" by running certain keyword searches. *See* Gov. Letter at 2. It is quite possible that the use of keyword searches will not capture all responsive data, including *Brady* material, and that the government will have to take additional measures to ensure that it has satisfied its *Brady* obligations. But that is a function of the way the government chose to execute the Warrant. The government could have, for example, obtained a warrant only for documents containing those key words, and therefore obtained only that material from the relevant internet service providers. In that case, there would be no dispute that materials that the government never obtained should be reviewed for *Brady* purposes. But that is not the way the government chose to write the Warrant here. Instead, it asked for permission to obtain all data within a two-plus year range, and represented in the supporting affidavit that it intended to "undertak[e] a cursory inspection of all emails within the Subject Accounts." Notably, the warrant affidavit also represented that

---

2 The government's production of Mr. Archer's private, privileged, and irrelevant personal and business communications "in an abundance of caution" stands in stark contrast to its approach to other discovery in this case. For example, the government wiretapped Jason Galanis, the top defendant in this case, for over a year in connection with a related investigation, but has refused to produce those wiretap recordings or application, and has also refused to confirm whether Mr. Archer was ever captured on the wiretap.

3 In an attempt to shift "the risk" onto Mr. Archer, the government claims that it advised the defendants of its intended approach – though the government conspicuously avoids arguing to the Court that its warning was "explicit," as it had claimed in private correspondence. *See* ECF No. 191, Ex. A. Whatever happened, the government certainly cannot reasonably claim that Mr. Archer knowingly and voluntarily waived his Fourth Amendment rights or affirmatively consented to the seizure of the entire e-mail accounts by his silence in response to the government June 12, 2017 discovery e-mail. *Id*. Nor can it claim that he knowingly and voluntarily waived, for example, his marital privilege and consented to incredibly personal communications with his wife being disseminated to his co-defendants. That being so, the government's approach plainly exceeded the bounds of the Warrant and violated the Fourth Amendment.



"[a]lthough law enforcement personnel may use other methods as well, particularly including keyword searches, I know that keyword searches and similar methods are typically inadequate to detect all information subject to seizure. . . . keyword searches cannot be relied upon to capture all relevant communications in an account. . . ." Agent Affidavit in Support of Application for Search Warrants for Stored Electronic Communications, ¶ 24 (produced as USAO-SDNY_012235).

*Third*, purely as a procedural matter, the government's suggestion that the Court can find "that the Government does not 'possess' Archer's non-responsive emails for *Brady* purposes or otherwise has no *Brady* obligations with respect to those materials" is premature, and essentially calls for the Court to issue an advisory opinion. As the Second Circuit has held:

> Although the government's obligations under *Brady* may be thought of as a constitutional duty arising before or during the trial of a defendant, the scope of the government's constitutional duty—and, concomitantly, the scope of a defendant's constitutional right—is ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial. The government therefore has a so-called "*Brady* obligation" only where non-disclosure of a particular piece of evidence would deprive a defendant of a fair trial.

*United States v. Coppa*, 267 F.3d 132, 140 (2d Cir. 2001) (internal citations omitted). The Court observed that this retrospective determination of a *Brady* violation "creates both a responsibility and a problem for the prosecutor." *Id.* at 143.

The government's letter does nothing more than highlight that the way it chose to execute the Warrant has also created a "responsibility and a problem." The Court should not be asked to, and should not, alleviate the government's problem precisely because it is part and parcel of the government's Constitutional responsibility – especially when it affirmatively undertook those risks at the outset.

For the foregoing reasons, the Court should order the other defendants to return the government's most recent production, and should not make any prospective or advisory findings with respect to the government's *Brady* obligations. Moreover, in light of the representations in the government's letter and the impending motions deadline and trial date in this case, the Court should order the government to complete its responsiveness and privilege reviews and produce any responsive e-mails no later than August 11, 2017 (*i.e.*, in two weeks), so that the defendants


have sufficient time to review those e-mails and frame appropriate motions, and to prepare for trial.[4]

Thank you for your consideration.

Respectfully,

/s/ Matthew L. Schwartz
Matthew L. Schwartz

[4] The government's response discusses the parties' exchanges about a proposed protective order at great length. As set forth in Mr. Archer's moving letter, we believe that the parties will be able to reach an agreement on that issue. It is true, however, that the government's initial proposal cited witness safety as the *sole* reason for confidentiality, and that Mr. Archer objected that it would be misleading to claim that was the reason why a protective order is needed. The government points (at n.5) to the fact that Jason Galanis sent "threatening text messages" at some point, but Galanis has long since pleaded guilty in this case and there is no suggestion that any other person presents a threat of obstruction or violence. Certainly, witness safety is not the only or even primary reason why a protective order is needed in this case. Rather, a protective order is necessary to protect the defendants and third parties from the dissemination of their confidential personal information.