

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 28, 2017

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Re:   **United States v. Devon Archer et al.,**
>          **S1 16 Cr. 371 (RA)**

Dear Judge Abrams:

The Government writes in response to defendant Devon Archer's reply letter, dated July 27, 2017, in support of his motion for an order requiring all defendants in the above referenced matter to immediately return the production of his emails obtained pursuant to a search warrant (the "Warrant") executed on two of his email accounts.[1]

Archer argues that the Government's protocol to execute the Warrant – which involved the use of search terms to narrow the universe of potentially responsive emails,[2] coupled with the production of non-responsive emails to his co-defendants because such emails could contain *Brady* material[3] – was improper.  Instead, Archer appears to suggest that the Government must review *every single email* produced by the service providers in response to the Warrant for *Brady* purposes and for responsiveness.  While the law *permits* the Government to review every email[4], *requiring* the Government to do so is both prohibitively time-consuming in white-collar investigations and

---

[1] Archer's motion has been joined by defendant Bevan Cooney, whose emails were also obtained pursuant to the Warrant.

[2] This narrowed universe of potentially responsive documents is being reviewed individually by members of the prosecution team to identify documents that are in fact responsive to the Warrant.

[3] The Government's protocol involved no further review of the emails that did not contain any of the search terms.

[4] *See United States v. Ulbricht*, 858 F.3d 71, 100 (2d Cir., 2017) ("[T]raditional searches for paper records, like searches for electronic records, have always entailed the exposure of records that are not the objects of the search to at least superficial examination in order to identify and seize those records that are. And in many cases, the volume of records properly subject to seizure because of their evidentiary value may be vast.").

less protective of Archer's privacy than the protocol in fact adopted. Under Archer's proposed protocol, the Government would be required to inspect each of Archer's emails for responsiveness to the Warrant and for *Brady* material, rather than simply those that hit on responsive search terms. The intrusion into Archer's privacy would be significantly greater than under the Government's protocol (which only involves the individual review of emails that were responsive to a relevant search term).

Archer suggests that the Government could have narrowed its review obligations by seeking a warrant that contained the responsiveness search terms. This argument is flawed for a number of reasons. First, specifying search terms in a search warrant is not legally required. *United States v. Ulbricht*, 858 F.3d at 102 ("Ulbricht, supported by *amicus* the National Association of Criminal Defense Lawyers ("NACDL"), argues that the warrant was insufficiently particular because the government and the magistrate judge failed to specify the search terms and protocols *ex ante* in the warrant. We cannot agree."). Second, specifying search terms in a warrant *ex ante* raises practical considerations. *Id.* ("[I]t will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search takes place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes. Files and documents can easily be given misleading or coded names, and words that might be expected to occur in pertinent documents can be encrypted; even very simple codes can defeat a pre-planned word search."). Third, even assuming that the service providers have the technical capability to run search terms in order to narrow down a universe of potentially responsive materials, service providers have the ability to move to quash unduly burdensome process issued pursuant to the Stored Communications Act. *See* 18 U.S.C. § 2703(d). Search warrants containing pre-specified search terms are atypical and would pose the risk of spawning additional, protracted litigation with service providers regarding the burdensomeness of such search warrants for electronically stored information.

At bottom, Archer's position would make it impossible for the Government to investigate white-collar crime or other offenses which generate substantial volumes of electronically stored information. If the Government is barred from narrowing the review universe through the use of search terms or is otherwise required to individually review every document and file produced in connection with a search warrant for electronic information, then the investigation of such crimes cannot proceed because the review of such search warrant returns will be interminable. The Government's protocol in this matter was an effort to balance its constitutional obligations to the defendants in this matter with the practical realities of finite time, resources, and personnel to conduct the review of search warrant returns and the need to conduct such review within a reasonable time period. As a result, the Government reiterates the position outlined in its initial response to Archer's motion: if the Court concludes that the Government does not "possess" Archer's non-responsive emails for *Brady* purposes or otherwise has no *Brady* obligations with respect to those materials, the Government does not object to Archer's request that the full email production be replaced by a production solely of responsive documents. If, however, the Court determines that the Government is "in possession," of such materials, it requests that Archer's application be denied.

Further, Archer requests for the first time in his reply that this Court order the Government to complete its responsiveness review of the search warrant returns by August 11, 2017. As noted

in the Government's opening letter on this issue, the trial team in this matter received the approximately 130,000 non-privileged emails from the "wall" AUSA who conducted the privilege review on or about July 3, 2017.  The Government then compiled and ran a series of search terms in order to aid in the responsiveness review (with the understanding that it would not review the "non-responsive" emails that did not hit on any search terms).   This process resulted in approximately 58,000 non-privileged emails that the Government intends to review individually for responsiveness purposes.  Even with a team of multiple AUSAs and agents reviewing these emails, it will be physically impossible for the review of all 58,000 emails to be completed in the next two weeks.  The Government is endeavoring and will continue to endeavor to review these emails for responsiveness as quickly as possible.  In any event, the review of electronic files is subject to the rule of reasonableness.  *See United States v. Ganias*, 755 F.3d 125, 136 (2d Cir. 2014) (noting that the Advisory Committee on the criminal procedural rules rejected "a presumptive national or uniform time period within which any subsequent off-site copying or review of the media or electronically stored information would take place.").  Given the volume of materials being reviewed for responsiveness, it is not unreasonable for the Government's responsiveness review to take more than the six weeks that will have elapsed between July 3 and August 11.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By:   _/s/ Brian R. Blais_____
        Brian R. Blais
        Rebecca Mermelstein
        Andrea M. Griswold
        Assistant United States Attorneys
        (212) 637-2521/2360/1205

cc:      All counsel of record (by ECF)