LAW OFFICES
**PAULA J. NOTARI**
152 W. 57th Street, Suite 800
New York, New York 10019
---------
Tel. (646) 943-2172

January 16, 2018

The Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States v. Jason Galanis et al.*
     16-cr-0371-4 (RA)

Dear Judge Abrams:

    We represent Bevan Cooney, one of the defendants in the above-referenced case. We write to join the motions set forth in co-defendant Devon Archer's January 16, 2018 pre-trial motions to the extent the motions are relevant to Mr. Cooney.

    For the additional reasons set forth below and for those articulated in Devon Archer's Memorandum of Law, and the exhibits thereto, we respectfully request the Court to: (a) dismiss Count Two of the Indictment against Mr. Cooney for facial insufficiency; (b) suppress evidence seized from Mr. Cooney email account, identified as btcooney@gmail.com; (c) require the government to provide a bill of particulars; (d) compel the government to produce additional Rule 16 material in its possession, custody, or control; (e) require the government to complete its *Brady* review and to make its other pre-trial disclosures – including its witness list, Jencks Act material, exhibit list, expert notice, and Rule 404(b) notice – no later than 60 days before trial; (f) set a short deadline for the government to file any motion invoking the crime-fraud exception to Mr. Cooney's privileged communications, (g) compel the government to immediately file the notice required under Federal Rule of Criminal Procedure 12.4, and for any other related relief.

    **A. The Court Should Sever Devon Cooney and Devon Archer from their Co-Defendants Under Fed. R. Crim. P. 14.**

    As detailed in defendants Archer and Cooney's joint severance motion, these two defendants are charged in only two Counts of the Indictment. Neither Mr. Archer nor Mr. Cooney are alleged to have had any contact with the alleged victims of the securities fraud counts. Neither of them had any control over or visibility into any of the accounts through which funds were allegedly misappropriated, and neither of them had any operational responsibility for the alleged fraud. Rather, Messrs. Archer and Cooney are alleged only to have been generally kept "apprised" of developments, to have had passive ownership interests in some of the relevant entities, and to have received certain of the misappropriated funds.(*See* Archer Severance Motion, pp.7-9)

As further stated in their joint motion, Mr. Cooney is charged in only one of the two conspiracies alleged, and his role in that single conspiracy is narrower and far less clearly defined than others. Mr. Cooney is not alleged to have had any role in the operations of the investment advisers or underwriter involved in this case. Indeed, the primary allegation against Mr. Cooney is that he bought certain bonds -- bonds that the government claims are worthless. In doing so, Mr. Cooney is not distinguished from other purchasers of these same bonds, whom the government calls victims. The only distinction between Mr. Cooney and the alleged victims, according to the Indictment, is that Mr. Cooney allegedly knew that the money used to purchase these bonds was "recycled" from the original issuance. However, the Indictment fails to specify what evidence the government possesses to show that Mr. Cooney was aware of the source of the proceeds used to purchase these bonds.

### B. The Court Should Dismiss Bevan Cooney from Count Two of the Indictment.

Mr. Cooney is also not alleged to have committed fraud in connection with the purchase or sale of a security. Count Two of the Indictment, which charges all seven defendants with substantive securities fraud, should be dismissed as against Mr. Cooney because it fails to allege a cognizable legal theory under which Mr. Cooney could be said to have committed, or willfully aided others in committing, securities fraud. In particular, the Indictment fails to allege any intentionally misleading statement or material omission made by Mr. Cooney in connection with the purchase or sale of securities, and it fails to identify any allegedly manipulative device or artifice to defraud employed by Mr. Cooney. Count Two, therefore, fails to allege the elements of securities fraud against Mr. Cooney.

Count Two does not allege that Mr. Cooney took any steps, or assisted others, to misappropriate bond proceeds; at best it alleges that he was a passive recipient of some of those proceeds. It also does not allege that he knew or had reason to know that no secondary market for the bonds existed, or that there were "multiple conflicts of interest" related to the purchase and sale of those bonds, or that investments in the bonds were "outside the investment parameters" of certain AAM clients. Indeed, the Indictment does not allege that Mr. Cooney had any interaction with AAM or its clients at all (other than a passive ownership interest), or that he was aware of any representations made to them – let alone that he made those misrepresentations himself, or somehow aided and abetted them.

The Indictment alleges only a single act by Mr. Cooney, which is insufficient as a matter of law to constitute substantive securities fraud as alleged in Count Two. The Indictment merely alleges that Mr. Cooney personally acquired the entirety of the third bond issuance. *See* Ind. ¶¶ 21(b), 23. This is the sole "purchase or sale of any security" in which Mr. Cooney was allegedly personally involved, 15 U.S.C. § 78j(b), but there is nothing allegedly fraudulent about it. Rather, according to the Indictment, Mr. Cooney purchased the entirety of the "Third Bond Issuance" for fair market value. *See* Ind. ¶ 21(b). Thus, the bonds that Mr. Cooney allegedly purchased were not foisted upon AAM investors, and these investors therefore were in no way victimized by this alleged conduct. Furthermore, allegations of undisclosed conflicts of interest and ignored investment parameters simply have nothing to do with Mr. Cooney's bond purchases. Likewise, because Mr. Cooney allegedly paid in full for the bonds, the bond issuers were not injured by Mr. Cooney. *See Chemical Bank v. Arthur Anderson & Co.*, 726 F.2d 930, 943 (2d Cir. 1984) (Friendly, *J.*) (if purchaser gets "exactly what they expected," there is no securities fraud).

These bond purchases constitute the *only* allegation of any misconduct by Mr. Cooney, and as stated above, these purchases do not constitute securities fraud as a matter of law.

"The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions - to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate." *Chemical Bank*, 726 F.2d at 943. In order to allege substantive securities fraud, therefore, an Indictment must allege that the defendant committed some deceptive act – "some act that gives the victim a false impression" – in connection with the purchase or sale of securities. *United States v. Finnerty*, 533 F.3d 143, 148-49 (2d Cir. 2008).

Mr. Cooney, however, is not alleged to have had any interactions with any alleged victim, and is not alleged to have been aware of, let alone aided or abetted, any misrepresentations by others to any alleged victim. He therefore cannot be liable for substantive securities fraud. *See id.* ("The government has identified no way in which Finnerty communicated anything to his customers, let alone anything false.").

Finally, Count Two does not allege that Mr. Cooney made any misrepresentations whatsoever and therefore he cannot be liable for a substantive securities fraud violation. At best, the Indictment's allegations support a charge of conspiracy. But to sustain a charge of substantive securities fraud on the part of Mr. Cooney, the government needs to do more than simply allege the agreement required for conspiracy.[1] In order to support a substantive securities fraud count, Mr. Cooney needs to have undertaken – or at least willfully aided and abetted – some specific fraudulent act or omission "in connection with the purchase or sale of any security." Because the Indictment is devoid of any such allegation *as to Mr. Cooney*, Count Two must be dismissed against him.

C. **Defendant Cooney Joins in Co-Defendant Devon Archer's Motion to Suppress the Fruits of the Government's Search of Mr. Cooney's Email Account**

Mr. Cooney further joins the motion to suppress filed by co-defendant Devon Archer to suppress the fruits of searches of email accounts. Mr. Cooney has standing to challenge the seizure of his personal email account, btcooney@gmail.com. *See United States v. Cioffi*, 668 F.Supp.2d 385, 390 (E.D.N.Y. 2009) (custodian of personal email account has expectation of privacy in the contents of that account).

Specifically, Mr. Cooney joins in the Archer motion to suppress on the following grounds: (1) the search warrant (16 Mag. 8347) was facially unconstitutional because it authorized a general search of Mr. Cooney's personal email unconnected to any specific

---

[1] Indeed, in the absence of any allegation that Mr. Cooney made a material misstatement or omission, or otherwise took some affirmative fraudulent act "in connection with the purchase or sale of any security," the Indictment's substantive and conspiracy charges are also multiplicitous, and must be dismissed on that ground. *See United States v. Polizzi*, 257 F.R.D. 33 (E.D.N.Y. 2009) ("A multiplicitous indictment creates an exaggerated impression of a defendant's criminal activity by 'charging an offense multiple times, in separate counts, when, in law and in fact, only one crime has been committed.'" (quoting *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999)); *see generally United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981) ("The vice in multiplicity of charges is that it may lead to multiple sentences for the same offense and may improperly prejudice a jury by suggesting that a defendant has committed not one by several crimes.").

facts or criminal offense: (2) the warrant lacked probable cause as to Mr. Cooney and his gmail account; and (3) the government unconstitutionally executed the warrant by ignoring the scope of the warrant and seizing the entire contents of Mr. Cooney's account.

We write here to supplement Mr. Archer's arguments related to the lack of probable cause for the warrant. Specifically, the warrant application (the "Bieniek Affidavit") failed to supply probable cause to believe that Mr. Cooney participated in a crime or that his personal email contained evidence of, or the fruits and instrumentalities of crime. The Bieniek Affidavit relied on stale and insufficient evidence related to the alleged involvement of both defendants Archer and Cooney. (*See* Archer Suppression Mem. Law at Section II). Agent Bieniek's probable cause showing as to Mr. Cooney and his personal gmail account was limited to a handful of 2014 emails that failed to show Mr. Cooney intentionally committed the crimes alleged or was using his email to commit them. (Bieniek Aff., ¶¶ 14-15.) The emails included correspondence from Jason Galanis describing the status of a bond issuance, the terms of which were not identified in the emails, but on their face the correspondence described legitimate transactions involving lawyers and registered investment advisers. (*Id.*)  The only two Cooney responses identified in the Bieniek Affidavit were terse and jovial quips that cheered on Galanis's facially legitimate work and efforts. (*Id.*, ¶ 14(c) and ¶ 15(b).) Cooney's off-handed reference to "mikey Milken" did not convert this one-off correspondence to known criminality. Indeed, Michael Milken was a famous pioneer of legitimate high-yield bond issuances well before he was indicted and convicted for specific allegations of securities fraud, and even after his release from prison, he again became a respected and sought-after advisor on Wall Street. (*See* William D. Cohen, "Michael Milken invented the modern junk bond, went to prison, and then became one of the most respected people on Wall Street," *Business Insider,* May 2, 2017, at www.businessinsider.com/michael-milken-life-story-2017-5.)  Thus, Mr. Cooney's reference to Milken did not alone create probable cause to search the entire contents of his personal email account.[1]

For the reasons stated in Mr. Archer's motions, Mr. Cooney also joins Mr. Archer's request for a bill of particulars setting forth the precise nature of the allegations against him. Indeed, the government has thus far refused to provide particulars that are absolutely routinely given, such as the identities of unindicted co-conspirators or of specific individuals and entities named (but not identified) in the Indictment. Absent such relief, Mr. Cooney cannot know or understand the nature of the charges against him and be unable to adequately prepare for trial. The millions of pages of documents produced by the government in discovery make the problem worse, not better, because there is no indication of what in that mass of documents is relevant to Mr. Cooney, or indeed is relevant to the case at all. (*See* Archer Omnibus Motion, Section II)

As set forth in Mr. Archer's motions, the evidence in this case – about Jason Galanis's criminal history with certain of Mr. Archer and Mr. Cooney's co-defendants, and their pattern of lying to others in furtherance of their crimes, among other things – is both relevant and exculpatory. The government should be required to produce it, and also to complete its *Brady* review at least 60 days in advance of trial.

---

[1] This argument is further supported by the discovery in this case including but not limited to emails sent by Jason Galanis to others including Bevan Cooney referencing published research reports from the Milken Institute, a non-profit, non-Partisan economic think tank whose scholars publish research papers and conduct conferences on global and regional economies, human capital, demographics and capital markets.
(See Wikipedia.org/wiki/Michael_Milken).

For similar reasons, the government should be required to make its pre-trial disclosures well in advance of trial, and to provide notice of experts, Rule 404(b) material, and attorney- client material that it intends to introduce in its case-in-chief, as those disclosures are both necessary to prepare for trial and will likely involve further motion practice.

Finally, for the reasons set forth in Mr. Archer's pretrial motions, Mr. Cooney joins defendant Archer's requests for particulars and early disclosures of *Brady,* Jencks Act and additional Rule 16 material. The Indictment is deficiently sparse in describing Mr. Cooney's alleged role in the offenses, *vis-à-vis* the other defendants. As set forth above, and in Mr. Archer's motions, the Indictment fails to allege any false statement or omission by Mr. Cooney in connection with the purchase or sale of securities, and aside from generalized allegations that Cooney was kept "apprised" of or was "well aware of" developments, is silent as to any evidence showing specific knowledge. These vague, open-ended allegations are insufficient to put Mr. Cooney on notice of the government's proof against him, or to allow him to prepare adequately for trial. *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (reversing for failure to provide bill of particulars where government did not identify which insurance claims were falsified); see also *See United States v. Davidoff*, 845 F.2d 1151, 1154–55 (2d Cir. 1988) (government should have identified victims of extortionate schemes). We join Mr. Archer's request for a specific bill of particulars intended to inform him and Mr. Cooney of how the Indictment alleges they participated in or aided and abetted the broader crimes alleged in the Indictment. (See Archer Omnibus Mem. of Law, Section II). Lastly, Mr. Cooney respectfully requests that the Court order the government to provide other disclosures identified in Mr. Archer's pretrial motions. (*See* Archer Omnibus Mem. of Law, Sections III through VI).

| | |
|---|---|
| Dated: January 16, 2018<br>New York, New York | Respectfully submitted,<br><br> /s/  Paula Notari<br>The Law Office of Paula J. Notari<br>152 West 57th Street, 8th Floor<br>New York, New York 10019<br>Tel.: (646) 943-2172<br>Fax: (212) 980-2968<br>paulanotari@aol.com<br><br>Abraham J. Hassen<br>O'NEILL / HASSEN<br>25 Eighth Ave, Suite C<br>Brooklyn, New York 11217<br>Tel./Fax.: (212) 203-1858<br>hassen@oandh.net<br><br>*Attorneys for Bevan Cooney* |

cc: (via ECF) AUSAs Brian Blais, Rebecca Mermelstein, Aimee Hector, Negar Tekeei and Andrea Griswold