UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JASON GALANIS,<br>GARY HIRST,<br>JOHN GALANIS, a/k/a "Yanni,"<br>HUGH DUNKERLEY,<br>MICHELLE MORTON,<br>DEVON ARCHER, and<br>BEVAN COONEY,<br><br>                      Defendants. | No. 16 Cr. 371 (RA) |

## CORRECTED DECLARATION OF MATTHEW L. SCHWARTZ

MATTHEW L. SCHWARTZ, pursuant to 28 U.S.C. § 1746, hereby declares:

1. I am a member of the bar of this Court and of the firm Boies Schiller Flexner LLP, and am counsel of record for defendant Devon Archer in the above-captioned case.

2. I make this declaration in support of Mr. Archer's motion for severance, his motion to suppress the fruits of two Stored Communications Act warrants, and his motion to dismiss Count Two of the Indictment, for a bill of particulars, for Rule 16 discovery, for disclosure of *Brady* material, and for other related relief. Unless stated otherwise, I make this declaration based upon my personal knowledge.

3. In advance of filing these motions, and pursuant to Local Criminal Rule 16.1, I have tried over the last several weeks to reach agreement with the government on various discovery and scheduling issues.

4. On January 16, 2018, the parties reached an agreement regarding the schedule for certain pre-trial disclosures. I have attached a true and correct copy of a January 16, 2018 e-mail

1

reflecting that agreement as Exhibit 1.  As set forth below at paragraphs 44-46, Mr. Archer and the government did not reach agreement with respect to certain other issues.

5. I have attached a true and correct copy of the government's February 9, 2017 sentencing memorandum as to John Galanis in *United States v. Galanis* (the "Gerova case"), Case No. 15 Cr. 643 (PKC) [ECF No. 378] as Exhibit 2.

6. I have attached a true and correct copy of a June 8, 2016 letter from the government as Exhibit 3.

7. I have attached a true and correct copy of a December 28, 2016 affidavit sworn by FBI Special Agent Shannon Bieniek in support of two Stored Communications Act warrants (the "Bieniek Affidavit") as Exhibit 4.

8. I have attached a true and correct copy of two Store Communications Act warrants, addressed to Google and Apptix, signed on December 28, 2016 by the Honorable Barbara Moses, as Exhibit 5.

9. I have attached a true and correct copy of a January 26, 2017 email from Google Legal Investigations Support to Devon Archer and Matthew Schwartz, and the redacted search warrant attached to it, as Exhibit 6.

10. I have attached a true and correct copy of a January 27, 2017 letter on behalf of Mr. Archer to the Court [ECF No. 126] as Exhibit 7.

11. I have attached a true and correct copy of a January 30, 2017 letter from the government to the Court [ECF No. 130] as Exhibit 8.

12. I have attached a true and correct copy of the January 31, 2017 hearing transcript [ECF No. 135] as Exhibit 9.

13. I have attached a true and correct copy of a February 1, 2017 letter on behalf of Mr. Archer to the Court [ECF No. 132] as Exhibit 10.

14. I have attached a true and correct copy of a February 3, 2017 order as Exhibit 11.

15. I have attached a true and correct copy of a February 6, 2017 motion for an emergency stay pending appeal, and for expedited briefing and consideration of the appeal, filed on behalf of Devon Archer, Case No. 17-346 (2d Cir.) [ECF No. 19], as Exhibit 12.

16. I have attached a true and correct copy of a February 6, 2017 petition for a writ of mandamus filed on behalf of Devon Archer, Case No. 17-353 (2d Cir.) [ECF No. 3], as Exhibit 13.

17. I have attached a true and correct copy of a February 6, 2017 order of the United States Court of Appeals for the Second Circuit [ECF No. 143], as Exhibit 14.

18. I have attached a true and correct copy of a February 10, 2017 affirmation by Brian R. Blais in opposition to Devon Archer's motion for a stay and petition for a writ of mandamus, Case No. 17-346 [ECF No. 47] (2d Cir.), as Exhibit 15.

19. I have attached a true and correct copy of a March 8, 2017 order of the United States Court of Appeals for the Second Circuit dismissing Mr. Archer's appeal, 17-346 [ECF No. 83] (2d Cir.), as Exhibit 16.

20. I have attached a true and correct copy of a March 8, 2017 order of the United States Court of Appeals for the Second Circuit denying Mr. Archer's petition for a writ of mandamus, 17-353 [ECF No. 39] (2d Cir.), as Exhibit 17.

21. I have attached a true and correct copy of an April 6, 2017 letter on behalf of Mr. Archer to the government as Exhibit 18.

22. I have attached a true and correct copy of an April 7, 2017 email from the government to me, copying others, as Exhibit 19.

23. I have attached a true and correct copy of an April 12, 2017 email on behalf of Mr. Archer to the government, copying others, as Exhibit 20.

24. I have attached a true and correct copy of a July 26, 2017 letter motion on behalf of Mr. Archer [ECF No. 191] as Exhibit 21.

25. I have attached a true and correct copy of a July 18, 2017 production cover letter from the government as Exhibit 22.

26. I have attached a true and correct copy of a July 27, 2017 letter from the government to the Court [ECF No. 195] as Exhibit 23.

27. I have attached a true and correct copy of the August 3, 2017 hearing transcript [ECF No. 213] as Exhibit 24.

28. I have attached a true and correct copy of an August 14 memo endorsement by the Court [ECF No. 222] as Exhibit 25.

29. I know from reviewing documents produced by the government in July 2017 that, pursuant to the two warrants attached as Exhibit 5 hereto, the government obtained, and the trial team had access to, many thousands of e-mails and other documents from several of Mr. Archer's e-mail accounts. Among the documents seized and produced by the government were more than 700 communications solely between Mr. Archer and his wife, covered by the marital privilege, as well as numerous attorney-client privileged communications and thousands upon thousands of totally irrelevant, but deeply personal, communications.

30. The attorney-client privileged communications seized and produced by the government included not only e-mails concerning entirely unrelated business transactions, but

also communications between Mr. Archer and his former attorneys concerning this very investigation. Among other things, the government produced to the defendants e-mails between Mr. Archer and his lawyers discussing how to respond to the SEC and Grand Jury subpoenas issued as part of their coordinated investigation, and other communications concerning defense strategy. Because the government's trial team produced these documents, I know that they were not segregated as part of the government's privilege review.

31. The government also seized and produced non-responsive documents that contained highly sensitive, personal, and confidential information. These communications included approximately 750 e-mails between Mr. Archer and his wife concerning topics such as their children's health and the familial burdens created by Mr. Archer's busy travel schedule; highly sensitive materials, such as family medical documents and insurance information; and highly confidential documents, such as plans for home security.

32. As soon as the Second Circuit rejected Mr. Archer's appeal, I suggested to the government a protocol for reviewing the documents responsive to the warrants that would have avoided these problems, set out in the letter attached as Exhibit 18, above. The government declined to follow Mr. Archer's suggested protocol.

33. Had the government follow Mr. Archer's suggested protocol, however, it would have caught many of the privileged documents that the government instead seized and produced, including the communications between Mr. Archer and his former lawyers in this investigation. Those communications would have hit on one or more of the following terms (which were expressly suggested to the government on April 6 as part of Mr. Archer's proposed protocol, *see* Ex. 18): attorney*, confid*, counsel*, sec, subp*, doj, priv*, us w/5 attorney*, and us w/5 office. Even using the two terms "confid*" and "priv*" would have caught any such communications

that contained the standard disclaimer warnings unintended recipients against reading, using, copying, distributing, or disclosing the contents of such privileged and confidential communications (*i.e.*, the footer that appears at the bottom of many lawyers' e-mails, or commonly-used headers such as "Attorney-Client Privileged," "Confidential Attorney Work Product," or the like).

34.     Because these materials were, in fact, copied, distributed, and disclosed by the government's trial team, as evidenced by their production to Mr. Archer and all of his co-defendants, it is clear that the trial team's attempt to prevent exposure to privileged materials through the use of a "wall" AUSA has failed, and they have become tainted.

35.     Due to the sensitive and privileged nature of the communications that were seized by the government, they are not attached to this Declaration, but can be provided to the Court for *in camera* review.

36.     I also know that the government seized more than just e-mails from the Archer Accounts. When the government produced the entirety of the Archer Accounts, that production included documents such as Mr. Archer's metadata concerning Mr. Archer's use of Google, contact information for thousands of parties unrelated to this case, loose files that Mr. Archer stored in Google's cloud-based storage system Google Drive, and other categories of information having nothing to do with e-mail.

37.     Prior to the filing of the original indictment in this case in May 2016, Mr. Archer received subpoenas from both the SEC and the U.S. Attorney's Office. The subpoenas were essentially identical, and the prosecutor who signed the Grand Jury subpoena instructed me to have any discussions about the scope of the subpoenas, or search terms, with counsel for the SEC. In my experience, this is common in coordinated SEC and criminal investigations, because

by producing documents to the SEC in the first instance, they can be shared freely with the U.S. Attorney's Office, whereas documents produced in the first instance to the U.S. Attorney's Office are subject to Federal Rule of Criminal Procedure 6's grand jury secrecy rule.

38. After negotiating search terms, date ranges, and other limitations with the SEC, Mr. Archer produced over 7,600 documents (more than 61,000 pages of material) to both the U.S. Attorney's Office and the SEC. Mr. Archer, for example, produced over 31,000 pages of documents to the U.S. Attorney's Office on May 9, 2016, *i.e.*, the very day that the government obtained its sealed complaint. Of these, nearly 3,500 documents (over 25,000 pages) came from the internet accounts that would later be the subject of the warrants attached as Exhibit 5 (the "Archer Accounts"). Even after he was charged, Mr. Archer made a further production to the U.S. Attorney's Office in the form it requested.

39. Mr. Archer also produced nearly 9,000 pages of documents to the SEC on December 6 and 21, 2016, which Mr. Archer understands were provided to the U.S. Attorney's Office. As with the aforementioned production to the government, a great number of the documents in these productions to the SEC were taken from the Archer Accounts.

40. Counsel for Mr. Archer, myself included, met with three Assistant United States Attorneys on May 6, 2016. Also in attendance were attorneys for the Securities and Exchange Commission and FBI Special Agent Shannon Bieniek. One of the main topics of discussion at this meeting was one of the documents referenced in the Bieniek Affidavit (*see* Ex. 4 ¶ 17.c). The following Monday, Mr. Archer made a production responsive to a grand jury subpoena; that production included all of the other documents that would end up being cited (as to the Archer Accounts) in the Bieniek Affidavit. *See* Ex. 4 ¶¶ 14.a-b, 15.a-b, 17.a-b, 18, 19.a.

41. I have attached a true and correct copy of a November 2, 2017 production cover letter from Lisa Korologos, on behalf of the government's "taint team," as Exhibit 26.

42. Thus far, the government has produced approximately 10,000 documents from all of the Targeted Accounts that it claims to be responsive. The most recent production was received on January 10, 2018.

43. I have attached a true and correct copy of the January 31, 2017 hearing transcript [ECF No. 135] as Exhibit 27.

44. On December 29, 2017, pursuant to Local Criminal Rule 16.1, counsel for Mr. Archer sent a letter to the government requesting information and a bill of particulars, and offering to meet and confer regarding the issues identified in the letter ahead of the deadline for the instant motions. The letter also attached prior correspondence between Mr. Archer's counsel and the government on a variety of discovery-related issues. I have attached a true and correct copy of this December 29, 2017 letter on behalf of Mr. Archer to the government as Exhibit 28.

45. The government responded by letter on January 4, 2018, stating that a bill of particular was "not required," and that "we do not believe you are entitled to the materials you demand, and we do not intend to produce them."

46. I have attached a true and correct copy of this January 4, 2018 letter from the government as Exhibit 29.

47. Since June 2016, the government has made approximately 20 separate document productions, most recently on or about January 10, 2018, as referenced above. The government has thus far produced more than 4.3 million documents from at least 70 custodians, comprising well over 5.1 million pages – or a total of more than 1,500 gigabytes of data, including massive amounts of raw forensic and native data.The discovery has been incredibly difficult to review,

and has required enormous expenditures of attorney time and money simply to get it into shape where it could be reviewed.  For example:

- Many of the documents produced by the government did not indicate who the underlying custodian was.  The government produced in excess of 3 million documents gathered by the Securities and Exchange Commission and explained that the documents were produced to the SEC "by multiple custodians," but virtually all of the documents lacked custodian metadata.

- The government produced entire native and forensic images of certain drives and devices, without any information about what evidence on those drives or devices might be relevant, including an 850 GB drive containing forensic images of multiple other devices with no other identifying information and which cannot be loaded into a traditional document review platform.

- The government produced numerous files that were not text-searchable.

- The government produced "documents" that were in fact each hundreds or thousands of documents, meaning that they had to be reviewed page-by-page.  For example, one "document" is actually a 4,565 page scanned pdf of records from Fulton Meyer, consisting of a mix of e-mails, financials statements, and other records.

- The government stripped metadata out of certain documents.  For example, the government produced to Mr. Archer certain e-mails that it obtained pursuant to the warrants attached as Exhibit 5 above, without certain critical metadata fields such as DATE_ACCESSED and TIME_ACCESSED.  When Mr. Archer previously produced these exact same documents to the government, he did so with the relevant metadata.

48.     Mr. Archer's lawyers have also had to spend an inordinate time working through discovery issues with the government.  For example, Mr. Archer's counsel informed the government months ago that metadata was missing from the government's productions.  I had to make multiple requests, and receive several metadata overlays and follow up on them, to get to the point where only a handful of fields – which, as set forth above, I know are associated with the original documents – are still missing.  Where metadata was unavailable or corrupted, counsel worked in tandem with a vendor at significant expense to Mr. Archer in an attempt to

9

isolate files of interest and then manually identify associated native image files. Certain load files were corrupted in their entirety and had to be replaced.

49.     Jason Galanis, John Galanis, and Gary Hirst – all of whom are defendants in this case – were charged in a somewhat similar case in this District, *United States v. Galanis, et al.*, 15 Cr. 643 (PKC) (the "Gerova case"). The Gerova case was investigated and prosecuted by the U.S. Attorney's Office for the Southern District of New York, including some of the same AUSAs that have handled and are handling this case. The Gerova case was still pending when this case was initiated. I know from reviewing publicly-available transcripts in the Gerova case that Special Agent Bieniek was part of the government's trial team in the Gerova case in or about September 2016.

50.     Based upon my review of publicly-filed documents and transcrips in the Gerova case, I understand that at some point before or during the Gerova investigation by the United States Attorney's Office in this District, Jason Galanis attempted to cooperate with a United States Attorney's Office in California. During the course of that attempted cooperation, Galanis proffered to the government on at least one occasion, and also agreed to a consensual wiretap of his phone for over a year. The U.S. Attorney's Office is in possession of what they have described in open court as approximately a year of consensually wiretapped calls involving Jason Galanis. I understand that, at some point, the government determined that Galanis's cooperation was insincere.

51.     I know from speaking to other individuals and entities who have been the recipients of Grand Jury subpoenas in this case (and/or their lawyers) that the government has continued to issue Grand Jury subpoenas long after the Indictment in this case issued. Based upon my understanding of the evidence called for in those subpoenas, I believe that the only

possible reason for the government to have issued those subpoenas is for purposes of trial preparation in this case.

52. In the parallel civil case, the SEC has demanded that Mr. Archer produce not only every Rule 45 third-party subpoena he issued, but also all communications between his counsel and the third party reflecting negotiations about the scope of the subpoena or subsequent production. The SEC's position is that absent the subpoena or other process pursuant to which it was obtained and a record of the ensuing negotiations, it would be impossible to understand whether the third party had produced all of its records concerning the events alleged in this case, or only a subset requested by Mr. Archer.

53. I have attached a true and correct copy of a June 17, 2016 letter on behalf of Mr. Archer to the government as Exhibit 30.

54. I have attached a true and correct copy of email correspondence between the government and counsel for Mr. Archer dated from August 22, 2016 through October 14, 2016 as Exhibit 31.

55. I have attached a true and correct copy of a January 4, 2018 letter from the government to the Court [ECF No. 278] as Exhibit 32.

56. I have attached a true and correct copy of a December 28, 2017 letter from AUSA Lisa Korologos, on behalf of the government's "taint team," as Exhibit 33.

57. I have attached a true and correct copy of e-mail correspondence between myself and AUSA Lisa Korologos, on behalf of the government's "taint team," dated December 28, 2017 as Exhibit 34.

58. In discussions following the receipt by Mr. Archer of documents identified by the government's "taint team" as potentially being subject to the so-called "crime-fraud" exception

to the attorney-client privilege, *see* Exhibit 26, above, the government advised Mr. Archer's counsel that he did not need to do anything with respect to that material, as the government had not yet determined whether to invoke that doctrine, and that if it did, it would apply to the Court for relief. The government also did not answer questions that Mr. Archer's counsel raised repeatedly regarding its potential invocation of the crime-fraud doctrine. *See* Exhibit 34.

59. I have attached a true and correct copy of a declaration by Devon Archer as Exhibit 35.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 22, 2018
New York, New York

                                           /s/ Matthew L. Schwartz
                                           Matthew L. Schwartz