# EXHIBIT 9

H1VZZARCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

              v.                           16 Cr. 371(RA)

DEVON ARCHER, et al,

                                       Conference
              Defendants.

------------------------------x

                                   New York, N.Y.
                                   January 31, 2017
                                   4:45 p.m.

Before:

                       HON. RONNIE ABRAMS,

                                    District Judge

                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
REBECCA MERMELSTEIN
BRIAN BLAIS
AIMEE HECTOR
     Assistant United States Attorneys

BOIES, SCHILLER & FLEXNER, LLP
     Attorneys for Defendant Archer
MATTHEW LANE SCHWARTZ
DANIEL SCHWARTZ
STEPHEN KYRIACOU

PAULA JACLYN NOTARI
ABRAHAM J. HASSEN
     Attorneys for Defendant Cooney

ALSO PRESENT:  SHANNON BIENIEK, FBI

H1VZZARCC

1              (Case called)

2          THE COURT:  Good afternoon.  I understand both

3     defendants have waived appearance here today.

4          We're here to discuss the motions filed by Mr. Archer

5     and Mr. Cooney concerning search warrants that were served on

6     Google.  I received the letters, as well as that of the

7     government.  Mr. Archer and Mr. Cooney asked for two things,

8     the warrants themselves and an order directing Google on

9     holding off on producing the data while counsel decides whether

10    or not to challenge warrants.  The request for the warrants is

11    moot because the government indicated they will provide the

12    warrants to extent that they haven't already.  Let's talk about

13    the second issue, whether I should stay the execution of the

14    warrants pending counsels' review.  Mr. Schwartz, Ms. Notari,

15    who would like to begin.

16         MR. M. SCHWARTZ:  I will begin, if it please the

17    Court.  I want to slightly modify the request in light of what

18    we learned from the government's letter last night.  We still

19    have not seen, on behalf of Mr. Archer, an unredacted copy of

20    the warrant, but we learned from the government's letter that

21    it concerns three accounts, two of which are apparently

22    associated with Mr. Archer, and the service provider for one of

23    those accounts has already produced documents.  I would modify

24    our request as follows:  With respect to the Google account,

25    same request, that an order be issued that Google hold off on

H1VZZARCC

1   making a production, and with respect to the other the Apptix,

2   account, that the government segregate and not review any of

3   the data that it has received until your Honor orders.

4           I appreciate that the government has indicated that

5   it's going to produce the warrants and the application to us.

6   Of course, I asked for that immediately when we saw the

7   government's letter last night.  We haven't seen it yet.  I'm

8   told it's in the mail, which is fine.  We are still proceeding

9   sort of blind here.  To be clear, even with the information

10  that the government provided in its letter, there are still

11  parts of the warrant on its face that are effectively blacked

12  out to us.  We still haven't seen or received information about

13  the unredacted copy of the warrant.

14      THE COURT:  Ms. Mermelstein, do you intend to produce

15  unredacted versions?

16      MS. MERMELSTEIN:  Yes, your Honor.

17      THE COURT:  Is that what's in the mail?

18      MS. MERMELSTEIN:  Yes.  I'm happy to email a copy to

19  Mr. Schwartz today.  Mr. Schwartz is actually wrong.  There are

20  more than three accounts.  There are two accounts that belong

21  to Mr. Archer that are subject to the warrant.  There is, I

22  believe, I could be getting the math wrong, one that's

23  Mr. Cooney's and other accounts that belong to other

24  individuals.  We didn't reference those in the letter since

25  they don't pertain to this defendant, but just to be clear,

Case 1:16-cr-00371-RA Document 301-9 Filed 01/22/18 Page 5 of 22
Case 1:16-cr-00371-RA Document 335 Filed 02/02/17 Page 45 of 212       4
H1VZZARCC

```
1    there are more than three.  We will produce an unredacted copy.

2             THE COURT:  Email them today to both counsel.

3             MS. MERMELSTEIN:  Sure.

4             THE COURT:  Mr. Schwartz.

5             MR. M. SCHWARTZ:  This brings us to our request to

6    have an opportunity to examine that material and decide whether

7    to make a challenge, and also to ensure that there are

8    appropriate protocols in place to protect the attorney-client

9    privilege, which is throughout the materials, at least in the

10   two accounts that are associated with Mr. Archer.

11            Let me speak first about the procedural posture,

12   because the government, in its letter, although it doesn't cite

13   any case law, says this is not an acceptable way to proceed,

14   that it would be unprecedented for a Court to hear a motion to

15   quash a search warrant.  That's simply not the case.  First of

16   all, there's nothing at all in the federal rules that prohibits

17   a motion to quash a search warrant or to suggest that a

18   postexecution suppression motion is the only remedy.  To be

19   sure, that's the way it usually happens, because usually you

20   don't have the opportunity to quash a search warrant.  But

21   courts do entertain where the opportunity is presented motions

22   to quash a search warrant, and you don't have to look any

23   further than a decision from the Second Circuit last week that

24   quashed a search warrant to Microsoft for emails.  In that

25   case, the government themselves had argued that that's the
```

Case 1:16-cr-00371-RA Document 301-9 Filed 01/22/18 Page 6 of 22
Case 1:16-cr-00371-RA Document 315-9 Filed 02/02/17 Page 6 of 24          5
H1VZZARCC

1     appropriate procedure to be brought to challenge the warrant.

2              THE COURT:  You are asking for something akin to a

3     stay.  You are basically saying, I don't want the government to

4     start to do its job with respect to reviewing the data

5     responsive to the search warrants.  That's really what you are

6     asking for.  Is the issue really the timing of the motion, or

7     is the issue really whether I should direct the government to

8     hold off, to stay:  First, if I should direct Google not to

9     produce the documents.  'Second with regard to Apptix, whether

10    I should say, Don't do your job, hold off; I need to decide

11    this before you look at anything.

12              That's really what we are talking about here, right?

13              MR. M. SCHWARTZ:  I'm not sure I quite understand the

14    description.  I think, as a practical matter, you are exactly

15    right.  There is prejudice that would flow directly to

16    Mr. Archer, and others, because there are other individual

17    entities' attorney-client information that are in those emails

18    that would result from the government's review of that

19    material.  The relief that we are asking for is, first, a

20    period of time in which to decide whether to challenge that

21    warrant, then assuming that we make that decision, for your

22    Honor to hear that on its merits before the government

23    undertakes a review of the information that is responsive to

24    the warrants.

25              THE COURT:  Would I essentially be setting a precedent

1    every case in which a defendant has knowledge of a search

2    warrant that it's appropriate for the Court to tell the

3    government not to review the evidence responsive to that until

4    it can decide on the lawfulness of the warrant?

5              MR. M. SCHWARTZ:  I don't think so.  I don't think so

6    at all.  I don't think it's necessary for your Honor to issue

7    such a broad ruling.  I don't think that's the implication of

8    my argument.  I think in a lot of situations the equities and

9    the prejudices will favor the government going forward with the

10   execution of its warrant.  For example, when you're talking

11   about premises, there are legitimate concerns about the

12   movement of evidence or the destruction of evidence.  Those

13   concerns don't exist here, however, because both by its policy

14   and actually by statute, the service providers make copies of

15   all responsive data as soon as they receive the warrant.  There

16   is nothing that could be done here to prejudice the

17   government's position.  That's not true in other instances.

18             Again, this is not without precedent at all.  The

19   government itself urged this is the proper procedure in the

20   Microsoft case before the Second Circuit.  I could cite to you

21   other cases where Courts have entertained either motions to

22   quash search warrants before the fact or motions to enjoin

23   enforcement of search warrants.  Sometimes in the middle of a

24   search people run to court.  Sometimes it's a different kind of

25   search.  For example, you get a warrant for a blood or saliva

Case 1:16-cr-00371-RA Document 301-9 Filed 01/22/18 Page 8 of 22
Case 1:16-cr-00371-RA Document 235 Filed 02/02/17 Page 7 of 21          7
H1VZZARCC

1    sample, and that's litigated sometimes before the sample is

2    taken.  If you want cases, I would direct your Honor to *in the*

3    *matter of the search of Solomon*, 465 F.3d 114, a Third Circuit

4    case; *united States v. Kamma*, 394 F.3d 1236, a Ninth Circuit

5    case.  *In Re Search Warrants*, 810 F.2d 67, a Third Circuit

6    case.  The Southern District of New York urged in the Microsoft

7    case that was decided last week that this is the appropriate

8    procedure.  That's docket number 14-2985 in the Second Circuit.

9    I think that that demonstrates that this is an appropriate

10   procedural posture.

11           The government makes the argument that we have

12   conflated the right to obtain evidence with the right to use

13   evidence.  I think that's exactly wrong.  Whether you are

14   challenging a warrant before the fact or after its execution,

15   depending on the nature of the challenge, it's still

16   essentially a challenge as to whether the government was right

17   to have that evidence in the first place.  Think about, for

18   example, a *Franks* objection.  In a *Franks v. Delaware*

19   objection, a defendant says that there is an intentional

20   falsehood or omission in a warrant application, and the

21   procedure that the courts employ is you excise or correct the

22   falsehoods and then see if there's still probable cause.  If

23   there isn't, then you suppress the evidence.  That analysis

24   goes to whether there was probable cause in the first place,

25   had accurate evidence and accurate allegations been presented

Case 1:16-cr-00371-RA Document 301-9 Filed 01/22/18 Page 9 of 22
Case 1:16-cr-00371-RA Document 315 Filed 02/02/17 Page 8 of 21     8
H1VZZARCC

1     to the magistrate judge.  The inquiry is whether or not the

2     government was entitled to receive that evidence in the first

3     place.  Yes, it often happens, just as a matter of fact, as a

4     matter of the way investigations unfold, that the government

5     gets the evidence first.  Then you have to challenge it after

6     the fact.  Often, the government feels the need for safety or

7     case reasons to get their warrants under seal, but that wasn't

8     the case here and they, to their credit, acknowledged both

9     before the magistrate and in the letter to this Court that

10    there was no need to get this warrant under seal, because the

11    defendants were already indicted, because they were going to

12    produce the evidence immediately, and they didn't say this, but

13    because there was no risk of spoliation of evidence.  But

14    having chosen to do that, and that was really the only possible

15    choice, you open yourself up to scrutiny of the warrants

16    application.

17          Unless your Honor has questions, that's why it's

18    appropriate to hear this motion now.

19          The second question is what do we do about it.  I

20    think your Honor is right that the relief that we are asking

21    for is an opportunity to review the warrant application, which

22    the government says it will give to us, and the warrant, which

23    the government says it will give to us, and see if there is a

24    basis for challenge.  As we wrote in our letter, the warrant,

25    from what we can see, suggests several bases for challenge, and

H1VZZARCC

1    I can think of others, but there's at least one basis for

2    challenge that is facial, and we don't need to see anything

3    else, and that's the fact that the warrant itself contains

4    absolutely no procedure for the protection of the

5    attorney-client privilege and no prohibitions on the government

6    collecting and reviewing attorney-client privilege information.

7    That makes the warrant application defective on its face.

8              Even the cases cited by the government recognize that

9    there are such procedures.  For example, the *Hunter* case that

10   they cite, the *Vermont* case says, "The warrant application

11   included a detailed set of instructions to the searching

12   agents, to AUSAs and to computer analysts, all designed to

13   limit invasion of confidential or privileged or irrelevant

14   material."  Even your Honor's decision in the *Liu* case, that

15   was an after-the-fact challenge and you talked about ethical

16   walls, but another thing that happened in that case was the

17   government put forward the specific procedures in court that

18   they intended to employ to protect the attorney-client

19   privilege, and the defense never objected to that procedure,

20   and your Honor held that that was a waiver.  We are not

21   waiving.  The other entities whose privilege is implicated are

22   not waiving.

23             There are, in these emails, potentially many, many

24   more privileged communications than there are responsive ones.

25   Just to give your Honor a sense of numbers, and to be clear,

Case 1:16-cr-00371-RA Document 305-9 Filed 01/22/18 Page 11 of 22
Case 1:16-cr-00371-RA Document 235 Filed 02/02/17 Page 10 of 24      10
H1VZZARCC

1    Mr. Archer has already produced hundreds of emails from these

2    email accounts in response to the government's subpoenas and

3    the SEC subpoenas.  But with respect to the Gmail account, we

4    produced hundreds of emails.  There are at least 2,600 emails

5    that potentially implicate the attorney-client privilege

6    because they have a lawyer somewhere on the chain.  The other

7    account, the Apptix account, again, we produced hundreds of

8    emails.  There are more than 6,300 emails that have potentially

9    attorney-client privilege information.

10          THE COURT:  The government says that having been

11   apprised the defendant's email contains privileged emails, the

12   government will, as it routinely does, use a wall AUSA or taint

13   team to review the defendant's emails for privilege, and if the

14   defendant would like to provide a list of attorneys with whom

15   he communicated, the government will specifically segregate

16   such communications for privilege review.

17          MR. M. SCHWARTZ:  For privilege review from the wall

18   AUSA.  If the wall AUSA determines that the documents are not

19   privileged, they will just turn it over to the investigation

20   team, and if the wall AUSA determines that it might be

21   privileged, I don't understand what the government's proposal

22   is.

23          One of the problems here is that we have no protocol

24   in place.  For the reasons we put in our letter, even a wall

25   AUSA is not really an acceptable protocol.  I would point your

H1VZZARCC

1     Honor's attention in this regard to a Sixth Circuit decision.

2     454 F.3d 511.  In that decision, the Court of Appeals

3     overturned a decision by the district court allowing a taint

4     team, and ordered instead that the proper procedure was that

5     first a special master should segregate potentially privileged

6     emails because they included someone from a list that the

7     defense had provided.  Then the defense was allowed to review

8     the documents for privilege, provide a privilege log to the

9     government, then as in the ordinary course if there were

10    disputes about whether something was properly withheld, then it

11    was elevated to the court.  That's the right way to do this.

12         The privilege belongs to Mr. Archer.  The privilege

13    belongs to the entities and other individuals that are involved

14    in those communications.  The privilege doesn't belong to the

15    government.  All of the cases say that, yes, sometimes a wall

16    AUSA can be appropriate when it's protective of the privilege,

17    when, for example, it's a covert investigation and they do that

18    in order to ensure that there's not leakage.  In a situation

19    like this, where we have the opportunity to ensure that a

20    proper procedure is in place, and that the holder of the

21    privilege can make the privilege determinations, that's the

22    right way to do it.  And very significantly, the government, I

23    think, would want to do it this way because they are asking for

24    a lot of problems if they don't.  If we use a wall AUSA in this

25    case, anything that happens after that is opened up to question

Case 1:16-cr-00371-RA Document 305-9 Filed 01/22/18 Page 13 of 22
Case 1:16-cr-00371-RA Document 235 Filed 02/02/17 Page 12 of 24          12
H1VZZARCC

 1    whether it's tainted by information that crossed that ethical

 2    wall.

 3           The government in the Sixth Circuit case conceded that

 4    that raises *Kastigar*-like problems that created the need for

 5    evidentiary hearings.  Your Honor, I assume, knows fairly well

 6    that's a compelled-testimony case.  It's the same way here.

 7    They are not entitled to privileged communications.  If that

 8    information crosses the wall, not through malice but through

 9    inadvertence or for any other reason, you run the risk that it

10    informs everything else they do.  It informs the questions,

11    their trial strategy, their investigative steps.  Then that

12    creates a problem of whether everything ought to be suppressed.

13           To be clear, the government cites cases saying the use

14    of a wall AUSA has never led to wholesale suppression of

15    evidence.  That's admittedly true in this district.  It's not

16    true throughout the country.  I can cite cases.  The principle,

17    which the Supreme Court has endorsed, is that sufficient

18    invasion of the attorney-client privilege by the government can

19    lead not only to suppression of evidence but dismissal of the

20    indictment outright.  That's the *Morrison* case, 449 U.S. 361.

21           It seems to me that we have an opportunity here.  It's

22    not as if we have a trial date that's coming up soon.  We have

23    an application that the government has made for a warrant.

24    They have obtained a warrant.  We can put in place a procedure

25    for the defense to make a challenge, if one is warranted, and

Case 1:16-cr-00371-RA Document 305 Filed 01/22/18 Page 14 of 22
Case 1:16-cr-00371-RA Document 235 Filed 02/02/17 Page 13 of 24          13
H1VZZARCC

1    for the parties to either agree upon or for your Honor to

2    decide upon a protocol to ensure that the attorney-client

3    privilege is protected.  That's going to save us all from a lot

4    of litigation and appellate issues down the road.  Or the

5    government can just go forward.  First of all, they are on

6    notice now of these issues, so we shouldn't have to entertain a

7    good-faith defense later on.  They are going to open themselves

8    up to these taint sort of issues.  It seems to me there's a

9    simple solution that, again, I think the government would

10   embrace here, but I take it that they haven't.

11           THE COURT:  Do you want to add anything, Ms. Notari?

12           MS. NOTARI:  I filed my motion late.  I would join in.

13    They didn't have the benefit of my filing when they filed.

14   I'm not sure if there was any production regarding Mr. Cooney.

15           Was there any?

16           MS. MERMELSTEIN:  I don't believe that Mr. Cooney had

17   an Apptix account, so I don't think the government has

18   possession at this point of any emails for Mr. Cooney's

19   account.

20           THE COURT:  Do you have any better sense of timing of

21   the Google production?

22           MS. MERMELSTEIN:  Disconcertingly, it appears -- and

23   I'm not certain of this; Mr. Schwartz may be better situated to

24   answer it -- that the mere fact that he filed something in the

25   court has caused Google to not comply with the lawful order to

H1VZZARCC

1    produce the Gmail accounts.  That seems shocking to me,

2    frankly, but it appears to be the case.  Assuming, as I think

3    there can really be no question as to appropriate action here,

4    that this motion is denied, I think your Honor may have to

5    issue a second order to Google saying, I denied it and now it

6    needs to be produced.  The 30 days expired over the weekend,

7    but I think they are standing down.

8             THE COURT:  I didn't mean to interrupt you, Ms.

9    Notari.  Did you have anything else you would like to say?

10            MS. NOTARI:  No.  I would just join in.

11            THE COURT:  Would you like to respond?

12            MS. MERMELSTEIN:  Yes.  Thank you, your Honor.

13            I think this is borderline frivolous.  First of all,

14   let me just say I don't think the Microsoft opinion, which I

15   have not read -- it wasn't cited in Mr. Schwartz's brief -- is

16   at all on point here.  That's a case in which the service

17   provider moved to quash the search warrant.  They obviously

18   either have to comply or move to quash it.  That's not the same

19   as here where it's the user of the account who doesn't want the

20   government to see his emails, so I don't think it's analogous.

21   This is an incredibly routine investigative situation, and I

22   think your Honor is right that there's no cause to stop the

23   government from doing its job.  The notion that where an

24   investigation is not at a covert stage the government won't

25   have access to information until a motion to suppress has been

H1VZZARCC

1    decided would be a shocking departure from, I think, both the

2    law and the practice in this district and would create a

3    terrible slippery slope of defendants saying if you are getting

4    a search warrant, I want an opportunity to be heard before it's

5    executed.  It would delay significantly the government's

6    ability to investigate these cases.  I don't think there's any

7    basis for it whatsoever.

8        THE COURT:  What's the prejudice here?  It's true,

9    over your objection, I have not yet scheduled a trial date,

10   although I will do that when we meet approximately a month from

11   now.  What's the prejudice here?

12       MS. MERMELSTEIN:  I think it's two-fold.  Maybe

13   three-fold.  One, although there's no trial date, there is

14   going to be one.  The government may want to take additional

15   investigate steps once it has reviewed these emails.  If these

16   emails cannot be reviewed by the government for some period of

17   time, that means the government can't start the process of

18   reviewing them and producing them to other defendants.  Then we

19   will be in a situation where other defendants will say they

20   don't have enough time.  I think there's prejudice to the

21   government in delaying its investigation in any case but all

22   the more so in a case that has been charged.

23       I separately think that whether or not in this

24   particular case it would be a crisis for the government, it

25   would set a very terrible precedent in this district.  I'm not

H1VZZARCC

1    aware of a single case in which it's been done.  That would

2    obstruct the government's investigation in every case where

3    defendants are then moving to suppress before ever even seeing

4    anything.  There are obviously also going to be cases where it

5    turns out there's nothing to suppress -- the email account is

6    empty, the email account has nothing that's relevant to the

7    case -- and you are litigating a huge issue before it's even

8    necessary.  It's really sort of premature to fight about

9    whether or not something is admissible at trial when no one has

10   even said they want to admit it at trial.  I think it would be

11   a very, very troubling outcome to suggest that the government

12   needs to stand down and can't enforce its lawful warrant in

13   this case, or in any case.  I don't think there is a single

14   case where that has been done in a case like this.

15        To the extent that there are privileged

16   communications, we take Mr. Schwartz obviously at his word that

17   there are, and we are happy to run whatever lawyers' names

18   defense proffers through and segregate those things.

19   Ultimately, the risk is on the government.  If it turns out

20   that that gives rise to a suppression motion because Mr.

21   Schwartz doesn't like the way it's been done, then he can bring

22   that motion, but we are not willing to agree to that procedure.

23   We don't think it's appropriate, and if that risk is on the

24   government, then that risk is on the government.

25        THE COURT:  Would you be willing to meet with defense

Case 1:16-cr-00371-RA Document 301-9 Filed 01/22/18 Page 18 of 22
Case 1:16-cr-00371-RA Document 135 Filed 02/02/17 Page 17 of 24          17
H1VZZARCC

1     counsel, as was suggested, and try to agree upon a protocol for

2     reviewing the documents?

3             MS. MERMELSTEIN:  We're, of course, happy to discuss a

4     protocol with defense counsel.  That can't draw out the process

5     unnecessarily, so we need to have that discussion immediately.

6     Yes, of course, we're happy to discuss what search terms we

7     want and whether or not there are additional search terms that

8     need to be added, etc.

9             THE COURT:  Do you want to discuss the issue with

10    respect to protocols for the wall any further?

11            MS. MERMELSTEIN:  I don't, your Honor.  I think this

12    is, candidly, a fairly standard process.  I think there is a

13    reason to treat cases like this differently than some of the

14    cases that get cited.  With regard to *Liu*, a law firm was

15    searched.  That obviously implicates a different privilege

16    context than an individual who may have communicated with

17    lawyers.  I think we're comfortable with our protocols.  We use

18    them all the time.  I don't think there's more to say.

19            THE COURT:  Let's take a break for a few minutes.  I'm

20    going to take a quick look at the cases cited by Mr. Schwartz.

21    Let's plan to meet back here at a quarter after.

22            (Recess)

23            THE COURT:  I am not going to block the execution of

24    these warrants.  The motion is denied.

25            I will say I don't agree with the government that this

Case 1:16-cr-00371-RA Document 305-9 Filed 01/22/18 Page 19 of 22
Case 1:16-cr-00371-RA Document 235 Filed 02/02/17 Page 18 of 24          18
H1VZZARCC

1   is frivolous.  I would describe it rather as novel,.  But that

2   said nothing unusual about the government reviewing electronic

3   data pursuant to a search warrant, and there's nothing out of

4   the ordinary about having to sort through privilege issues in

5   the course of its review.  The only thing about this situation

6   that appears to be somewhat unusual, although I expect it will

7   come up more and more, is that Google gave Mr. Archer and

8   Mr. Cooney advance notice of the warrants.  I don't mean to

9   discount the novelty or complexity of some of the

10  constitutional issues that may be raised by warrants involving

11  electronic data.  It's clear from the Second Circuit's recent

12  *en banc* decision in *Ganais* that we are only beginning to

13  grapple with some of these issues.  Mr. Archer and Mr. Cooney

14  are essentially asking me to set a precedent for staying the

15  execution of all warrants of this nature, to allow a potential

16  pre-execution motion, a proposition for which they offer no

17  authority in this circuit and which I'm not prepared to adopt

18  today.  The magistrate judge has deemed these warrants to be

19  proper, and Mr. Archer and Mr. Cooney will have ample

20  opportunity to challenge the validity of the warrants and the

21  manner in which the government conducts its search.  As Ms.

22  Mermelstein noted, the risk is on the government.  I am not

23  willing at this time to take the novel step of blocking the

24  execution of these warrants.

25          That is my ruling.  The motions are denied.  If

Case 1:16-cr-00371-RA Document 305-9 Filed 01/22/18 Page 20 of 22
Case 1:16-cr-00371-RA Document 325 Filed 02/02/17 Page 19 of 24        19
H1VZZARCC

1    there's a need for me sign an order with respect to Google,

2    submit a proposed order to that effect.

3          MS. MERMELSTEIN:  I will, your Honor.  If we can

4    request in the first instance that Mr. Schwartz notify Google

5    that his opposition has been denied or he is withdrawing it,

6    and we will see if that solves the problem.  Otherwise, we will

7    submit something to you tomorrow.

8          THE COURT:  Unless there are any other applications,

9    we are adjourned.

10         MR. M. SCHWARTZ:  There is, your Honor.  I would ask

11   that your Honor stay your order for 14 days so that we can

12   decide whether to take an interlocutory appeal and seek a stay

13   from the Second Circuit.  It's well established under the

14   Supreme Court's decision in *Pearlman* that a privilege holder

15   can appeal a disclosure order, "Directed at a disinterested

16   third party, because the third party presumably lacks a

17   sufficient stake in the proceeding to risk contempt of future

18   compliance ."

19         MS. MERMELSTEIN:  Your Honor, Mr. Schwartz keeps

20   quoting cases that weren't in his letter.  I don't have that

21   case in front of me.  It does not seem to me to be directly the

22   situation that we have here.  I don't think a stay of 14 days

23   is appropriate.

24         MR. M. SCHWARTZ:  Your Honor, I'm happy to put in a

25   letter within the next 24 hours citing the authority for the

H1VZZARCC

 1    interlocutory appeal.  I'm sure there's no prejudice to the

 2    government to take an additional day to understand the case

 3    law.

 4              THE COURT:  Do that.  I will give you until tomorrow

 5    at noon to submit a letter.  If the government would like to

 6    submit a letter in response, I will give you another day.  Then

 7    I will rule promptly upon that with respect to the request for

 8    a stay.

 9              MR. M. SCHWARTZ:  Thank you.

10              MS. MERMELSTEIN:  I'm sorry, your Honor.  I think

11    given the time it takes to get these things, the government's

12    request would be that Google be directed to provide the

13    materials.  We won't look at them until your Honor has ruled on

14    this.

15              THE COURT:  I will do that.  You are free to go to

16    Google and say that these objections have been denied.  I want

17    it to be clear that you are not to review the material, to the

18    extent Google provides it, prior to either my decision on the

19    request for the stay, and if I grant the request for the stay,

20    the circuit's ruling.

21              MS. MERMELSTEIN:  I think because the opposition is

22    from Mr. Schwartz, he may need to notify Google of that.  If

23    that's not sufficient, we will have to get an order from your

24    Honor.  They won't take our word for it.  I understand the

25    ruling.  Obviously, we won't look at it until the issue is

H1VZZARCC

1  resolved.

2          THE COURT:  We always have the transcript here as

3  well.

4          MS. MERMELSTEIN:  Yes, although by the time we get it

5  and send it to Google, I think it will be resolved.

6          THE COURT:  Tell me if you need anything from me in

7  this respect.

8          MR. M. SCHWARTZ:  We would object to an order for

9  Google to provide that information now.  I don't think it

10 would, but one could imagine an argument that the provision of

11 that data to the government could moot any appeal.  I think in

12 an abundance of caution, since there's no prejudice to the

13 government, there's no reason to do that.

14         THE COURT:  Since we are only talking about two days

15 here, if you want to mention that in your letter, you can

16 mention that in your letter.  Whether it would moot the appeal,

17 I wouldn't think so.  I would think that there would be a good

18 argument that the privacy interest is invaded during the review

19 of the material, but that's an offhand response, and I haven't

20 thought the issue through.  I don't want to rule on it one way

21 or the other.  Feel free to address that in the letters.

22         In the meantime, we will hold off with respect to

23 Google.  We will be in a position to get back to Google one way

24 or another within two days.  Thank you.

25         (Adjourned)