# EXHIBIT 15

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | <u>AFFIRMATION</u> |
| Appellee, | : | Dkt. No. 17-346 (L), 17-348 (CON)[1] |
| - v. - | : | |
| DEVON ARCHER, and BEVAN COONEY, | : | |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK    )
COUNTY OF NEW YORK   :  ss.:
SOUTHERN DISTRICT OF NEW YORK  )

   BRIAN R. BLAIS, pursuant to Title 28, United States Code, Section

1746, hereby affirms under penalty of perjury:

---

[1] Docket No. 17-346 is Archer's interlocutory appeal of the District's Court order denying his motion for an order precluding a service provider from producing material called for by a search warrant and precluding the Government from reviewing materials already received from a different service provider in response to the warrant.  Docket No. 17-348 is Cooney's appeal of that same denial. Archer has also petitioned, under Docket No. 17-353, for a writ of mandamus regarding the same underlying order of the District Court.  This Court has denied Archer's motion to consolidate Docket No. 17-353, with Docket Nos. 17-346 and 17-348.  The Government is addressing matters relating to both Archer's and Cooney's appeals, as well as Archer's petition for a writ of mandamus, in a single affirmation, which the Government will file under all applicable docket numbers.

1.      I am an Assistant United States Attorney in the Office of Preet
Bharara, United States Attorney for the Southern District of New York, and am
one of the Assistant United States Attorneys representing the Government on this
appeal.   I respectfully submit this affirmation in support of the Government's
motion to dismiss the interlocutory appeals of Devon Archer and Bevan Cooney
for lack of jurisdiction because the Order appealed from is neither a final judgment
nor an appealable collateral order.   In the alternative and to the extent this Court
exercises jurisdiction over Archer and Cooney's appeal, I submit this affirmation
in opposition to Archer's motion for a stay pending resolution of the appeal.
Finally, I submit this affirmation in opposition to Archer's petition for a writ of
mandamus, filed under Docket No. 17-353.

## STATEMENT OF FACTS

2.      On May 31, 2016, Indictment 16 Cr. 371 (RA) was filed in four
counts against Archer, Cooney and five other defendants.   On November 2, 2016,
Superseding Indictment S1 16 Cr. 371 (RA) (the "Indictment") was filed, naming
the same seven defendants in the same four counts.   As relevant for purposes of
this appeal, Count One of the Indictment charges Archer, Cooney and others with
participation in a conspiracy to commit securities fraud, in violation of Title 18,
United States Code, Section 371.   Count Two charges Archer, Cooney and others

2

with securities fraud, in violation of Title 15, United States Code, Sections 78j(b)

and 78ff, Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18,

United States Code, Section 2.[2]  The matter remains pending in the pretrial phase

before the Honorable Ronnie Abrams, United States District Judge, and no trial

date has yet been scheduled.

     3.     On December 28, 2016, upon the Government's application, the

Honorable Barbara C. Moses, United States Magistrate Judge, authorized the

issuance of a search warrant (the "Search Warrant") directing the service providers

maintaining custody and control of five electronic mail ("email") accounts to

provide certain contents of those accounts to the Government so that these

materials could be searched by Government personnel, in accordance with review

procedures set forth in the Search Warrant, for information falling within the scope

of the Search Warrant.

     4.     On or about January 26, 2017, without objection from the

Government because no non-disclosure order had been sought by the Government,

one of the service providers to whom the Search Warrant was directed, Google Inc.

("Google"), provided notice to defendant Archer that it had received a search

---

[2] Archer and Cooney were not charged in Counts Three and Four.

warrant for certain contents of an email account subscribed to Archer and maintained by Google.

5.      On January 27, 2017, Archer filed a motion before Judge Abrams seeking (1) an order compelling the Government to provide a copy of the Search Warrant and the underlying application materials that led to the issuance of the Search Warrant; and (2) an order precluding Google from compliance with the Search Warrant until such time as Archer could ascertain whether to file a motion to quash the Search Warrant.   (Dist. Ct. Docket Entry 126).[3]   Cooney joined in Archer's motion.   (Dist. Ct. Docket Entry 128).

6.      On January 30, 2017, the Government filed an opposition to Archer's motion.   (Dist. Ct. Docket Entry 130).   In that opposition, the Government advised the Court that it would provide a copy of the Search Warrant and underlying application materials to Archer and Cooney.   The Government also advised the Court that it had received, but not yet reviewed, materials sought by the Search Warrant from a different service provider, Apptix, including with

---

[3] "Dist. Ct. Docket Entry" refers to the corresponding numbered entry in the District Court's docket for this case; "App. Ct. Docket Entry" refers to the corresponding numbered entry in this Court's docket for this appeal; "Tr." refers to the transcript of the January 31, 2017 conference before Judge Abrams, which is included as Exhibit B to Archer's Emergency Motion for a Stay filed in this Court.; and "Mot." refers to Archer's motion in this Court seeking entry of a stay pending appeal.

respect to an account subscribed to by Archer.   To date, because of the pendency

of a challenge by Archer and Cooney, Google has not provided materials called for

by the Search Warrant from the accounts of Archer and Cooney.

7.     On January 31, 2017, the parties appeared for a conference before

Judge Abrams.   At the conference, Archer orally amended his motion to include a

request for an order precluding the Government from reviewing any materials

provided by Apptix in response to the Search Warrant.   (Tr. 2-3).   In oral rulings

at the conference, Judge Abrams denied the first part of Archer's motion—seeking

an order compelling the Government to provide Archer with a copy of the Search

Warrant and the underlying application materials—as moot because the

Government had agreed to provide those materials.   (Tr. 2).   Judge Abrams also

denied Archer's motion for an order precluding Google from producing material

called for by the Search Warrant and precluding the Government from reviewing

materials already received from Apptix, stating that she was "not willing at this

time to take the novel step of blocking the execution of these warrants."   (Tr. 18).

Judge Abrams stated, "Mr. Archer and Mr. Cooney are essentially asking me to set

a precedent for staying the execution of all warrants of this nature [i.e., pre-

execution warrants for which notice has been provided to the accountholder by the

service provider], to allow a potential pre-execution motion, a proposition for

5

which they offer no authority in this circuit and which I'm not prepared to adopt today. The magistrate judge has deemed these warrants to be proper, and Mr. Archer and Mr. Cooney will have ample opportunity to challenge the validity of the warrants and the manner in which the government conducts its search."   (Tr. 18).

8.     On February 1, 2017, Archer filed in the District Court a motion seeking a stay of the District Court's Order for 14 days to allow time for an interlocutory appeal of the District Court's order denying Archer's motion for an order precluding Google from producing material called for by the Search Warrant and for an order precluding the Government from reviewing materials already received from Apptix,   (Dist. Ct. Docket Entry 132).   Cooney joined this motion. (Dist. Ct. Docket Entry 134).

9.     On February 3, 2017, Judge Abrams, in a written order that incorporated her ruling denying Archer's original motion for an order precluding Google's compliance with the Search Warrant and the Government's review of Apptix materials, also denied Archer's motion for a 14-day stay (the "Order") (Dist. Ct. Docket Entry 140).   Judge Abrams concluded that Archer had not demonstrated a likelihood of success on the merits of his appeal and had not shown irreparable injury in the absence of a stay, and also found that the Government

would be prejudiced from delay in its review of the materials called for by the Search Warrant and that the public interest did not favor a stay.   (Order at 2-3). Judge Abrams did, however, grant a 72-hour stay of her Order to allow time for an expedited petition to this Court for a further stay.

10.     Archer and Cooney have filed notices of appeal from the Order.   On February 6, 2017, Archer filed an emergency motion in this Court for a stay pending resolution of this appeal.   (App. Ct. Docket Entry 19).   On February 6, 2017, this Court granted a temporary stay of the District Court's Order pending resolution of Archer's emergency motion for a stay.   (App. Ct. Docket Entry 28).

## **ARGUMENT**

## I.    THE APPEAL SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A.    Applicable Law

#### 1.    The Collateral Order Doctrine

11.     Title 28, United States Code, Section 1291 expressly limits the jurisdiction of Courts of Appeals to "final decisions of the district courts."   28 U.S.C. § 1291.   "This final judgment rule requires that a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits. In a criminal case, the rule prohibits appellate review until conviction and imposition of sentence."   *Flanagan v. United States*, 465 U.S. 259, 263 (1984)

7

(internal citations and quotation marks omitted).   As the Supreme Court has "long

held," the "policy of Congress embodied in this statute is inimical to piecemeal

appellate review of trial court decisions which do not terminate the litigation, and .

. . this policy is at its strongest in the field of criminal law."   *United States v.

Hollywood Motor Car Co.*, 458 U.S.263, 270 (1982) (noting "overriding policies

against interlocutory review in criminal cases" and that "exceptions to the final

judgment rule in criminal cases are rare").

12.     There is a limited exception to this rule that permits immediate appeal

from certain collateral orders.   *See Coopers & Lybrand v. Livesay*, 437 U.S. 463,

468 (1978) (citing *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)).

To fall within the "small class" of decisions that constitute immediately appealable

collateral orders, the decision must "(1) conclusively determine the disputed

question, (2) resolve an important issue completely separate from the merits of the

action, and (3) be effectively unreviewable on appeal from a final judgment."   *Van

Cauwenberghe v. Biard*, 486 U.S. 517, 522 (1988) (internal quotation marks

omitted).

13.     The Supreme Court has made clear that the collateral order exception

should be "interpreted . . . with the utmost strictness in criminal cases."   *Midland

Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (internal quotation marks

omitted).   As the Supreme Court has explained, "[a]lthough we have had

numerous opportunities in the 40 years since *Cohen* to consider the appealability of

prejudgment orders in criminal cases, we have found denials of only three types of

motions to be immediately appealable: motions to reduce bail, motions to dismiss

on double jeopardy grounds, and motions to dismiss under the Speech or Debate

Clause."   *Id*. (internal citations omitted).   The Supreme Court contrasted the

decisions recognizing these few exceptions "with the far more numerous

[decisions] in which we have refused to permit interlocutory appeals[.]"   *Id*.

14.    As to the third *Van Cauwenberghe* criterion, "[a]n order is effectively

unreviewable where the order at issue involves an asserted right the legal and

practical value of which would be destroyed if it were not vindicated before trial."

*United States v. Punn*, 737 F.3d 1, 5 (2d Cir. 2013) (quoting *Lauro Lines s.r.l. v.*

*Chasser*, 490 U.S. 495, 498-99 (1989) (internal quotation marks omitted)).   A

ruling that is burdensome to a party "in ways that are only imperfectly reparable by

appellate reversal of a final district court judgment is not sufficient."   *Id.* (quoting

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (internal quotation

marks omitted)).   The Supreme Court has emphasized that the third criterion,

"whether a right is 'adequately vindicable' or 'effectively reviewable,' simply

cannot be answered without a judgment about the value of the interests that would

be lost through rigorous application of a final judgment requirement." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. at 107 (internal quotation marks omitted). Rather, "[t]he justification for immediate appeal must . . . be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Id*.

15.    In a criminal case, the availability of post-judgment relief through reversal of conviction, if warranted, will generally be sufficient to protect whatever right a defendant claims was abridged by the district court's pretrial decision. *See, e.g.*, *United States v. Punn*, 737 F.3d at 14 ("Punn's claim can be adequately vindicated upon appeal from a final judgment. . . . [I]f Punn's arguments continue to fail before the district court, purportedly ill-gotten evidence or its fruits are admitted at his trial, and conviction results, appellate review will be available at that point[,] . . . [and the Court] may order a new trial without the use of the ill-gotten evidence, or whatever additional remedies are necessary to ensure that Punn's legitimate interests are fully preserved."); *United States v. Hitchcock*, 992 F.2d 236, 238-39 (9th Cir. 1993) (district court's refusal to seal documents not immediately appealable because "[r]eversal after trial, if it is warranted, will adequately protect . . . interest[s]" asserted by defendant). "Instead, the decisive consideration is whether delaying review until the entry of final judgment would imperil a 'substantial public interest' or 'some particular value of a high order.'"

10

*Mohawk Indus.*, 558 U.S. at 107 (quoting *Will v. Hallock*, 546 U.S. 345, 353 (2006)); *see also Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 241 (2d Cir. 2006).

### 2.    The *Perlman* Doctrine

16.    Under the *Perlman* doctrine, "the holder of an asserted privilege may immediately appeal the enforcement of a subpoena when the subpoena is directed at another person who does not object to providing the testimony or documents at issue." *In re Air Crash at Belle Harbor, N.Y. on Nov. 12, 2001,* 490 F.3d 99, 106 (2d Cir. 2007); *see also Perlman v. United States*, 247 U.S. 7 (1918). "The theory of immediate appealability in these cases is that the third party will not be expected to risk a contempt citation and will surrender the documents sought, thereby letting the 'cat out of the bag' and precluding effective appellate review at a later stage." *In re Katz,* 623 F.2d 122, 124 (2d Cir.1980).

17.    In light of subsequent case law development, particularly *Mohawk Indus., Inc. v. Carpenter*, in which the Supreme Court affirmed the dismissal for want of jurisdiction of an appeal of a compulsion order that reached what a party to the litigation claimed were attorney-client privileged materials, the ongoing validity of the *Perlman* doctrine as a ground of jurisdiction is in doubt, at least in circumstances where the party seeking an interlocutory appeal is a party to the

underlying litigation and thus has the ability to appeal from a final judgment.
*Mohawk Indus., Inc.*, 558 U.S. at 107-08.   This Court has recognized the tension
between *Perlman* and its progeny, and *Mohawk*.   *See United States v. Punn*, 737
F.3d at 11 n.8 ("We express no opinion as to whether, given subsequent case law
development, an order denying a client's motion to quash a subpoena directed to
his attorney, when the client is already under indictment or a party to litigation,
would still be immediately appealable today.").   The Sixth Circuit has held, and
the Seventh, Ninth, and Tenth Circuits have stated in dicta, that in cases where a
privilege holder is a party to the litigation and thus can vindicate his rights through
an appeal from a final order, interlocutory jurisdiction under *Perlman* does not
survive *Mohawk*.   *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 238 (6th Cir.
2011) ("In the instant case, where the privilege holder is a party to the litigation
with recourse in a post-judgment appeal, we conclude that *Perlman* no longer
affords jurisdiction to hear this interlocutory appeal."); *Wilson v. O'Brien*, 621
F.3d 641, 643 (7th Cir. 2010) ("*Mohawk Industries* calls *Perlman* and its
successors into question, because, whether the order is directed against a litigant or
a third party, an appeal from the final decision will allow review of the district
court's ruling. Only when the person who asserts a privilege is a non-litigant will
an appeal from the final decision be inadequate."); *United States v. Krane*, 625

F.3d 568, 572-73 (9th Cir. 2010) ("*Mohawk* forecloses interlocutory appeal of some district court orders in reliance on the fact that 'postjudgment appeals generally suffice to protect the rights of litigants and assure the vitality of the attorney-client privilege.' . . . Further, in this case, neither the privilege holder nor the custodian of the relevant documents are parties to the underlying criminal proceedings. Thus, for all practical purposes, this appeal is [movant]'s only opportunity to seek review of the district court's order adverse to its claims of attorney-client privilege." (internal citations omitted)); *United States v. Copar Pumice Co., Inc.*, 714 F.3d 1197, 1208 (10th Cir. 2013) ("Even if we were not bound by our precedent limiting *Perlman* to criminal grand jury proceedings, the persuasiveness of the cases relied upon by Defendants to extend *Perlman* here—a civil action where the privilege holder is a party—is greatly undermined, if not entirely foreclosed, by *Mohawk.*"); *but see In re Grand Jury*, 705 F.3d 133 145 (3d Cir. 2012) ("we decline to hold that the Supreme Court narrowed the *Perlman* doctrine—at least in the grand jury context—*sub silentio*.").

### 3. Appeals Involving Injunctions

18.    Title 28, United States Code, Section 1292(a)(1) provides that Courts of Appeals shall have jurisdiction over "interlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying,

refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."   Orders regulating discovery in a criminal case, even if couched "using words of restraint," are not injunctions and are therefore not appealable under § 1292(a)(1).   *See United States v. Pappas*, 94 F.3d 795, 798 (2d Cir. 1996) ("Protective orders that only regulate materials exchanged between the parties incident to litigation, like most discovery orders, are neither final orders, appealable under 28 U.S.C. § 1291, nor injunctions, appealable under 28 U.S.C. § 1292(a)(1)." (internal citations omitted)).

###    B.    Discussion

19.     There is no dispute that the Order is not a final judgment and thus is not appealable, unless it fits within the "small class" of decisions that constitute immediately appealable collateral orders.   *Van Cauwenberghe* v. *Biard*, 486 U.S. at 522.   The Order here is not appealable under either (1) the collateral order doctrine; (2) the *Perlman* doctrine; or (3) 28 U.S.C. § 1292(a)(1), which allows for interlocutory appeal of decisions regarding injunctive relief.   Because this Order does not fit within the "small class" of decisions for which interlocutory review is warranted, this appeal should be dismissed.

### 1.  The Order is Not Appealable Under the Collateral Order Doctrine

20.     The Order does not fall within the extremely narrow category of collateral orders that are appealable in criminal cases, in which the collateral order rule is "interpreted . . . with the utmost strictness," *Midland Asphalt Corp. v. United States*, 489 U.S. at 799.   Among other things, the Order does not meet the third criterion of the standard for identifying immediately appealable collateral orders, which requires that the order being appealed from be "effectively unreviewable on appeal from a final judgment."   *Van Cauwenberghe*, 486 U.S. at 522.   Accordingly, this Court does not have jurisdiction to review the Order and the appeals of Archer and Cooney should be dismissed.

21.     Appellate jurisdiction over Archer's and Cooney's claims premised on the collateral order doctrine is squarely foreclosed by the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter*.   In that case, the Supreme Court affirmed the dismissal of an interlocutory appeal of a district court's order, in a civil wrongful termination case, compelling the production of materials that the defendant employer contended were covered by the attorney-client privilege, but as to which the district court had ruled that the privilege had been waived.   558 U.S. at 103-104.   Mohawk contended that interlocutory appellate jurisdiction was proper because pretrial "rulings implicating the attorney-client privilege differ in

kind from run-of-the-mill discovery orders because of the important institutional

interests at stake" and because the ability to maintain attorney-client confidences

would be "irreparably destroyed absent immediate appeal of adverse privilege

rulings." *Id.* at 108 (internal quotation marks omitted).   The Supreme Court,

again emphasizing the strong policy rationales for the final judgment rule, rejected

Mohawk's contentions, holding, "In our estimation, postjudgment appeals

generally suffice to protect the rights of litigants and ensure the vitality of the

attorney-client privilege.   Appellate courts can remedy the improper disclosure of

privileged material in the same way they remedy a host of other erroneous

evidentiary rulings: by vacating an adverse judgment and remanding for a new trial

in which the protected material and its fruits are excluded from evidence.." *Id.* at

109.   The Court concluded that "the limited benefits of applying the blunt,

categorical instrument of § 1291 collateral order appeal to privilege-related

disclosure orders simply cannot justify the likely institutional costs.   Permitting

parties to undertake successive, piecemeal appeals of all adverse attorney-client

rulings would unduly delay the resolution of district court litigation and needlessly

burden the Courts of Appeals." *Id.* at 112 (internal citations and quotation marks

omitted).

22.     The same rationale applies here.   If the Government gains access to privileged materials during its review of the fruits of the Search Warrant, Archer and Cooney can seek suppression of any such materials; any such suppression decision will then be reviewable upon any postconviction appeal.   Thus, both Archer's and Cooney's claims regarding privileged materials are not "effectively unreviewable on appeal from a final judgment."   In fact, the rationale for interlocutory appellate review in this case is even weaker than that asserted by Mohawk.   In *Mohawk*, the compulsion order involved the very materials that Mohawk contended were covered by the privilege; there was no question that if the compulsion order was complied with, Mohawk's adversary would have access to the allegedly privileged materials.   Here, the assertion that the prosecutors responsible for the trial of Archer and Cooney will encounter privileged materials is speculative at best, given the Government's assertion that the materials provided by Google and Apptix in response to the Search Warrant will initially be reviewed by a taint team, composed of prosecutors and agents not responsible for the prosecution of Archer and Cooney, which team will only turn over non-privileged materials to the prosecuting team.   And, unlike in *Mohawk*, Archer and Cooney have remedies available to them in the District Court if the prosecuting team in fact gains access to privileged materials, including the ability to seek suppression of

17

such materials or, in egregious enough circumstances, disqualification of the

members of the prosecution team that encountered the privileged materials.    Thus,

Archer and Cooney are not without options to vindicate their interests, including

through any postconviction appeal of a final judgment against them.    Their appeal

does not therefore fit within the limited categories of decisions for which an

interlocutory appeal is provided under the collateral order doctrine.

> ## 2.    The Order is Not Appealable Under the *Perlman* Doctrine

23.    Archer contends that the Order is immediately appealable pursuant to

the *Perlman* doctrine because, as a result of the Order, third parties (Google and

Apptix) will provide materials to the Government that are likely to contain

materials covered by the attorney-client privilege.    (Mot. 15-18).    In light of

*Mohawk*, however, it is no longer clear whether interlocutory appellate jurisdiction

can be grounded on *Perlman*, at least in a circumstance, like here, where the

aggrieved party is a party to the underlying litigation and thus has access to an

appeal upon the entry of a final judgment.    This Court has recognized the tension

between *Perlman* and its progeny, and *Mohawk*.    *See United States v. Punn*, 737

F.3d at 11 n.8 ("We express no opinion as to whether, given subsequent case law

development, an order denying a client's motion to quash a subpoena directed to

his attorney, when the client is already under indictment or a party to litigation,

would still be immediately appealable today.").   The Government submits that the
appropriate harmonization of *Perlman* and *Mohawk* precludes interlocutory
appellate review in a circumstance such as that presented here, where the
purportedly aggrieved party is a party to the underlying litigation and will have
access to appellate review of any adverse final judgment.   Indeed, the prototypical
circumstance in which the *Perlman* doctrine has been used to support interlocutory
appellate jurisdiction is when a grand jury subpoena is issued, prior to the
commencement of any criminal proceeding, seeking materials from a third party
that might implicate the rights of the individual or entity seeking to invoke
interlocutory jurisdiction.   *See, e.g.*, *In re Katz*, 623 F.2d 122 (2d Cir. 1980).   An
aggrieved party whose rights are implicated by a grand jury investigation may
never be named as a defendant in a criminal proceeding and thus may never face a
final judgment from which an appeal can be taken.   The same is true as to non-
parties in civil litigation whose rights are implicated by subpoenas issued to third-
parties.   That is markedly different from the situation in *Mohawk* and the situation
here, where the purportedly aggrieved parties are named defendants in ongoing
proceedings who will have the ability to appeal from any adverse final judgment.
Limiting *Perlman*'s reach to situations where appeal of a final judgment may not

be available to an aggrieved party, such as when a pre-indictment grand jury

subpoena issues, appropriately harmonizes *Perlman* and *Mohawk*.

24.     Courts of Appeals in other circuits have held, or indicated in dicta,

agreement with the view that *Mohawk* limited the reach of *Perlman*, at least in

circumstances where the aggrieved party was also party to a litigation from which

an appeal of a final judgment could later be sought.   *See* ¶ 17, *supra.*

25.     Because Archer and Cooney are defendants in the criminal case, they

have access to a postconviction appeal and thus are not without the ability to

vindicate their rights on appeal.   As a result, this Court does not have jurisdiction

under the *Perlman* doctrine over this appeal, and it must therefore be dismissed.

### 3.    The Order is Not a Denial of Injunctive Relief and is Not Appealable Under 28 U.S.C. § 1292(a)(1)

26.     Archer contends that this Court has jurisdiction under 28 U.S.C. §

1292(a)(1) because the relief he requested in the District Court—precluding

Google from complying with the Search Warrant and precluding the Government

from reviewing the Apptix materials—was akin to injunctive relief.   (Br. 18-19).

This argument strains credulity and is squarely foreclosed by this Court's

precedent.   *See United States v. Pappas*, 94 F.3d at 798 (2d Cir. 1996)

("Protective orders that only regulate materials exchanged between the parties

incident to litigation, like most discovery orders, are neither final orders,

appealable under 28 U.S.C. § 1291, nor injunctions, appealable under 28 U.S.C. § 1292(a)(1)." (internal citations omitted)).   Put simply, pretrial discovery orders in criminal cases do not constitute injunctive relief.   Indeed, because many pretrial orders in criminal cases are sought to require an individual or entity to take an action, such as to compel production of a document, or to foreclose an individual or entity from taking an action, like offering potentially inadmissible evidence at trial, a significant quantity of pretrial orders in criminal matters would be classified, under Archer's reading, as orders for injunctive relief that would be immediately appealable to this Court.   Such a reading would vastly expand the "small class" of cases for which interlocutory appellate review is appropriate and eviscerate the final order rule.   Thus, jurisdiction cannot be grounded on 28 U.S.C. § 1292(a)(1).

## II.    IF THIS COURT EXERCISES JURISDICTION OVER THE APPEAL, IT SHOULD DENY ARCHER'S MOTION FOR A STAY

### A. Applicable Law

27.    "Four criteria are relevant in considering whether to issue a stay of an order of a district court or an administrative agency pending appeal: the likelihood of success on the merits, irreparable injury if a stay is denied, substantial injury to the party opposing a stay if one is issued, and the public interest."   *Mohammed v. Reno*, 309 F.3d 95, 100-01 (2d Cir. 2002).   "The probability of success that must

be demonstrated is inversely proportional to the amount of irreparable injury

plaintiff[ ] will suffer absent the stay.   Simply stated, more of one excuses less of

the other."   *Id.* (citation and internal quotation marks omitted).

## B. Discussion

### 1. Archer Cannot Demonstrate a Likelihood of Success on the Merits of His Appeal

28.     Archer contends that his appeal is likely to succeed.   He first

contends that he has a legal entitlement to file a motion to quash the Search

Warrant prior to execution.   (Mot. 20-24).   He further contends that any such

motion to quash is likely to succeed because the Search Warrant lacks sufficient

particularity and because the Search Warrant is stale due to its reliance on emails

dated more than two years before the issuance of the Search Warrant.   (Mot. 24-

26).   Archer's arguments about his likelihood of success on the merits of his

appeal are baseless.

29.     There is no statutory requirement, nor other legal precedent, that a

defendant in a criminal case be provided an opportunity to quash a lawfully-issued

search warrant prior to its execution or that a district court must delay the

execution of a lawfully-issued warrant in order to provide a defendant adequate

time to file such a motion to quash.   The Federal Rules of Criminal Procedure

provide that a person aggrieved by an unlawful search and seizure may move for

the property's return, Fed. R. Crim. P. 41(g), or, in the case of a criminal

defendant, may move to suppress such evidence, Fed. R. Crim. P. 41(h), but do not

provide a legal entitlement to a pre-execution motion to quash.   While the

Government does not dispute that such motions to quash are cognizable and can be

adjudicated by a district court, Archer cites to no case law, and the Government is

not aware of any, that requires a district court to delay execution of a warrant in

order to provide a defendant with time to file a motion to quash.   Archer's

citations to the various *Microsoft* opinions are inapposite.   (Mot. 21-23 (citing *In

re Warrant to Search a Certain E-Mail Account Controlled & Maintained by

Microsoft Corp.,* No. 13-mj-2814, 2014 WL 4629624, at *1 (S.D.N.Y. Aug. 29,

2014) and *In the Matter of a Warrant to Search a Certain Email Account

Controlled and Maintained by Microsoft Corporation*, No.14-2985 (2d Cir.) (ECF

No. 212))).   In *Microsoft*, the service provider to whom the search warrant was

directed refused to execute the warrant and provide the requested digital evidence

based on extraterritoriality concerns.   In that circumstance, it was of course

appropriate for the service provider to file a motion to quash in order to litigate the

extraterritoriality issue, as no other mechanism of review was available.   Here, the

service providers are willing to comply with a lawfully-issued search warrant

(indeed, Apptix has already complied), and mechanisms for further review,

23

including motions to suppress, remain available to Archer.   The Government's
position in the *Microsoft* case was that motions to quash are valid vehicles to
challenge search warrants for digital evidence issued pursuant to the Stored
Communications Act, not that a District Court must delay the execution of a search
warrant for electronic evidence simply because a potentially aggrieved party
wishes to consider filing a motion to quash.   In sum, Archer cannot demonstrate a
likelihood of success on the merits because he can cite no precedent that requires a
district court to delay the execution of a lawfully-issued search warrant in order to
allow a potentially aggrieved party to file a motion to quash.

30.     Nor can Archer show that any effort on his part to quash the Search
Warrant would be successful.   The particularity requirement of the Warrants
Clause of the Fourth Amendment "guards against general searches that leave to the
unguided discretion of the officers executing the warrant the decision as to what
items may be seized."   *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990).
The requirement is satisfied if the warrant, including its attachments, enables the
executing officer to ascertain and identify with reasonable certainty those items
that the magistrate judge has authorized him or her to seize.   *See Groh v. Ramirez*,
540 U.S. 551 (2004); *United States v. Rosa*, 626 F.3d 56, 58 (2d Cir. 2010).   To
satisfy the particularity requirement, the crime or crimes under investigation

generally should be apparent from the face of the warrant; a warrant cannot, for example, call for seizure of all "records," or all evidence "relating to the commission of a crime," without further particularization.   *United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993).   Relatedly, "the warrant must specify the 'items to be seized by their relation to designated crimes.'"   *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013).

31.     The probable cause and particularity requirements intersect in the doctrine of overbreadth.   As to each category of evidence identified for seizure in the warrant, there must exist probable cause to believe it is relevant to the investigation at issue.   *See Galpin*, 720 F.3d at 448 (warrant was overbroad where it allowed seizure of items related to crimes as to which no probable cause showing had been offered or made); *United States v. Lustyik*, 57 F. Supp. 3d at 228 ("the overbreadth inquiry asks whether the warrant authorized the search and seizure of items as to which there was no probable cause") (quotation marks and citation omitted); *United States v. Hernandez*, 2010 WL 26544, at *7-8 (S.D.N.Y. 2010) (framing overbreadth inquiry as "whether the magistrate judge authorized search warrants that were constitutionally overbroad because they provided for the seizure of specific items for which there is no probable cause").

25

32.     The Search Warrant is sufficiently particularized and not overbroad.

Despite Archer's characterization, the Search Warrant does not authorize the

seizure of the entire contents of the identified email accounts.   To the contrary, the

Search Warrant clearly supplies sufficient limiting guidance to the executing

officers by identifying the specified crimes under investigation and providing a

further illustrative list of the items to be seized.   Specifically, the Search Warrant

seeks "any evidence, fruits, and instrumentalities of violations of Title 18, United

States Code, Section 1348, and Title 15, United States Code, Sections 78j(b) and

78ff, Title 17, Code of Federal Regulations, Sections 240.10b-5; conspiracy to

commit securities fraud, in violation of Title 18, United States Code, Section 371;

investment advisor fraud, in violation of Title 15, United States Code, Sections

80b-6 and 80b-17; and conspiracy to commit investment adviser fraud, in violation

of Title 18, United States Code, Section 371."   (Search Warrant, attached as Ex. D

to Archer's Motion, at 3).   The Search Warrant is further particularized by the

identification of categories of evidence to be seized, including, *inter alia*,

"evidence of the agreement to engage in the fraudulent scheme involving the

issuance of bonds on behalf of the Wakpamni Lake Community Corporation

("WLCC") and the misappropriation of the proceeds of those bonds, from January

1, 2014 to May 11, 2016;" "evidence of communications and/or meetings

involving or related to the bonds issued on behalf of the WLCC;" and other evidence of user identity, location, and identities and locations of co-conspirators. *Id.* at 3-4.   Moreover, the Search Warrant is not overbroad, as the categories of items described are directly relevant to the probable cause articulated in the accompanying affidavit and limited to the relevant timeframe.

33.     The cases cited by Archer in support of his overbreadth claim (Mot. 25-26), all of which involved essentially limitless search and seizure of electronic information, stand in stark contrast to the Search Warrant at issue here.   *See Galpin*, 720 F.3d at 447 (warrant allowed for the seizure of all "data…which may reveal evidence and substantiates violations of" any and all New York state and federal statutes.); *United States v. Otero*, 563 F.3d 1127, 1132-33 (10th Cir. 2009) (concluding that warrant that authorized a search of "any and all information and/or data" stored on a computer without any limitation whatsoever lacked particularity).   Unlike those cases, the Search Warrant provided specific guidance as to the type of evidence which could be seized.

34.     Archer's allegation that the Search Warrant was facially deficient because it relied on stale probable cause is also misplaced.   (Mot. 25-26).   The Search Warrant directed the production of certain digital evidence for the time period January 1, 2014 through May 11, 2016 (the date Archer and Cooney were

arrested).   (Search Warrant, Attachment A at 1).   This time period closely

corresponds to the duration of the securities fraud conspiracy alleged in the

Indictment (March 2014 through April 2016), of which Archer is alleged to be a

member.[4]

35.     In general, this Court "may conclude that a warrant lacks probable

cause where the evidence supporting it is not sufficiently close in time to the

issuance of the warrant that probable cause can be said to exist *as of the time of the

search* —that is, where the facts supporting criminal activity have grown stale by

the time that the warrant issues."   *United States v. Raymonda*, 780 F.3d 105, 114

(2d Cir. 2015) (emphasis in original) (internal quotation marks and citations

omitted).   "The law recognizes no bright-line rule for staleness, which must

instead be evaluated on the basis of the facts of each case[.]"   *Id.* (internal

quotation marks and citations omitted).   "The two critical factors in determining

staleness are the age of the facts alleged and the nature of the conduct alleged to

have violated the law."   *Id.* (internal quotation marks and citation omitted).

"Where the affidavit establishes a pattern of continuing criminal activity, such that

---

[4]  The Indictment was included as an attachment to the application for a warrant.
Magistrate judges may consider the allegations in an Indictment, alongside the
evidence presented in the warrant application, when making a probable cause
determination.   *See United States v. Feng Ling Liu*, No. 12 Cr. 934 (RA) 2014 WL
101672, at *5 (S.D.N.Y. Jan. 10, 2014) (collecting cases).

there is reason to believe that the cited activity was probably not a one-time

occurrence, the passage of time between the last alleged event and the warrant

application is less significant."   *Id.* (internal quotation marks and citation omitted).

36.     Courts have recognized that, because digital evidence is difficult to

destroy and because long-term retention of digital evidence is common, these

aspects of digital evidence can weigh against a finding of staleness.   *See, e.g.*,

*United States v. Payne*, 394 F. App'x 891, 894 (3d Cir. 2010) (summary order); *see

also United States v. Seiver,* 692 F.3d 774, 777 (7th Cir.2012) (finding that

staleness concerns are "rarely relevant" when searching for non-perishable or non-

consumable evidence); *United States v. Floyd,* 740 F.3d 22, 34 (1st Cir.2014)

("Business records, as a class, are repositories of historical facts and, therefore, are

largely immune from claims of staleness.").

37.     Here, the Indictment alleges a conspiracy that extended from March

2014 through April 2016.   The application materials in support of the issuance of

the Search Warrant provide probable cause to believe that the subject email

accounts were used to send messages in furtherance of the conspiracy, and

specifically reference a number of emails sent during 2014 that furthered the

conspiracy's aims.   The alleged conspiracy is exactly the sort of "continuing

criminal conduct" that is not a "one-time occurrence," *United States v. Raymonda*,

780 F.3d at 114, for which staleness concerns are mitigated.   The Government is not, for example, using stale probable cause in order to obtain materials outside the temporal scope of the conspiracy, but instead is seeking "non-perishable" evidence of the crimes alleged in the Indictment.   Because the probable cause set forth in the warrant application, and accompanying Indictment, supported the seizure of the materials authorized by the Search Warrant and because digital evidence such as emails are akin to business records with long retention periods, staleness concerns are absent here, and thus the Search Warrant is not invalidated on staleness grounds.

## 2.  **Archer Has Not Demonstrated Irreparable Harm**

38.     Archer contends that he will be irreparably harmed absent the entry of a stay because the Government might, in its review of the materials to be produced by Google and Apptix in response to the Search Warrant, encounter attorney-client privileged material.   (Mot. 7-11).   He assails the Government's proposed use of a "taint team," composed of prosecutors and agents not involved with the prosecution of the criminal case, as insufficiently protective of his interest, and goes so far as to argue that the Search Warrant is facially invalid because it does not specify a particular protocol for ensuring that privileged materials are not inadvertently viewed by members of the prosecution team.   (Mot. 8-11).

39.     As an initial matter, this Court does not require that specific search

protocols be used in connection with a digital search, nor has it ever required that a

specific search protocol be delineated in a search warrant in order for the warrant

to be valid.  *See Galpin*, 720 F.3d at 451 ("Unlike the Ninth Circuit, we have not

required specific search protocols or minimization undertakings as basic predicates

for upholding digital search warrants, and we do not impose any rigid requirements

in that regard at this juncture.").   Nor has this Court ever held that the use of a

"taint team" to screen materials before they are produced to the prosecuting team

invalidates an otherwise valid warrant.   In support of his position that he would be

irreparably harmed by the use of a taint team to review the material produced by

Google and Apptix, Archer cites three cases, *In re Grand Jury Proceedings*, 454

F.3d 511 (6th Cir. 2006), which required the use of a Special Master to conduct the

initial review of materials produced in response to a grand jury subpoena; *United

States v. Hunter*, 13 F. Supp. 2d 574 (D. Vt. 1998), in which a district judge said

that the preferable practice for reviewing materials seized from the home and law

office of the lawyer for an investigative target would be to use a special master

rather than a taint team, but nonetheless denied a motion to suppress the fruits of

the search, despite the use of a taint team; and *In re Search Warrant*,153 F.R.D.

155 (S.D.N.Y. 1994), in which a district judge stated that the use of taint teams in

criminal cases should be discouraged.   None of these cases hold that a search warrant is facially deficient because its fruits will be first reviewed by a taint team, or that a potential privilege holder is "irreparably harmed" if such a procedure is utilized.

40.     Indeed, to demonstrate "irreparable harm," a movant must "demonstrate an injury that is neither remote nor speculative, but actual and imminent . . . ." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (quotation marks and citation omitted).   Judge Abrams concluded Archer could not demonstrate irreparable injury because "[t]he alleged injury to Archer and Cooney is the Government's potential misuse of privileged or other non-responsive materials, which is not actual and imminent, especially where, as here, the Government has committed to adhere to procedures designed to avoid such harm." (Order at 2).   Judge Abrams was correct.   First, Archer's claimed injury is entirely speculative.   The Government has not begun any review of the materials at this point and the Government intends to implement measures, including the use of a taint team, to minimize the potential of any such injury.   Second, in light of the Government's intention to use taint procedures, Archer cannot show that the injury he advances is "actual and imminent."   And, in any event, if such an injury was to occur, any such injury is not an "irreparable" one, that is, one which cannot

32

later be remedied. If Archer determines that the Government encountered
privileged materials during its review of the email accounts subject to the Search
Warrant, he can seek suppression of those materials; he can seek a taint hearing, at
which the nature of any taint is explored; and, in an extreme case, he can seek
disqualification of any member of the Government team who encountered the
privileged materials. Thus, Archer is not without potential remedy for the injury
he claims.

41.     In fact, the Government has already stated that it is prepared to work
with counsel for Archer and Cooney regarding the parameters of the review.
During the status conference before Judge Abrams during which Archer's motion
was discussed, the Government stated on the record, "To the extent that there are
privileged communications, we take [Archer's counsel] obviously at his word that
there are, and we are happy to run whatever lawyers' names defense proffers
through and segregate those things." (Tr. 16). Because the review protocol has
not yet been implemented and because the Government has indicated its
willingness to consider the views of counsel for Archer and Cooney before
finalizing the review protocol, Archer cannot demonstrate that his purported harm
is "actual or imminent."

### 3. Prejudice to the Government and the Public Interest Counsel Against Entry of a Stay

42.     Both the public's and a criminal defendant's strong interest in the prompt resolution of criminal cases is enshrined in the Constitution and various statutes.   *See* U.S. Const., amend. VI; 18 U.S.C. § 3161 *et seq*.   A stay of the Order pending full resolution of the appeal will substantially delay the Government's review of the materials produced pursuant to the lawfully-issued Search Warrant and may thereby delay the trial of this matter as well, to the detriment of not only the public interest but also the interests of Archer's co-defendants.   The prejudice from such a delay is further evidenced by the fact that litigation as to the validity of the Search Warrant may be a waste of judicial time and resources, as the Government has not at this point ascertained whether it intends to use any fruits of the Search Warrant at a trial of this matter.

43.     Moreover, the Government will be prejudiced by the grant of a stay. First, the delay that would arise from a stay would impede the Government's review of potentially voluminous electronic records in preparation for trial. Second, the delay associated with a stay could prevent the Government's from taking further investigative steps based on information gleaned from the fruits of the Search Warrant.   Some of those investigative steps – for example, the possible identification of witnesses, additional email accounts for which the Government has probable cause to search, or telephone numbers as to which additional data

34

could be obtained – could be impeded or rendered impossible with the passage of time.   Finally, a ruling that would enable criminal defendants to delay the execution of post-indictment search warrants[5] through litigation at both the trial and appellate levels would set a dangerous precedent for the very reasons thus far articulated, including delaying Government investigations, increasing the burdens on both the district courts (and if interlocutory appellate jurisdiction is found, this Court) and potentially wasting judicial resources.   In sum, the Government's and the public's interest in the expeditious investigation of criminal conduct and the speedy resolution of criminal cases would be significantly harmed by the stay sought.

## III.   A WRIT OF MANDAMUS SHOULD NOT BE GRANTED

44.      Archer argues that if interlocutory jurisdiction in this Court is not otherwise available, then this Court should issue a writ of mandamus.   (Mot. 19-20; *see also* Docket No. 17-353 (Archer's petition for a writ of mandamus)).   The writ of mandamus is available in "exceptional circumstances amounting to a judicial usurpation of power or a clear abuse of discretion."   *In re City of New*

---

[5] It bears noting that the mechanism for the authorization of a search provides protection for a defendant's rights by the requirement that any search warrant be authorized by an independent judge or magistrate based on a finding of probable prior to execution.   Accordingly, this is not a situation, unlike the issuance of a subpoena, that occurs without judicial oversight beforehand.

*York*, 607 F.3d 923, 932 (2d Cir. 2010) (internal quotation marks omitted).   For
the writ to issue, (1) "the party seeking issuance of the writ must have no other
adequate means to attain the relief it desires"; (2) "the issuing court, in the exercise
of its discretion, must be satisfied that the writ is appropriate under the
circumstances"; and (3) "the petitioner must demonstrate that the right to the writ
is clear and indisputable."   *Id.* at 932-33 (internal quotation marks omitted).   The
writ of mandamus is appropriate where the order presents a "novel and significant
question of law" and "a legal issue whose resolution will aid in the administration
of justice," *id.* at 939.

45.     Here, Archer has adequate means to attain the relief he desires.   He
can move to suppress the fruits of the Search Warrant or, in an appropriate
circumstance, seek disqualification of any prosecutors who encountered privileged
materials.   To the extent that Archer suggests he has a legal entitlement to delay
the execution of a lawfully-issued warrant in order to litigate the validity of such
warrant, he can point to no case, or statutory provision, that mandates such an
outcome.   The district courts regularly adjudicate motions involving investigative
materials potentially implicating the attorney-client privilege, often in
circumstances where the likelihood of encountering such materials is more facially
evident than it is here, such as the execution of a search warrant on a law office or

36

the provision of a subpoena to the lawyer of an investigative target.   *See, e.g.*,
*United States v. Feng Ling Liu*, No. 12 Cr. 934 (RA), 2014 WL 101672 (S.D.N.Y.
Jan. 10, 2014) (search warrants executed at two law firm offices); *United States v.
Hunter*, 13 F. Supp. 2d 574 (D. Vt. 1998) (search warrants executed at the home
and office of the lawyer for an investigative target); *United States v. Lumiere*, No.
16 Cr. 483 (JSR), 2016 WL 7188149 (S.D.N.Y. Nov. 29, 2016) (search of
electronic devices seized pursuant to a search warrant, during which potentially
privileged materials were encountered).   The district courts are fully equipped to,
and regularly do, confront and decide exactly the kinds of claims for which Archer
is now seeking a writ of mandamus.   As a result, Archer has an adequate means –
further litigation in the District Court – to obtain the relief he seeks.   Because the
district courts regularly confront the issue of attorney-client privileged materials
obtained in connection with various investigative methods employed by the
Government, Archer's claim is not a "novel and significant question of law."

46.     For all the reasons set forth above, Archer cannot show that his
motion to quash the Search Warrant is likely to succeed, on either particularity or
staleness grounds.   At the very least, the Government has advanced substantial
arguments in support of the validity of the Search Warrant.   Archer cannot

therefore show that his entitlement to a writ of mandamus is "clear and indisputable."

47. As a result, Archer has not satisfied the "stringent standard of review to petitions for mandamus," *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233 (2d Cir. 1993) and his petition for a writ of mandamus should be denied.

## CONCLUSION

48. For the foregoing reasons, the appeals of Archer and Cooney should be dismissed for lack of jurisdiction. If the appeals are not dismissed, the Government respectfully requests that the Court deny Archer's motion for a stay of the Order pending completion of this appeal. Further, Archer's petition for a writ of mandamus should be denied.

Dated:     New York, New York
           February 10, 2016

                              /s/ Brian R. Blais
                              Brian R. Blais
                              Assistant United States Attorney
                              Telephone: (212) 637-2521

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that simultaneously with this affirmation, the Government is filing a motion for permission to file an oversized motion/motion response not to exceed 8,500 words.   As measured by the word processing system used to prepare this motion, there are 8,228 words in this affirmation.

PREET BHARARA,
*United States Attorney for the*
*Southern District of New York*


By:                       BRIAN R. BLAIS,
                          *Assistant United States Attorney*