# EXHIBIT 24

Case 1:16-cr-00371-RA Document 213 Filed 08/03/17 Page 1 of 14

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x

3  UNITED STATES OF AMERICA,

4            v.                           16 CR 371 (RA)

5  JOHN GALANIS, et al.,

6            Defendants.

7  ------------------------------x

8                                     New York, N.Y.
                                      August 3, 2017
9                                     2:30 p.m.

10

   Before:
11
                    HON. RONNIE ABRAMS,
12
                                      District Judge
13

14                    APPEARANCES

15 JOON H. KIM
       Acting United States Attorney for the
16     Southern District of New York
   REBECCA MERMELSTEIN
17 BRIAN ROGER BLAIS
   ANDREA GRISWOLD
18     Assistant United States Attorneys

19 SHER TREMONTE LLP
       Attorneys for Defendant Hirst
20 BY:  NOAM KORATI BIALE

21 ROBERT MOORE (APPEARING FOR DAVID TOUGER)
       Attorney for Defendant Galanis
22
   MORVILLO LLP
23     Attorneys for Defendant Morton
   BY:  GREGORY ROBERT MORVILLO
24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

1

2                          APPEARANCES (Cont'd)

3   BOIS, SCHILLER & FLEXNER LLP (NYC)
          Attorneys for Defendant Archer
4   BY:  MATTHEW LANE SCHWARTZ

5   PAULA JACLYN NOTARI
              -AND-
6   ABRAHAM JABIR ABEGAZ-HASSEN
          Attorneys for Defendant Cooney

7

8   ALSO PRESENT:  SHANNON BIENIEK, FBI

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

 1          (Case called)

 2          THE COURT:  If you all could just please state your

 3  appearances, and then for defense counsel, just note for the

 4  record if your client has waived his appearance.

 5          MS. MERMELSTEIN:  Good afternoon, your Honor.  Rebecca

 6  Mermelstein, Brian Blais, and Andrea Griswold for the

 7  government.  With us at counsel table is Shannon Bieniek with

 8  the FBI.

 9          THE COURT:  Good afternoon, all.

10          MR. SCHWARTZ:  Good afternoon, your Honor.  Matthew

11  Schwartz for Defendant Devon Archer.  Mr. Archer has waived his

12  appearance today.

13          THE COURT:  Good afternoon.

14          MR. MOORE:  On behalf of Defendant John Galanis,

15  Robert Moore filling in today for David Touger.  Mr. Galanis

16  has waived his appearance, your Honor.

17          THE COURT:  Good afternoon.

18          MS. NOTARI:  Good afternoon, your Honor.  Paula Notari

19  on behalf of Bevan Cooney.  I am with my cocounsel, Abraham

20  Hassan, who is sitting next to me.  Mr. Cooney has waived his

21  appearance.

22          MR. BIALE:  Good afternoon, your Honor.  Noam Biale

23  for Gary Hirst who is present to my right.

24          THE COURT:  Good afternoon to all of you.

25          MR. MORVILLO:  Good afternoon, your Honor.  Gregory

Case 1:16-cr-00371-RA Document 213 Filed 08/03/17 Page 4 of 14

1    Morvillo on behalf of Michelle Morton who has waived her

2    appearance.

3              THE COURT:  Good afternoon to you as well.

4              So we have everyone here.  I wanted to discuss the

5    motions filed by Defendants Archer and Cooney on July 26 and 27

6    respectfully.

7              Just for the record, the government has obtained

8    materials from email accounts associated with Mr. Archer and

9    Mr. Cooney pursuant to a search warrant.  It is in the process

10   of reviewing those materials for responsiveness to the warrant.

11             However, with the exception of a set of documents that

12   were segregated for a privilege review, the government has

13   produced all of the materials obtained pursuant to the warrant

14   to the various codefendants in this case without regard to

15   responsiveness.  Many of these documents have no relevance to

16   the facts of the case and are personal and/or confidential in

17   nature.

18             The government apparently made this production while

19   mistakenly believing that it had Mr. Archer and Mr. Cooney's

20   consent, and according to the government, the production was

21   made out of a concern for the government's possible Brady

22   obligations.

23             I've read your letters.  If there is anything else you

24   want to add here today before I rule, I'm happy to hear you

25   out.

1        MS. MERMELSTEIN:  Your Honor, I'm happy to say, I

2   suppose, as much or as little as you would like.  I think

3   that -- you can cut me off if this isn't helpful.

4        I think that a facility with the kind of practical

5   realities of the way in which these things work is incredibly

6   important to understanding the extraordinary, unprecedented

7   requirements that Mr. Schwartz seeks to impose on the

8   government and the practical effect that that would have on the

9   government's ability to investigate white-collar crime.

10       I think that what he has essentially suggested is that

11  the government need either provide search terms to the service

12  provider and then be limited to only those documents in its

13  review or to review the entirety of every email in every email

14  account for which it obtains a search warrant, notwithstanding,

15  among other things, that at the time the government obtains a

16  search warrant, it has no way to know the volume of what it's

17  going to get.

18       That would be an extraordinary remedy in a universe

19  that is under the umbrella of Fourth Amendment reasonableness.

20  I think that what the government -- I'm happy to speak in

21  vastly more detail, if it's helpful, about all of the reasons

22  why the proposal is wildly impractical, both legally and, so to

23  speak, practically.

24       I think at its heart, it would be fundamentally an

25  enormous shift from what "reasonable" means, and it would

1   really undercut the government's opportunity to investigate not

2   just white-collar cases but any case where it needed to get an

3   email search warrant.

4           If your Honor wants the sort of nitty-gritty details,

5   I'm happy to go there.  If you're ready to rule, I'm happy to

6   sit down.

7           THE COURT:  It seems like a protective order hadn't

8   even been signed.

9           MS. MERMELSTEIN:  Your Honor, I agree that it would

10  have been better to get a protective order.  I will note that

11  leaving aside the misunderstanding -- look.  There clearly was

12  a misunderstanding here.  The purpose of providing that advance

13  notice to defense counsel was the government's attempt to make

14  sure we didn't end up exactly where we now are.

15          Certainly the defendants understood that the

16  responsive emails were going to be produced to all defendants,

17  and they too didn't ask for a protective order, and I think

18  that was just a mistake all around.  There should have been a

19  protective order.

20          I don't think that issue really impacts the

21  reasonableness of the way in which the government executes

22  search warrants and reviews the contents of those search

23  warrants, and I think that as a practical matter, if the Court

24  were to rule that every email obtained pursuant to a search

25  warrant, responsive or nonresponsive, was in the government's

1    possession for Brady purposes but could not be produced to

2    codefendants, it would, in essence, be a ruling that the

3    government, if it wanted a search warrant, had to be prepared

4    to review every single email out of hundreds of thousands of

5    emails.

6            THE COURT:  I just want to stop you there, if I can,

7    and I'll have you say anything else you want to say in a

8    minute.

9            I really want to turn to the defendants, and I asked

10   all of you to be here because I want to hear from counsel for

11   the codefendants with respect to the Brady issue whether any of

12   the defendants are taking the position that the government has

13   the obligation to review materials that are deemed to be

14   outside the scope of the warrant.

15           Does anyone in this room think the government is

16   obligated to review materials that it's not permitted to review

17   once it makes a determination that it's not responsive to the

18   warrant?

19           MR. SCHWARTZ:  Your Honor, Matthew Schwartz for David

20   Archer.  I'm not even taking that position.  The point that I

21   made in the papers is that Brady violations, as the government

22   is going to tell us when we all make our Brady motions in

23   discovery, are viewed retrospectively.  That's not an issue in

24   which the Court needs to engage.

25           No one has to lay down for the government a roadmap of

1    how it complies with its Brady obligations.  That's its own

2    obligation.  It always makes a determination --

3             THE COURT:  I'm asking you.  I understand you think

4    it's an advisory opinion.  I'm asking the codefendants in

5    particular if anyone thinks that the government has an

6    obligation or if it's even permitted to review material once it

7    determines that it's nonresponsive to a warrant for Brady.  If

8    the answer is no, then I think this makes this a lot simpler.

9             MR. SCHWARTZ:  I would say in this case, given that

10   the government has already exceeded the bounds of the warrant

11   and seized material that is nonresponsive and produced it --

12            THE COURT:  That's pursuant to a misunderstanding

13   based on your email.  We can litigate the scope of the Fourth

14   Amendment issue later.

15            MR. SCHWARTZ:  Whether or not it was a

16   misunderstanding is beside the point right now.  That happened,

17   and having happened, I think we're in a different situation

18   than the ordinary one where the government only seizes that

19   which they were allowed to seize.

20            That doesn't mean necessarily that they have to make

21   that search, but it certainly does create additional risk for

22   the government, which will be assessed retrospectively.

23            THE COURT:  So, just to be clear, your position is

24   that because of that production -- I assume the government is

25   going to say it was understanding that you consented to the

Case 1:16-cr-00371-RA Document 213 Filed 08/09/17 Page 9 of 14

 1   seizure of that material and the production of that material.

 2   But it's your position in this case that they now have an

 3   obligation to review that material for Brady that you're asking

 4   that no one review?

 5            I'm sorry.  Your position is unclear to me.

 6            MR. SCHWARTZ:  Right, because I'm trying not to

 7   articulate a position about the contours specifically of what

 8   the government has to review.  It is always the government's

 9   obligation that they have to review everything in their

10   possession --

11            THE COURT:  But do you view the material that they're

12   not permitted to review to be in their possession for the

13   purposes of Brady?  A straight answer would be helpful.

14            MR. SCHWARTZ:  Yes.  They seized that which was in

15   excess of what the warrant permitted.  So, yes.  It is in their

16   possession.

17            THE COURT:  So are you consenting to a review of that

18   material for purposes of Brady?

19            MR. SCHWARTZ:  I'm not consenting to anything,

20   your Honor.  The government has an obligation to obey the

21   warrant that it sought and it obtained.  It didn't do that, and

22   now it's created a host of practical problems.  With respect,

23   neither you nor I should be getting them out of that.  This is

24   something that they're going to have to navigate.

25            It may be a total nonissue, or it may be an issue, and

1    it will be something that we'll litigate after the fact.

2    That's the realities of Brady litigation.

3          THE COURT:  I'm not going to give the government

4    specific guidance as to how to make a Brady determination.

5    That being said, I think when you're managing a case, it's

6    helpful to set contours, and I don't hear anybody else taking

7    the position that the government has an obligation to review

8    material that it's not entitled to review, according to you --

9    and I agree with that -- once the determination is made that

10   it's not responsive to the warrant.

11         Articulate for me one more time why you think the

12   government has an obligation to review this, because it's

13   already produced it to you pursuant to your email indicating

14   that all emails could be produced.  I understand it's a

15   misunderstanding as to what that means or meant, but that is

16   your position.  Is that right?

17         MR. SCHWARTZ:  Because the government has already

18   exceeded the scope of the warrant, it takes this case away from

19   every other case where the government obtains a warrant for

20   electronic information and does a responsiveness review and its

21   Brady obligations might be cabined to the stuff that is

22   responsive to the warrant.

23         The government has already violated the warrant here

24   and seized more than it is permitted to.  That creates

25   additional problems for them.  That's my position.

Case 1:16-cr-00371-RA Document 213 Filed 08/03/17 Page 11 of 14

1    MS. MERMELSTEIN:  I'm sorry to interrupt, your Honor.

2    I recognize we're not litigating suppression now.  Mr. Schwartz

3    has now -- I'm not sure he has answered your question, but he

4    has said the government has exceeded the scope of the warrant

5    and violated it about 17 times.  That's not true.

6        The government got a warrant that entitled it to

7    obtain every email for a designated timeframe for these email

8    accounts.  Rule 41 explicitly allows that when you have this

9    kind of voluminous material, the government gets to take

10   everything and then conduct a review.

11       That review is ongoing.  The government could decide

12   tomorrow that instead of using search terms, it was going to

13   read every email.  There is no practical way to do that.

14       There are hundreds of thousands, but that would be

15   legally appropriate, and it would not exceed the scope of the

16   warrant to read every email to make a determination as to

17   responsiveness, and reasonableness is of course fact specific.

18       So, if you got an email search warrant and it had

19   5,000 emails, you might very well decide that was the best way

20   to proceed.  The notion that somehow because the government

21   obtained ultimately nonresponsive emails it has exceeded the

22   scope of the warrant I think is just incorrect as a matter of

23   fact and of law.

24       The government has deemed certain emails

25   nonresponsive.  Any email that doesn't hit on a search term

Case 1:16-cr-00371-RA Document 213 Filed 08/09/17 Page 12 of 14

 1   it's not going to look at, and it hasn't looked at.  Those

 2   emails were produced to defense counsel.

 3          I don't know if defense counsel has actually even

 4   started looking at them.  They only had them very briefly

 5   before your Honor told everyone to stop.

 6          But I don't think that that disclosure, which was made

 7   based on a good-faith understanding that no defendant objected

 8   having solicited whether or not anyone did -- I'm not

 9   suggesting that defense counsel is disingenuously saying they

10   didn't understand.  They clearly didn't.

11          That production in no way suggests that the government

12   has exceeded its authority under the warrant.  I don't think

13   this is in any fashion any different than every single email

14   search warrant that is done every day in this district.

15          So I do think that to the extent that the defendant's

16   position is that legally these things are in the possession of

17   the government, that is something that is appropriate to sort

18   out now.

19          I think it's also factually helpful to know if the

20   defendants had actually started looking at any materials before

21   your Honor told them not to.

22          THE COURT:  Why don't we just take a break for a few

23   minutes, and I'll be back.  Thanks.

24          (Recess)

25          THE COURT:  I am ready to rule.

1          MS. NOTARI:  Your Honor, may I be heard?

2          THE COURT:  Yes.

3          MS. NOTARI:  In speaking with my co-counsel, one of

4   the concerns that's not been addressed is the expectation on

5   the defense here is essentially to do a responsive review.

6   We've been now --

7          THE COURT:  Can we deal with this issue first.  If you

8   were provided a new production that just had emails that were

9   responsive to the warrant, are you still going to object?

10         MS. NOTARI:  No.

11         THE COURT:  Although I don't weigh in on the Fourth

12  Amendment argument at this time, the Court grants Archer and

13  Cooney's motion.

14         All defendants are ordered to return or destroy the

15  government's production materials obtained pursuant to the

16  warrant.  Consistent with its obligation under Federal Rule of

17  Criminal Procedure 16, the government is ordered to replace

18  this production with a new production consisting solely of

19  materials responsive to the warrant, and it is to do so on a

20  rolling basis.

21         With respect to the government's Brady obligations, as

22  Archer rightly notes in his submission, the government cannot

23  "seize or use files unless they are within the scope of the

24  warrant."  That's at page 5, citing the Matias case, 836 F.2d

25  744, 747.

Case 1:16-cr-00371-RA Document 213-4 Filed 08/03/17 Page 14 of 14

1    Accordingly, the government need not and may not

2  review files or emails for Brady or otherwise once they are

3  determined to be nonresponsive.

4    Nonetheless, if the government were to discover Brady

5  material during the course of its responsiveness review, such

6  material must be disclosed in time for its effective use,

7  United States v. Coppa, 267 F.3d 132, 135.

8    I'll note for the record that no defendant, other than

9  Mr. Archer, who has the entire email account in his possession

10  because, of course, it is his or at least with respect to his

11  email accounts, has taken the position that the government has

12  an obligation to review materials that are deemed to be outside

13  the scope of the warrant.  So that is my ruling.

14    Do you still have a follow-up question or point,

15  Ms. Notari?

16    MS. NOTARI:  No.

17    THE COURT:  Thank you.  We are adjourned.

18    (Adjourned)

19

20

21

22

23

24

25