UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      v.<br><br>JASON GALANIS,<br>GARY HIRST,<br>JOHN GALANIS, a/k/a "Yanni,"<br>HUGH DUNKERLEY,<br>MICHELLE MORTON,<br>DEVON ARCHER, and<br>BEVAN COONEY,<br><br>                Defendants. | No. 16 Cr. 371 (RA) |

## DECLARATION OF MATTHEW L. SCHWARTZ

MATTHEW L. SCHWARTZ, pursuant to 28 U.S.C. § 1746, hereby declares:

1. I am a member of the bar of this Court and of the firm Boies Schiller Flexner LLP, and am counsel of record for defendant Devon Archer in the above-captioned case.

2. I make this declaration in opposition to the government's pretrial motions. Unless stated otherwise, I make this declaration based upon my personal knowledge.

3. On December 28, 2016, the government obtained two warrants pursuant to the Stored Communications Act to search for and seize certain internet service provider accounts associated with Mr. Archer. Pursuant to those warrants, the government seized thousands of Mr. Archer's privileged communications.

4. I have attached a true and correct copy of a November 2, 2017 production cover letter from AUSA Lisa Korologos, on behalf of the government's "filter team," as Exhibit A.

5. I have attached a true and correct copy of e-mail correspondence between myself and AUSA Korologos, dated from November 2 through November 7, 2017, as Exhibit B.

6. I have attached a true and correct copy of a November 20, 2017 letter on behalf of Mr. Archer to AUSA Korologos as Exhibit C.

7. I have attached a true and correct copy of a December 28, 2017 letter from AUSA Korologos as Exhibit D.

8. I have attached a true and correct copy of e-mail correspondence between myself and AUSA Korologos dated December 28, 2017, as Exhibit E.

9. I have attached a true and correct copy of a January 8, 2017, letter on behalf of Mr. Archer to AUSA Korologos as Exhibit F.

10. During the course of the investigation of this case, Mr. Archer was served with a grand jury subpoena dated October 2, 2015, and returnable at 1:00 PM on Friday, October 16, 2015.

11. One day earlier, on October 1, 2015, the U.S. Securities and Exchange Commission had issued its own administrative subpoena to Mr. Archer seeking essentially the same records.

12. In subsequent conversations with the U.S. Attorney's Office, I was directed to discuss the scope of any production with the SEC, and to produce documents to the SEC in the first instance. In my experience, this is common practice in coordinated USAO/SEC investigations in this District, because it allows the SEC and USAO to freely share documents and information with one another without the constraints of grand jury secrecy, which would attach to any documents produced to the USAO in response to a grand jury subpoena.

13. Subsequently, Mr. Archer's lawyers (including me) and the SEC lawyers negotiated the temporal scope of the productions and search terms, and Mr. Archer made a series of productions beginning in mid-November 2015.

14. Approximately six months after the subpoenas were issued, on Friday, May 6, 2016, counsel for Mr. Archer (including me) met with representatives of the USAO and the SEC, as well as an FBI Special Agent. During the course of that meeting, I discussed certain documents with which the AUSAs were unfamiliar, and the government referenced certain other documents with which I was unfamiliar. (As it turned out, the documents with which I was unfamiliar were never in Mr. Archer's possession).

15. On that same afternoon, one of the AUSAs called me and informed me that Mr. Archer needed to produce any documents responsive to the grand subpoena by the following Monday, May 9, 2016, if he wished the government to consider his arguments. As a result, Mr. Archer's defense team worked through the Mother's Day weekend to review documents, and on Monday – the next business day after the government demanded the documents – produced 3,792 responsive documents, totaling 30,092 pages, to the USAO. On that same Monday, the government obtained a sealed criminal complaint charging Mr. Archer with securities fraud and conspiracy to commit securities fraud.

16. For the next year and a half, the government did not raise the issue of Mr. Archer's compliance with the subpoenas. On November 13, 2017, the government asked whether Mr. Archer's production was complete or if the government should expect an additional production. In reply, I stated that I was unaware of any authority requiring further compliance with the subpoena, and requested the government to cite any authority for its request. The government did not respond, and instead filed its motion to compel on January 16, 2018.

17. On January 22, 2018, after reviewing the government's motion, I contacted the AUSAs to request that they identify the "most incriminating email" referenced in its motions, as well as any other document that they claim Mr. Archer failed to produce. In response, the

government identified the single document referenced in its motion as bearing bates stamp SearchWarrant_v2_00021900.  I have attached a true and correct copy of e-mail correspondence between the government and counsel for Mr. Archer dated January 19 through January 23, 2018 as Exhibit G.

18.   According to the metadata associated with the one document identified by the government (*i.e.*, SearchWarrant_v2_00021900), the custodian for that document was Mr. Archer's assistant, who was copied on the e-mail.  That is, the e-mail identified by the government did not come from Mr. Archer's account.

19.   In my experience, "special" grand juries in this District (at least in Manhattan) sit only two days a week, on either Mondays and Wednesdays, or on Tuesdays and Thursdays, whereas "regular" grand juries sit five days a week for a month.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 5, 2018
       New York, New York

                                               /s/ Matthew L. Schwartz
                                               Matthew L. Schwartz