

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

April 5, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Jason Galanis, et al.*, S1 16 Cr. 371 (RA)

Dear Judge Abrams:

    I represent Devon Archer. I write to respond to the government's April 5, 2018 letter to Your Honor seeking "immediate curative measures" with respect to Mr. Archer's Rule 16 production. [ECF No. 379]. It seems that the government's request has been mooted by its subsequent letter, in which the government reported that it has decided to return Mr. Archer's production in an effort to avoid having to conduct a *Brady* review. [ECF No. 380]. Nonetheless, given that the government has once again accused Mr. Archer's counsel of "gamesmanship" (three times), "unfair gamesmanship," "games-playing," "grossly unfair" conduct, "woeful inadequacies," "shocking" behavior, making "a mockery of the Court's order," and an absence of "any good faith," it is incumbent upon us to respond.

    In short, Mr. Archer produced Rule 16 material by the agreed-upon deadline. This case is extraordinarily complex; it should come as no surprise that the defense discovery, like the government's, is voluminous. The government's complaint that Mr. Archer produced *too much* discovery is hypocritical to say the least, given that the government has produced a comparable amount of material over the last few weeks alone: tens of thousands of pages of last-minute Rule 16 discovery, more than two million pages of Gerova material, and hundreds of hours of audio recordings, on top of thousands of pages of trial exhibits and still-incomplete 3500 material. The government's admission that it is functionally impossible to review this timely-produced material prior to trial stands in stark contrast to what it has been saying to the Court, and mirrors exactly what the defendants have been saying in their various adjournment requests, with respect to the government's late and continued productions.

    Moreover, the government's request would impose a financial burden on Mr. Archer, an individual defendant who is financing his own defense, that he cannot reasonably be asked to meet and would hold Mr. Archer to a standard the government does not even expect of itself. As set forth at greater length below, a production in the form demanded by the government would cost more than $750,000.00. The index requested by the government does not exist, and ordering Mr. Archer to create one would likewise cost a substantial amount of money and more



importantly would divert the defense team's time in the weeks immediately prior to trial. The government, it should be noted, has not produced the sort of detailed index of its own discovery that it wants the Court to order Mr. Archer to create and produce.

Contrary to the government's insinuation, Mr. Archer's prior representations about his Rule 16 production obligations were entirely accurate. The government states that "on November 21, 2017, Archer's counsel represented to the Government the following: 'With respect to Rule 16 discovery, Mr. Archer is not currently in possession of any material subject to disclosure under Rule 16(b) that has not been produced by the government; we understand the continuing obligation imposed by Rule 16(c) and will produce it promptly if that changes.'" There was nothing inaccurate about this statement. At the time, Mr. Archer's review was focused on materials produced by the government—Mr. Archer simply did not know what additional materials he intended to use at trial that the government did not already possess. Mr. Archer, however, had already produced more than 30,000 pages of material to the government at that point.[1]

As Mr. Archer pointed out in response to the government's motion to set a reciprocal discovery deadline, and as the Court acknowledged, the defense Rule 16 obligation depends on its *intention* to use certain evidence at trial: Rule 16 requires a defendant to produce evidence that he or she "*intends* to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P. 16(b)(1)(A)(ii) (emphasis supplied). With a March 30 discovery deadline and an April 30 trial, Mr. Archer triaged his review, attempting to prioritize as intelligently as possible while at the same time ensuring that he produced all documents that he might seek to introduce at trial, so as not to give the government an opportunity to object later on – as it indicated it would.

Now the government asks for the impossible. The government asked Mr. Archer on April 3, 2018, to provide his production "in a load file format." As I explained in response, the volume of materials Mr. Archer is contending with in discovery renders it prohibitively expensive to do this sort of processing. Based on the most recent estimate from Mr. Archer's vendor, to provide the Rule 16 production in a load file format would cost nearly $800,000.00, not including the monthly hosting cost of $28,500.

---

[1] In Footnote 1 of the government's letter, it argues that Mr. Archer's claim to not have identified any additional Rule 16 material in November 2017 – beyond the 30,000-plus pages of material he had already produced – was without merit. But it was entirely sensible for Mr. Archer to have first tried to understand the government's case, based on the materials the government produced, before identifying what, if anything, Mr. Archer needed to produce in response. Mr. Archer had not remotely finished reviewing the government's discovery in November 2017. To date, Mr. Archer still does not understand the full import of what the government has produced to him in discovery or how it will use that evidence against him. As Mr. Archer reviews the just-produced (but still incomplete) 3500 material and continues to prepare for trial, he may well identify additional Rule 16 material.



The following is the estimate we received from our vendor:

| Production Cost Estimate | | | | |
|---|---|---|---|---|
| Production Data Type | Volume (GB) | Total Estimated Production Volume (GB) | Rate Per GB | Estimated Total Cost |
| **Text and Metadata** | 75 | 1575 | $ 500.00 | $ 787,500.00 |
| **Images (*Estimated Volume)** | 1075 | | | |
| **Natives** | 425 | | | |

| Monthly Hosting Fee of Production Data | | | |
|---|---|---|---|
| Total Production Volume (GB) | Volume w/ Hosting Overage (GB) | Monthly Hosting ($) | Estimated Monthly Hosting ($) |
| 1,575 | 1,900 | $ 15.00 | $ 28,500.00 |

The government's request for a "detailed index" of Mr. Archer's Rule 16 production, besides being without legal support, is likewise practically impossible. To be clear, no such index exists, and generating one (if it could be done at all) would also be prohibitively expensive. Certainly, the government has not produced a comparable index for its productions.[2]

The irony of the government's request should not be lost on the Court. The government complains that Mr. Archer's production of too much information in a less-than-perfect format puts it in "a grossly unfair position less than three and a half weeks from trial." [ECF No. 379 at 2]. For *years*, Mr. Archer and the other defendants have raised the same complaint and have repeatedly asked the government to provide materials in a manner conducive to review. For example, Mr. Archer has requested the Gerova discovery since the beginning of the case. To date, Mr. Archer has still not been able to secure access to that information, due to the volume and manner of its storage, let alone review any of it.[3]

In a situation similar to the government's current complaint, on December 29, 2017, Mr. Archer wrote to the government asking for corrective measures with respect to its production of millions of documents from many different custodians that were

> produced in a variety of forms, many of which have made it particularly burdensome to review. For example, as we have

---

[2]   Mr. Archer has raised almost-identical concerns about the SEC's manner of production before Judge Pauley. *See* Letter from M. Schwartz to Hon. William H. Pauley III at 2 (Mar. 26, 2018), *SEC v. Archer, et al.*, No. 16-cv-3505 [ECF No. 140].

[3]   Unlike the defense's Rule 16 obligations, the government's Rule 16 obligations were never wholly contingent on its trial preparation. The Gerova material and the Galanis wiretaps, for example, have *always* been discoverable under Rule 16 (and *Brady*), but the government did not produce them until after Mr. Archer was forced to file a motion to compel in January 2018.



> previously raised, the government produced an 850 GB drive containing a variety of forensic images of devices without any indication of what material might constitute Rule 16 discovery. The government has also produced material that lacks metadata and in some cases that appears to have had certain metadata stripped from it, or that is otherwise impossible to search using automated means. For example, one "document" (FULTON 0001) is actually a 4,565 page scanned pdf of records from Fulton Meyer, consisting of a mix of e-mails, financials statements, and other records. Depending on the quality of images and scans, text recognition works with varying success and reliability.

Letter from M. Schwartz to AUSAs (Dec. 29, 2017). The government's response, on January 4, 2018, was simply

> we have produced documents to you in the manner in which we have received them. As such, where documents are produced to us in pdf, or without metadata, we have produced them to you in that form.

Letter from R. Mermelstein to M. Schwartz (Jan. 4, 2018).

Where the government has actually purported to accommodate Mr. Archer's requests for documents in a reviewable form, the government's gestures have been empty. For example, also in Mr. Archer's December 27, 2017 letter, we raised the fact that for millions of documents, the government stated simply that the documents were produced "by multiple custodians," but virtually all of the documents lacked custodian metadata. The government offered to provide a list of custodians, but the chart the government ultimately provided supplied custodial information for only a fraction of the several million relevant documents.

Lastly, the government quotes the Court's comments in setting a March 30 deadline for defense Rule 16 discovery. *See* March 6, 2018 Tr. at 38 ("the defendants may use material that they come to produce after that date so long as they produce the materials to the government as expeditiously as possible"). But the Court's comments are fully consistent with Mr. Archer's conduct here. Precisely because the Court indicated that it would scrutinize any *late* produced discovery, Mr. Archer took pains to ensure that the government timely had anything in his possession that could fairly be characterized as Rule 16 material. Was the production over-inclusive? Perhaps, in the same way that the government has repeatedly reported that it produced material that was not subject to Rule 16, "in an abundance of caution." Was it "unfair gamesmanship?" Not remotely. It was what was absolutely necessary to preserve Mr. Archer's right to present evidence at trial.

Mr. Archer respectfully requests that the Court deny the government's application, as he is financially and logistically unable to meet the government's demands, which are unmerited and hypocritical in any event. The order requested by the government would sanction Mr. Archer for making a production on the schedule ordered by the Court, and in a form no more or less



usable than those provided by the government – productions that, we should note, are still ongoing, long after the time has passed for it to produce Rule 16 material.

      Finally, with respect to the government's request for a conference, as I have previously advised the Court I will be travelling overseas and unavailable to appear next week prior to the conference currently scheduled for April 13.  If the only subject of an earlier conference is the one raised in the government's second letter – namely, that it intends to return Mr. Archer's production so as not to have to conduct a *Brady* review – I can certainly have a colleague stand in, as we take no position on whether the government must conduct a *Brady* review of Mr. Archer's own production.  If the Court is inclined to take up other matters, however (and especially in light of the government's repeated claims of misconduct), I respectfully request that they be added to the agenda for the April 13 conference, when I will be able to attend.

      Thank you for your consideration.

                        Respectfully,

                        /s/ Matthew L. Schwartz
                        Matthew L. Schwartz