LAW OFFICES
**PAULA J. NOTARI**
152 W. 57th Street, Suite 800
New York, New York 10019
Tel. (646) 943-2172

April 11, 2018

The Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

   Re:  *United States v. Jason Galanis et al.*
        16-cr-0371-4 (RA)

Dear Judge Abrams:

      We represent Bevan Cooney, one of the defendants in the above-referenced case. We write to briefly respond to the government arguments in their April 2, 2018 Reply letter opposing Mr. Cooney's ("Reply") Opposition to 404(b) evidence (ECF Doc 369).

**I.    The Proffered Evidence Regarding Mr. Cooney's Involvement with 120 Bel Air and Mr. Cooney's Alleged False Statements to CNB Is Inadmissible**

      As set forth below, the government's attempts to introduce various categories of extrinsic acts evidence should be rejected

**A.    Mr. Cooney's Involvement in 120 Bel Air**

      Evidence concerning Mr. Cooney's involvement with 120 Bel Air should be excluded. It is not part of the charged offense, and if we examine the government's stated rational as to why the Bel Air evidence is relevant, certainly the government can avoid the prejudice and confusion to the jury and admit this evidence without implicating Mr. Cooney in an alleged sham real estate transaction that never happened and they cannot prove. The government sets forth in their Reply letter three reasons why Mr. Cooney's involvement in 1920 Bel Air is relevant:

    (1) First they argue the 1920 Bel Air transaction is proof that the bond proceeds were not invested in an annuity as they were supposed to be but instead a significant portion was wired to Mr. Cooney. Here they argue the government is entitled to prove where the bond proceeds went.

    (2) As a second reason the government argues this evidence is relevant because it is probative of the nature of the relationship between Cooney and Jason Galanis. Here the government comments in a footnote that they intend to introduce testimonial evidence that Cooney and Jason Galanis were close personal friends and often socialized in Southern California.

    (3) Finally, the government contends that they anticipate a cooperating witness who will offer evidence about his own transactions involving 1920 Bel Air, including the Cooney transaction and therefore the evidence is also admissible as *Giglio* evidence for that witness "unless the defendants represent that they do not plan to cross examine in this issue. (Reply at 9).

Given the government's stated reasons as to why the Bel Air evidence is relevant, the government can certainly achieve these goals without introducing evidence that Mr. Cooney was involved in a sham real estate transaction as they allege in their March 12, 2018 notice of 404(b).

First, Mr. Cooney does not dispute the government's intention to admit evidence that certain bond proceeds were never invested in an annuity and Jason Galanis wired proceeds to others that were never invested in an annuity.

Addressing the government's second rational, we urge the Court to reject the government's contention that this evidence should be singled out to "demonstrates the relationship of trust between Jason Galanis and Cooney." There remains an abundance of both documentary evidence (emails) and testimonial evidence that proves the government's contention that Jason Galanis and Mr. Cooney were close personal friends. Certainly Mr. Cooney does not dispute that his personal friendship with Jason Galanis was one of many factors which caused him to trust Jason Galanis and resulted in his being duped.

Finally, the government can elicit testimony from their cooperating witness regarding transactions involving Bel Air **so long as they do not pertain to Mr. Cooney**. Undersigned counsel for Mr. Cooney has contacted the other lawyers in the case and counsel for each of the other defendants have represented that they do not plan on cross examining any witness on evidence involving 1920 Bel Air involving Mr. Cooney. [1]

Notably the government in their Reply letter has not disputed Mr. Cooney's contention in his Opposition brief that as far as Mr. Cooney there was no crime committed with the Bel Air deal. We remind the Court that no real estate was in fact "sold," nor was any transaction ever completed. The government does not dispute Mr. Cooney's contention that documentary evidence shows that whatever money was wired into Mr. Cooney's CNB account was wired out the following day to a lawyer's escrow account and eventually the escrow was canceled because the real estate transaction never happened. Mr. Cooney retrieved the necessary documentation to later show his accountant that the escrow was cancelled and that he was never the recipient of any funds relating to this transaction. See Def. Ex. F (ECF Doc 355). Evidence of attempted extrinsic acts is of particularly limited value. *See United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 828 F. Supp. 2d 698, 714 (S.D.N.Y. 2011) (commenting that evidence of alleged extrinsic act that was unsuccessful "appears to be of questionable relevance"); *see also Martoma*, 2014 WL 31191, at ("The crime alleged is not a signature crime, and the non-bapi evidence concededly was not used for purposes of insider trading.")

The government has failed to provide evidence that Mr. Cooney knew or should have known that the money wired into his account relating to the Bel Air property was misappropriated funds. Consistent with Mr. Cooney's belief, the evidence is overwhelming that Jason Galanis was involved in numerous entities that generated profits for successful financial investors. The government's reply does not contest or shed light on this belief. The 3500 materials turned over to the defense including the statements of cooperator Hugh Dunkerly corroborate Mr. Cooney's defense that it was Jason Galanis' *modus operandi* to hold himself out as a wealthy legitimate businessman in order to obtain the assistance of innocent parties.

---

[1] Undersigned counsel was not able to get confirmation from counsel for Devon Archer because Mr. Schwartz has been traveling but does not anticipate that Archer would have any reason to cross-examine a witness on this limited issue.

The government does not challenge Mr. Cooney's arguments that the proffered evidence adds nothing to prove that Mr. Cooney engaged in the scheme alleged in the Indictment.  The government does not argue or contest that Mr. Cooney's limited conduct of holding funds in his account for one day does not provide "background" for the allegations in the Indictment; nor is this evidence necessary to enable the jury to "understand the complete story" of the crimes charged. Nor do they argue that if such evidence is precluded, it will not create "gaps" in the government's trial narrative.

The government seeks permission to introduce evidence of an entirely separate alleged fraud without providing basic disclosure of how the fraud supposedly worked. The failure to make full disclosure, by itself, is grounds to deny the government's motion, *see* Fed. R. Evid. 404(b), advisory committee's note (1991) ("The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of the lack of timeliness or completeness.

For all of the reasons set forth above and in Mr. Cooney's opposition to the government's 404(b) evidence -- in light of the government's woefully inadequate response which confirms that the government can achieve all of their stated goals in this case even if the Court precludes this prejudicial, confusing and unfair evidence regarding Mr. Cooney's involvement with the 1920 Bel Air transaction.  We reiterate that in a case where there is virtually no evidence against Mr. Cooney on the charges in the Indictment, the risk that he could be convicted based on the prejudice of "other act" evidence alone weighs in favor of its exclusion by this Court. See Fed. R. Evid. 404(a), Advisory Committee's Note; see also *Michelson v. United States,* 335 U.S. 469, 476 (1948) (explaining that character evidence "is said to weigh too much with the jury and to so over persuade them as to prejudice one with a bad general record and deny him a fair opportunity to defend against a particular charge").

### B.     Mr. Cooney's Alleged False Statements to City National Bank ("CNB")

We are deeply concerned that the government is essentially trying to mischaracterize the facts surrounding Mr. Cooney's alleged false statement to CNB. The government does not dispute in their Reply letter--Mr. Cooney's chronology of the events surrounding his statement to CNB bank as detailed in his original Opposition motion.  The government contends in their Reply letter that the "government anticipates proving up Cooney's statements through testimonial evidence of one to two witnesses and limited documentary evidence" yet they utterly fail to articulate how and when exactly Mr. Cooney lied to CNB bank and what if any documentary evidence they intend to rely upon.

The government has now turned over 3500 witness statements which they obtained in large part **since** Mr. Cooney filed his Opposition Motion on March 23, 2018 --which entirely corroborate Mr. Cooney's version of events as told in his original Opposition motion, which again the government does not dispute.

**The government fails to identify which financial statement they are relying upon**
The government should not be allowed to argue that Mr. Cooney made a false statement in the Spring of 2015 when he applied for a loan – and not identify the financial statement they are referring to. This is particularly true when the government does not even dispute Mr. Cooney's argument that the financial statement dated January 15 they are referring to was for a $100,000 line of credit – completely unrelated to the $1.2 million loan Cooney later received in June 2015.  This is the only financial statement we are aware of which Mr. Cooney previously filed as Def. Ex. B (ECF Doc 355). We urge the Court to order the government to identify which financial statement they are referring to.

The government does not dispute Mr. Cooney's account that CNB changed its position and agreed to lend him a more significant amount in June of 2015 because of the value of his Code Rebel Stock and not the value of his tribal Bonds. Certainly, the emails referenced in Mr. Cooney's Opposition Motion and the latest witness interviews produced in 3500 materials corroborate this position of CNB.

In a case where there is simply no evidence of Mr. Cooney's fraudulent intent—the government is latching onto a theory which they fail to articulate except in broad unsubstantiated claims ("sham transaction," "inexorably intertwined") which simply put, are refuted by the evidence and must be precluded because they are not only false but highly prejudicial.

The government's allegation that Cooney never owned the bonds is refuted by the documentary evidence. This argument runs counter to the government's own allegations in the Indictment that Mr. Cooney allegedly knew that the money he used to purchase the Bonds was "recycled" from the original issuance – not that he never purchased the Bonds in the first place. The government is also wrong that the alleged misstatements are "inextricably intertwined" with the Indictment's charges. There is nothing about Mr. Cooney's request for a loan or a CNB credit line that is necessary to complete the government's story about an alleged fraudulent Bond issuance. See *U.S. v. Ferguson*, 246 F.R.D. 107, 115 (D.Conn.2007); *United States v. Hatfield*, 685 F. Supp.2d 320 (E.D.N.Y. 2010) (district court concluded defendants' alleged misrepresentations to stock exchange were not admissible because they were not inextricably intertwined with the indictment).

The government fails to support its Rule 404(b) motion with any credible explanation of how this evidence helps to prove the permissible uses of knowledge and intent. We reiterate here again the government's own proffered reason for the introduction of this evidence – to show how Mr. Cooney lied to the bank about his ownership of the bonds – demonstrates that the government intends to use this evidence for the impermissible purpose of arguing that he has a "propensity" to engage in criminal conduct. Fed. R. Evid. 404; *Huddleston*, 485 U.S. at 689 (holding that 404(b) evidence must be relevant to be admissible and more probative than prejudicial); *United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993). For the reasons stated above, this is simply not true. CNB was never interested in the Wakpanmi Bonds as an asset.

Simply put, an enormous amount of time will need to be spent by the government to introduce the 1920 Bel Air evidence involving Mr. Cooney. And the longer the government spends, the more the jury will be misled into believing that the alleged false statements actually is part of the securities fraud in this case, and thus the greater the prejudice to Mr. Cooney. *See United States v. Kahale*, 789 F. Supp. 2d 359, 385-86 (E.D.N.Y. 2009) (holding that defendant's "fear that introduction of such evidence will lead to multiple 'mini-trials' within the trial is well-founded," and that defendant's "defen[se of] the legitimacy of these other V-1 Transactions will necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity"). Here, the admissibility of the proffered evidence for the reasons argued by the government is prejudicial, as it suggests Mr. Cooney's propensity to lie and /or commit fraud. This evidence is prejudicial and distracting and will

consume the court and the jury with wasted time during which Mr. Cooney will be forced to bring in witnesses and evidence to prove that he never lied to CNB bank. In a case where there is virtually no evidence against Mr. Cooney, the risk that he could be convicted based on the prejudice of this evidence alone weighs in favor of its exclusion by this Court.

           Respectfully submitted,

            /s/ Paula Notari
           The Law Office of Paula J. Notari
           152 West 57th Street, 8th Floor
           New York, New York 10019
           Tel.: (646) 943-2172

Cc: (via ECF) AUSAs Brian Blain, Rebecca Mermelstein, Aimee Hector, Negar Tekeii and and Andrea Griswold

           Abraham J. Hassen
           O'NEILL / HASSEN
           25 Eighth Ave, Suite C
           Brooklyn, New York 11217

           *Attorneys for Bevan Cooney*