# SHER TREMONTE LLP

April 11, 2018

**BY ECF**

The Honorable Ronnie Abrams
United States District Judge
United States District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  *United States v. Galanis et al.*, 16-cr-371 (RA)

Dear Judge Abrams:

We write on behalf of our client, Gary Hirst, to respectfully request an *in limine* ruling on the admissibility of certain evidence.  Specifically, Mr. Hirst requests that the Court issue an order, pursuant to Fed. R. Evid. 401, 403, 404 and 602, precluding certain testimony of Francisco Martin that is irrelevant, lacks a basis in personal knowledge, and includes impermissible propensity evidence.  We also move to preclude certain of the government's proposed exhibits.  We make these objections in advance for the convenience of the Court, and do not waive our right to make additional objections at trial.[1]

I. <u>The Court Should Limit Francisco Martin's Testimony to Matters Within His Personal Knowledge and Preclude Propensity Testimony Regarding Mr. Hirst</u>

The 3500 material of unindicted co-conspirator Francisco Martin[2] contains instances where Martin makes statements on matters outside of his personal knowledge that are irrelevant to this case and could only be considered impermissible propensity evidence.  The Court should preclude such testimony.

First, Martin offers sheer speculation on the reasons that the stock price of Code Rebel increased.  Specifically, the 3500 material for Martin states the following: "Once

---

[1]   We join the motion of Michelle Morton to preclude the expert testimony of Arthur Laby.

[2]   Although the government has identified Martin as a co-conspirator, he will apparently testify for the government not as a cooperating witness but instead with the protection of a safe passage letter.

Hon. Ronnie Abrams
April 11, 2018
Page 2 of 5

the IPO for CODE REBEL took place and the share price of CODE REBEL stock spiked, *it appeared to MARTIN that GALANIS and HIRST had carried out a pump and dump scheme* with the IPO for CODE REBEL." Gov't Ex. 3522-1, at 6 (emphasis added).  The mere fact that stock price increases – even by a substantial margin – does not, without more, indicate that the price has been manipulated in a pump and dump scheme.  Martin's statement that "it appeared" to him that Hirst and Galanis carried out a pump and dump scheme based solely on a "spike[]" in the share price indicates his lack of personal knowledge as to such a scheme.  To the extent Martin is the witness the government referenced in its reply to defendants' opposition to the introduction of Rule 404(b) evidence, *see* Gov't Letter dated Apr. 2, 2018, at 12, ECF No. 369, who will testify about "the purpose of sales in and out of the Thunder Valley and Seymour Capital accounts," he is not a competent witness in this regard.  Thus, to the extent the Court permits evidence about the Code Rebel scheme—which, for the reasons set forth in our opposition to the government's Rule 404(b) motion, it should not—Martin's testimony about the appearance of a pump and dump scheme should nevertheless be precluded.

Second, Martin's 3500 material (as well as Hugh Dunkerley's) includes discussions of how Jason Galanis and Hirst used the phone application "Wickr" in order to communicate.  *See, e.g.*, Gov't Ex. 3522-10, at 2.  Wickr is an encrypted messaging app commonly used by executives and companies concerned with data privacy and secure collaboration.  It also allows the user to set the retention period for messages; for example, Martin stated that his app was set to retain messages for six days, which he believed to be the maximum retention period allowed (that is actually not the case – the app allows the user to time period, *see* https://www.wickr.com/compliance (last visited Apr. 10, 2018)).  At the time the events at issue in this case occurred, the Wickr app had been downloaded by more than 3 million users and was available in twenty-two languages.  *See* Techcrunch.com, *Secure Messaging App Wickr Adds 22 Languages to Give More People a Private Voice*, Oct. 20, 2014, https://techcrunch.com/2014/10/20/secure-messaging-app-wickr-adds-22-languages-to-give-more-people-a-private-voice/.   There is nothing inherently nefarious about using encrypted messaging apps.  Two of the most popular such apps, WhatsApp and Snapchat (the latter of which automatically deletes messages after 24 hours), are used by millions of people the world over.  It would be exceedingly unfair, prejudicial, and totally misleading for the government to suggest in this case that because certain communications were conducted via Wickr that they suggest sinister efforts to conceal evidence or consciousness of guilt.  And because the government has not offered any Wickr messages as evidence, there is simply no relevance to the fact that Mr. Hirst may have communicated with Martin and Dunkerley via this application.  The Court should accordingly preclude any testimony on the use of Wickr by Martin or Dunkerley to communicate with Mr. Hirst.

II.    The Court Should Preclude Certain Government Exhibits

    a.  Exhibit 1022

We object to government exhibit 1022, the Hirst "CRD Report." This exhibit is a report generated by the Financial Industry Regulatory Authority ("FINRA"), which indicates that there are three pending cases against Mr. Hirst as of February 16, 2018: two civil (brought by the SEC) and one criminal (the Gerova case). Moreover, the CRD Report details the allegations in the SEC charges against Mr. Hirst stemming from both the Gerova matter as well as the present case. The government has not given Mr. Hirst any notice to date that it plans to introduce the SEC charges pursuant to Rule 404(b). If it had, this issue would have been fully briefed in the extensive 404 briefing that has already occurred in this case. Moreover, the government stated in the March 6, 2018 conference, "We do not intend to prove up the underlying facts in the Gerova trial." Tr. of Conference at 56:7-8, *United States v. Galanis, et al.*, 16-CR-371 (RA) (S.D.N.Y. Mar. 6, 2018). That the government will nevertheless attempt at trial to inform the jury about the pending SEC charges, as well was the facts of the Gerova criminal case, by introducing the CRD Report undercuts the purpose of the notice requirement in Rule 404(b). *See* Fed. R. Evid. 404(b)(2)(A).

Even if the government had timely indicated that it intended to introduce the SEC suits and the underlying facts of the Gerova conviction, they should in any event be excluded pursuant to Rules 404(b) and 403. Admission of the CRD Report would imbue the allegations in the present case with the aura of official confirmation, as the jury will improperly be led to believe that the charges must be accurate since another governmental entity has made the same allegations. With respect to the Gerova case, to the extent the Court permits the government to introduce the judgments of conviction, additional civil charges of the SEC arising from identical conduct would be unnecessarily cumulative and similarly prejudicial. The CRD Report has no probative value, and the government has not even attempted to articulate one. Accordingly, the Court should prelude it.

    b.  Exhibit 1403

Finally, we object to government exhibit 1403, a letter Michelle Morton wrote to David Chamowitz, an attorney located in Virginia on or about November 30, 2015, following the arrests of Mr. Hirst and others in the Gerova matter. The letter states that Jason Galanis and Mr. Hirst "deliberately withheld" from Ms. Morton that they had SEC investigations pending against them and that Mr. Hirst "refused to be included in [Hughes'] Form ADV," among numerous other allegations. Gov't Ex. 1403, at 4. It is thus a self-serving exculpatory statement as to Morton and an attempt to lay the blame for her conduct at least in part at Mr. Hirst's feet.

Hon. Ronnie Abrams
April 11, 2018
Page 4 of 5

      The letter is an out-of-court statement introduced to prove the truth of the matter asserted, and therefore it is rank, inadmissible hearsay.  *See* Fed. R. Evid. 801(c); 802.  The statements contained within do not fall under any hearsay exception.  Ms. Morton wrote the letter after the offense conduct had ceased and the SEC had begun its investigation – during which time she was attempting to cooperate with the government.  In fact, in June of 2015, some five months before the letter was sent, Ms. Morton had contacted FINRA to articulate her suspicions about fraud associated with the tribal bonds.  In August 2015, Ms. Morton spoke to the FBI about Jason Galanis, and in September, she wore a wire to a meeting with Jason.  Thus, by the time Ms. Morton wrote this letter in November 2015, was no longer in a criminal conspiracy with the co-defendants and instead was actively working to assist law enforcement (albeit for her own purposes) to detect the crime and arrest her former co-conspirators.

      Accordingly, the statements made in the letter are not "by a co-conspirator of a party during the course and in furtherance of the conspiracy."  Fed. R. Evid. 801(d)(2)(E).  Instead, the letter is clearly Ms. Morton's post-hoc attempt to leave a paper trail of her innocence in the offense conduct that is entirely self-serving.  *See United States v. Cardascia*, 951 F.2d 474, 488 (2d Cir. 1991) (affirming the district court's decision to exclude a "self-serving post conspiratorial statement" describing "conduct that occurred eight months earlier" and that holding otherwise would "significantly erode the intended breadth of th[e] [state of mind] hearsay exception"); *see also United States v. Jackson,* 780 F.2d 1305, 1315 (7th Cir. 1986) (post-conspiratorial statements offered to prove a lack of criminal intent two years earlier when alleged conspiracy occurred not admissible).

      Nor can the letter be introduced to demonstrate Morton's state of mind.  *See* Fed. R. Evid. 803(3).  The state of mind exception does not apply to "a past serving memory or belief" but rather must be a contemporaneous to the state of mind described in the statement.  *See United States v. Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991) ("[T]he reasons for the state of mind exception focus on the contemporaneity of the statement and the unlikelihood of deliberate or conscious misrepresentation.").  Because, as previously noted, Ms. Morton was clearly looking backwards to a conspiracy from which she had already withdrawn, the letter cannot be admitted under the state of mind exception.  Since the statement is plain hearsay and does not fall into any exception, the Court should preclude it.

Hon. Ronnie Abrams
April 11, 2018
Page 5 of 5

      We reserve the right to make additional objections at trial, as well as to move for further *in limine* rulings to the extent the government continues to augment its exhibit list and produces additional 3500 material.

                                        Respectfully submitted,

                                        /s/
                                        Michael Tremonte
                                        Noam Biale
                                        Emma Spiro
                                        SHER TREMONTE LLP

                                        /s/
                                        Barry Levin, Esq.

cc:    All counsel (by ECF)