LAW OFFICES
**PAULA J. NOTARI**
152 West 57th Street, 8th Floor
NEW YORK, NEW YORK 10019
---------
Tel. (646) 943-2172

April 11, 2018

**BY ECF**
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *United States v. Jason Galanis, et al.*, **16 Cr. 371 (RA)**

Dear Judge Abrams:

     The defense respectfully submits the following motions *in limine*, in advance of the trial, which is scheduled to begin April 30, 2018.  Mr. Cooney joins the arguments of co-defendant Devon Archer's *in limine* motions and those of his other co-defendants to the extent they apply to Mr. Cooney.  Mr. Cooney asks that: (1) the government be prohibited from introducing the emails or specific references in the emails described below: (2) the government and other counsel be prohibited from eliciting testimony from cooperator Hugh Dunkerly or any other witness that Mr. Cooney used drugs on a prior occasion.  This evidence is not relevant to any central issues in the case, and carries the risk of undue prejudice and confusion of the issues. It thus should be excluded. See Fed. R. Evid. 403; *Old Chief v. United States*, 519 U.S. 172, 184 (1997); *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005).  The Government has continued to turn over new exhibits and 3500 materials daily.  In the last two days alone, the Government has produced close to 500 additional documents and exhibits which undersigned counsel has not yet had the opportunity to review. Mr. Cooney asks permission to file additional *in limine* motions if issues arise.

     Evidence is relevant if, (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401.  If the evidence is relevant, it still must satisfy Federal Rule of Evidence 403.  Federal Rule of Evidence 403 excludes otherwise relevant evidence if "the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.  In the context of this rule, "[t]he term "unfair prejudice" as to a criminal defendant speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). Or in other words, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly though not necessarily, an emotional one." Id. (citing Advisory Committee Notes on Fed. R. Evid. 403, 28 U.S.C. App., p. 860).

1. **EVIDENCE RELATING TO MR. COONEY'S REFERENCE TO MONEY AS "HONEY" OR REFERENCES BY MR. COONEY AND OTHERS TO EARN MONEY TOWARD A LUXURY MERCHANDISE FUND SHOULD BE EXCLUDED.**

Mr. Cooney moves to exclude evidence concerning Mr. Cooney's ambition to make money on various financial transactions and ascertain wealth, such as references to "continue to press until we have a huge surplus of excess honey" in **Government Exhibit 2084**, and "super stressful having no liquid honey" in **Government Exhibit 2253**, all of which can be redacted. Additionally, Mr. Cooney moves to exclude the reference to what Jason Galanis calls the "luxury merchandise fund" in **Government Exhibit 2005**. Such evidence has no relevance to the offenses charged and will serve only to inflame prejudice. See Fed. R. Evid. 401, 402, & 403; *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 239 (1940) ("[A]ppeals to class prejudice are highly improper and cannot be condoned and trial courts should ever be alert to prevent them."). Evidence concerning how Mr. Cooney chose to characterize his hope that various **legitimate** business deals would be profitable and used an exaggerated term like honey amounts to nothing more than an improper appeal to class prejudice. See, e.g., United States v. *Jackson-Randolph*, 282 F.3d 369, 378 (6th Cir. 2002) ("The problem with a general rule of permitting evidence of an affluent lifestyle to show 'motive' for committing a crime is that it ignores the real possibility that the extreme or extravagant wealth or spending was made possible by legitimate means and, if so, the introduction of such evidence would appeal solely to class prejudice." (emphasis added)); *United States v. Ewings*, 936 F.2d 903, 906 (7th Cir. 1991) ("That the defendant went to Las Vegas, or bought a new car, tells us nothing about why he defrauded the insurance companies. [The defendant] might have spent the money the same way had the policies been legitimate, and we are reluctant to subscribe to the government's theory that criminal intent may be inferred from the items on his shopping list."). See also *United States v. Stahl*, 616 F.2d 30, 33 (2d Cir. 1980) (finding prejudicial error in prosecutor's attempts at trial to incite class prejudice against wealthy defendant and remanding for new trial).

2. **EVIDENCE RELATING TO A PHOTOGRAPH OF MR. COONEY'S MINOR NIECE, A PHOTOGRAPH OF A MAN WEARING A T-SHIRT SAYING "GIMME HEAD UNTIL I'M DEAD" AND A REFERENCE TO TIFFANY LAME WOMAN SHOULD BE EXCLUDED**

Mr. Cooney moves to exclude **Government Exhibit 2085** which is a photo of his minor niece playing lacross. The email provides exaggerated comments from Mr. Cooney: "Our families commitment to respecting and honoring the Native Americans through sport runs deep" and "My niece ▮▮▮▮ Cooney firing montana lacross!!" These statements should not be admitted as they are irrelevant. FRE 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of... unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. On the date of this email, May of 2015, Mr. Cooney's niece was a minor. It is particularly offensive to publish the name and image of a minor to the jury when the comments are clearly intended not to be serious and would result in unfair prejudice to Mr. Cooney, confusing the issues in the indictment and misleading the jury. Notably, while the government has agreed to redact the email not to include the photograph of Mr. Cooney's niece, the comments by Mr. Cooney about his family are clearly not relevant and are extremely prejudicial and could easily be construed in a racist manner against Native Americans when they were not intended as such.

Mr. Cooney moves to exclude **Government Exhibit 2291** which is a photo of a man wearing a T-Shirt saying "Gimme Head Until I'm Dead" and a joking comment from Mr. Cooney that says "Have to love our Nerds!! Only tiling missing is booger and we have the Tri-Lambs!!"  This statement make no sense and clearly does not relate to the charges in the indictment.  Such evidence has no relevance to the offenses charged and will serve only to inflame prejudice. See Fed. R. Evid. 401, 402, & 403; *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 239 (1940)

Mr. Cooney joins Mr. Archer's *in limine* motions to exclude any reference in the emails to Michael Milken.  Mr. Cooney additionally moves to redact **Government Exhibit 2217** to preclude any reference to Tiffany Lame Woman.  This email provides the following exaggerated comments from Mr. Cooney:

> This is pure Genius alla mikey Milken!! The Native American Bonds!! Leon Black would approve of this trade!! Right up his alley!! **Love the names!! I had a girl named Tiffany Lame Woman pull a knife on me when I was in 8th grade!!** Great work here Greek!

Indeed the emails in this case are replete with references to Michael Milken which the government is interpreting as evidence of fraudulent intent which is simply not the case.  Again Mr. Cooney joins Mr. Archer's arguments set forth in his motion *in limine* on this issue. Jason Galanis in his emails to Cooney and others cite Milken's innovation in the emerging growth markets.  For example in March of 2015, Jason Galanis sends an email and includes a research paper from the Milken Institute involving Emerging Domestic Markets.  In this email Galanis writes:

> In doing my research, I found a paper from the Milken Institute. I think it is dead on point. As such, it's really reinforcing and useful. I also think it could be a very helpful part of the linkage narrative of old and new Burnham. that is, Milken has illustrated the urgent need to finance what he calls Emerging Domestic Markets, which he also asserts are under financed. we've been asserting that thesis in tribal finance, of course. it was fortuitous to find the Institute's paper that helps make our point.  <u>See</u> Def. Ex. A

Mr. Cooney's reference to Milken is consistent with his innocent and shared belief that Milken was an innovator in this area and should not be construed otherwise especially given the context of these emails, Galanis' stated belief  above and the abundant research and publications online consistent with their belief.

Mr. Cooney further moves to redact the reference to Tiffany Lame Woman in **Government Exhibit 2217**.  In fact, Mr. Cooney did go to a school with a student named Tiffany Lame Woman as he states in the email and she did in fact pull a knife on him in the 7th grade.  In Def. Ex. B, there is an obituary which references the existence of a Tiffany Lame Woman living in Missoula, Montana where Mr. Cooney was born and raised. Such evidence has no relevance to the offenses charged and will serve only to inflame prejudice if the jury believes that it is intended to be racist or sexist and therefore should be precluded. See Fed. R. Evid. 401, 402, & 403; *United States v. Socony-Vacuum Oil Co*., 310 U.S. 150, 239 (1940).

### 3. THE GOVERNMENT AND OTHER COUNSEL SHOULD BE PRECLUDED FROM ELICITING TESTIMONY FROM COOPERATOR HUGH DUNKERLY OR ANY OTHER WITNESS THAT MR. COONEY USED DRUGS ON A PRIOR OCCASION

The prior witness statements turned over by the government on April 2, 2018 in the 3500 materials reveal that in a proffer session Mr. Dunkerly informed the government that on a prior occasion he used cocaine with Mr. Cooney and Jason Galanis. The government and other counsel in this case should be prohibited from eliciting testimony from Hugh Dunkerly or any other witness on direct or cross-examination that Mr. Cooney used drugs including cocaine on a prior occasion. It should be noted that the government has indicated that while they do not intend to elicit evidence from Mr. Dunkerly that he used cocaine with Mr. Cooney on a prior occasion unless Dunkerly is cross-examined about drug use. While the government filed a motion *in limine* ("Motion," or "Mot.")  to "preclude evidence of witnesses' failure to pay child support and patronizing of prostitutes"  they have not moved to preclude evidence of Mr. Dunkerly's prior cocaine use with or without Mr. Cooney. (Mot. at 12-13).

Here the government appears to agree that evidence of Mr. Cooney's prior drug use is not relevant to any of the issues at trial and certainly under Rule 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time. Any questioning by the government or other counsel on Mr. Cooney's prior drug use would confuse and prejudice the jury, and should be precluded. This evidence is not probative of any issues and would simply be used for the purpose of showing that Mr. Cooney is a bad person. If the Court believes that this evidence is probative of an issue concerning the truthfulness of Mr. Dunkerly as a witness or some other relevant issue concerning Jason Galanis, the Court should preclude any questioning by the government or by other counsel on direct or cross-examination concerning Mr. Dunkerly-- or any other witness and Mr. Cooney using drugs in the past.

### Conclusion

Accordingly, for all the reasons set forth herein we respectfully request that each of the in limine requests be granted.

Respectfully,

Dated:   April 11, 2018
         New York, New York           /s/ Paula J. Notari
                                      THE LAW OFFICE OF PAULA J. NOTARI
                                      152 West 57th Street, 8th Floor New York
                                      New York 10019 Tel.: (646) 943-2172

                                      Abraham J. Hassen O'NEILL / HASSEN
                                      25 Eighth Ave, Suite C
                                      Brooklyn, New York 11217
                                      Tel./Fax.: (212) 203-1858

cc:      All Parties (By ECF)