# EXHIBIT 1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

          v.                          16 CR 371 (RA)

JOHN GALANIS, et al.,

               Defendants.

------------------------------x
                                      New York, N.Y.
                                      March 6, 2018
                                      2:15 p.m.


Before:

                   HON. RONNIE ABRAMS,

                                      District Judge


                      APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
NEGAR TEKEEI
BRENDAN FRANCIS QUIGLEY
REBECCA GABRIELLE MERMELSTEIN
     Assistant United States Attorneys

SHER TREMONTE LLP
     Attorneys for Defendant Hirst
BY:  NOAM KORATI BIALE
     NICOLE WAKNINE

ORRICK, HERRINGTON & SUTCLIFFFE LLP (NYC)
BY:  GREGORY ROBERT MORVILLO
          -AND-
CAITLIN CAREY SIKES
     Attorneys for Defendant Morton
```

1  Code Rebel that, as a result of efforts to pump the price of
2  Code Rebel, which was pumped from an opening price -- again, I
3  may not have the numbers perfect here, but I believe it opened
4  at about $5 and went to a high within the first two weeks of
5  $44.
6            As a result of that, these defendants who had been
7  given shares for no consideration ended up with shares that
8  were worth millions, if not tens of millions of dollars, all in
9  connection with this scheme I think to do two things:  One, to
10 create liquidity, to create this roll-up financial services
11 entity; and two, to take small amounts of money and
12 exponentially increase its purport and facial value by
13 recycling bonds and using the bonds when there was really no
14 underlying value, by pumping the stock price and having shares
15 that sort of didn't have an accurate value.
16           So, in our view, the Code Rebel piece of this is all a
17 part and parcel of the securities fraud scheme that is charged.
18 That's why the Code Rebel conduct is referenced in the
19 complaint.  That is a short version of sort of what I expect
20 the evidence will show at trial.
21           THE COURT:  All right.  Two more:  Defendant Cooney's
22 involvement in financial transactions relating to Jason
23 Galanis' residence at 1920 Bel Air, Los Angeles, California.
24           MS. MERMELSTEIN:  Jason Galanis lived at 1920 Bel Air.
25 It was a home used in many of Jason Galanis' frauds.  It was,

1  as your Honor may recall in the Tagliaferri case, sold to

2  investors as a purported investment opportunity.

3            At a point in time, the home came to be sort of paid

4  for not under Jason Galanis' own name but under various

5  intermediary names, and Cooney served a role in funneling money

6  to the house.

7            I think that his willingness to serve as a front

8  person for Jason Galanis, his willingness to act in Jason

9  Galanis' sted to cover up the true ownership, to allow Jason

10 Galanis to live in a $10,000,000 mansion is all evidence of his

11 knowledge and intent, in broad strokes, of getting into bed

12 with Jason Galanis.

13           The idea that he in good faith thought Jason Galanis

14 was a good guy and relied on him is very much undercut by his

15 participation in this related fashion in funneling money to

16 Jason Galanis' lavish lifestyle.

17           THE COURT:  Lastly, evidence that the defendants were

18 engaged in efforts to induce an additional Native American

19 tribal entity to issue bonds referred to as the Wisconsin or

20 Rosebud bonds, the proceeds of which were, among other

21 purposes, to be used by Bonwick to repurchase Wakpamni bonds

22 from complaining pension fund investors.

23           MS. MERMELSTEIN:  I think that sort of speaks for

24 itself, your Honor.  The evidence shows that following the four

25 rounds of Wakpamni bonds, the defendants, unsatisfied, went out

1  to do it again.

2  One of the reasons to do that was, as usual, to give
3  themselves the liquidity they needed.  In part the liquidity
4  they needed here was that the evidence shows pension fund
5  clients of Atlantic Hughes flipped out when they learned they
6  had Wakpamni bonds in their account that they had not consented
7  to and said, get them out, or we're going to the authorities.

8  The efforts to get them out required the ability to
9  buy them back, and the idea was that Bonwick, another one of
10 the entities involved in the roll-up and who your Honor may
11 recall some of the Wakpamni bonds were used there as net
12 capital, was going to buy them back using money from this next
13 endeavor.

14 I think it's relevant as direct evidence because that
15 effort to keep the thing going and cover it up by buying back
16 the bonds is direct evidence of the scheme, but there is also a
17 kind of modus operandi here about efforts to do it again, even
18 after all the problems with the first one.  So that's the basic
19 lay of the land there.

20 THE COURT:  All right.  Yes.

21 MR. SCHWARTZ:  With respect to this last one, the
22 notice does not identify who was allegedly involved in this
23 other than the defendants.

24 Was it all of the defendants in the government's view?

25 MS. MERMELSTEIN:  Your Honor, I don't know that I'm

1    prepared to answer on the fly if it is literally all of them,
2    but I'm happy to get the defendants an answer.
3            THE COURT:  But you're happy to?
4            MS. MERMELSTEIN:  Get the defendants an answer.
5            THE COURT:  Yes.
6            MS. SIKES:  Your Honor, I just want to point out on
7    behalf of Ms. Morton that maybe one of those 404(b) issues that
8    you just went through related to Ms. Morton, and that was the
9    SEC ADV that was really about Hughes and Atlantic and not even
10   specifically Ms. Morton because she wasn't the only defendant
11   at that company.
12           And this just indicates how prejudicial this 404(b)
13   evidence will be for her, and a limiting instruction will be no
14   remedy to help her in this scenario.  The number of limiting
15   instructions, not only because of the complexity of the
16   underlying scheme alleged here, but also with the number of
17   defendants in this case, the number of 404(b) applying to
18   certain defendants and not others, especially with Ms. Morton
19   in the crosshairs of all of it, she cannot overcome that sort
20   of prejudice.
21           THE COURT:  Let's do this:  Let's set up briefing on
22   the 404(b) issues.
23           Who wants to go first?  That's the question you were
24   asking Mr. Schwartz.
25           MS. MERMELSTEIN:  Your Honor, I think two points on

1   that. To be clear -- and with respect to comments by
2   Ms. Morton -- the government's view is that virtually none of
3   this is in fact 404(b). It is in fact direct evidence of the
4   crime, and it is therefore admissible against Ms. Morton in a
5   stand-alone trial with exceptions.
6           I don't think Mr. Cooney's lying to City National, for
7   example, comes in in a trial just of Ms. Morton. I don't think
8   that's kind of spill-over prejudice, given the egregiousness of
9   Ms. Morton's criminal conduct here, that that's any kind of
10  problem.
11          With respect to briefing on the issue, we're happy to
12  do whatever your Honor wants, but I think that we've now given
13  a fairly fulsome description of what we think. I think it
14  comes in, and if the defendants want to move to preclude it,
15  they should do so.
16          MR. SCHWARTZ: As reluctant as I am to give the
17  government the last word, I disagree with that. I think if
18  they want to rely on this, even in the alternative as 404(b)
19  evidence, they have an obligation to move on it.
20          If they're claiming that this is direct evidence of
21  the charged crimes, then they have to articulate a basis for
22  that. For some of that they have sketched that out today. For
23  some of it they have simply told us what evidence they would
24  intend to introduce.
25          But I think that the government ought to begin by