UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

       v.

GARY HIRST,
JOHN GALANIS, a/k/a "Yanni,"
MICHELLE MORTON,
DEVON ARCHER, and
BEVAN COONEY,

              Defendants.

No. 16 Cr. 371 (RA)

# DEVON ARCHER'S MEMORANDUM IN PARTIAL OPPOSITION TO THE GOVERNMENT'S MOTIONS *IN LIMINE*

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: (212) 446-2300
Fax: (212) 446-2350
mlschwartz@bsfllp.com

*Attorneys for Devon Archer*

**TABLE OF CONTENTS**

| | |
|---|---|
| **TABLE OF AUTHORITIES** | ii |
| **APPLICABLE LAW** | 1 |
| I.   The Court Should Admit Certain Prior Bad Acts of Jason Galanis | 1 |
|     A.  Galanis's Prior Conviction and Cooperation Is Probative of Mr. Archer's Defense, and There Is No Basis for Excluding It | 3 |
|     B.  Evidence of Galanis's Tax Fraud Conviction and Cooperation Is Probative of Galanis's Credibility and *Must* Be Admitted Pursuant to Rule 609 | 7 |
|     C.  The Government's Request with Respect to Other Potential Impeachment Evidence Concerning Galanis Is Premature | 9 |
| II.  The Court Should Preclude *Any* Evidence of Michelle Morton's Purported "Cooperation" or "Whistleblowing" (*e.g.*, GXs 103, 104, 1403, and 2658) | 9 |
| III.  The Court Should Admit Evidence of Witnesses' Failure to Pay Child Support | 11 |
| IV.  The Court Should Preclude Evidence of Ms. Morton's ▮▮▮▮▮▮ ▮▮▮▮▮▮ | 12 |
| **CONCLUSION** | 14 |

## **TABLE OF AUTHORITIES**

**Cases**

*Drake v. Woods*,
   547 F. Supp. 2d 253 (S.D.N.Y. 2008) .................................................................................. 1

*United States v. Aboumoussallem*,
   726 F.2d 906 (2d Cir. 1984) ................................................................................................ 4, 7

*United States v. Blake*,
   195 F. Supp. 3d 605 (S.D.N.Y. 2016) ................................................................................. 10

*United States v. Blum*,
   62 F.3d 63 (2d Cir. 1995) .............................................................................................. 3, 5, 6

*United States v. Crowley*,
   318 F.3d 401 (2d Cir. 2003) ................................................................................................ 12

*United States v. Flaharty*,
   295 F.3d 182 (2d Cir. 2002) ................................................................................................ 12

*United States v. Harvey*,
   547 F.2d 720 (2d Cir. 1976) .................................................................................................. 7

*United States v. Rabinowitz*,
   578 F.2d 910 (2d Cir. 1978) ................................................................................................ 11

*United States v. Salameh*,
   152 F.3d 88 (2d Cir. 1998) .................................................................................................. 11

*United States v. Schiff*,
   612 F.2d 73 (2d Cir. 1979) .................................................................................................. 13

*United States v. Schlussel*,
   No. 08 CR. 694(JFK), 2009 WL 536066 (S.D.N.Y. Feb. 27, 2009) ................................. 11

*United States v. Valencia*,
   826 F.2d 169 (2d Cir. 1987) .................................................................................................. 1

*United States v. Whitmore*,
   359 F.3d 609 (D.C. Cir. 2004) ............................................................................................ 11

**Statutes**

18 U.S.C. § 3500 ....................................................................................................................... 4

**Rules**

Fed. R. Evid. 403 ................................................................................................................ 4, 13

Fed. R. Evid. 609 ............................................................................................................... 3, 8, 9

Fed. R. Evid. 806 ..................................................................................................................... 8

Fed. R. Evid. 807(a)(1) ........................................................................................................... 10

Defendant Devon Archer respectfully submits this memorandum of law in partial opposition to the government's motions ("Motion" or "Mot.") *in limine*. [ECF No. 370]. For the reasons set forth below, the Court should admit evidence regarding Jason Galanis's prior bad acts, including his prior conviction for tax fraud and his fraudulent cooperation with the government, as well as evidence of certain other government witnesses' failure to pay child support. Mr. Archer does *not* oppose, but rather supports, the government's motions *in limine* to exclude evidence of Michelle Morton's attempted cooperation with the government and regulatory authorities, and evidence of Morton's personal circumstances.

## APPLICABLE LAW

This Court "ha[s] discretion in deciding whether a pretrial ruling on evidence may be made in advance of trial." *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987). This discretion includes the authority to preclude irrelevant and unduly prejudicial evidence, arguments, or references at trial. *See, e.g.*, *Drake v. Woods*, 547 F. Supp. 2d 253, 265 (S.D.N.Y. 2008) ("[J]udges have broad discretion to limit evidence that they consider to be prejudicial, irrelevant, or collateral.").

### I. The Court Should Admit Certain Prior Bad Acts of Jason Galanis

Although he will be neither a witness nor a defendant, Jason Galanis will be the star of this trial. Galanis was the prime mover and chief beneficiary of the alleged fraud, and even according to the government's own witnesses, Galanis manipulated and lied to the defendants. Evidence of Jason Galanis's prior bad acts, including his singular penchant for deceit, is deeply probative of the defendants' own culpability, and should be admitted.

The government acknowledges that certain of Jason Galanis's prior bad acts are relevant. For example, it seeks to admit evidence that in 2007, Galanis agreed to a five-year bar from serving as an officer or director of a public company and paid a small fine to the SEC, even

though that bar had long expired by the time of the events in question here, even though Galanis did not admit liability, and even though this case does not involve any public companies. The government nonetheless claims this evidence is critical to show the sort of person that Mr. Archer associated with. [ECF No. 339, at 5 (arguing that evidence of the SEC bar is necessary for the jury "to understand the significance of Archer's decision to do business with Galanis"); ECF No. 369, at 5 (arguing that SEC bar "provides powerful evidence that Archer knew what he was getting into when he joined forces with Galanis")].

But the government seeks to preclude more recent and probative evidence, such as Galanis's conviction for tax fraud, which resulted in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, (GX 3511-5, at 9), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (*See generally* GX 3511-2, 3511-4, 3511-5). During the time that Galanis was cooperating with the government, however, he was committing yet another crime: the so-called Gerova fraud. When the government learned about the Gerova allegations, he lied to them – and they believed it, even noting ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* GX 3511-5, at 11-12 n.4 ("▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████

█████████████████.").

These facts are directly relevant to one of Mr. Archer's core defense theories: that he was manipulated by a singularly talented manipulator. The exclusion of evidence that is highly probative of Mr. Archer's defense – a defense that goes to the heart of what the government must prove to convict him – would be highly prejudicial to Mr. Archer's right to put on a defense. *See United States v. Blum*, 62 F.3d 63, 67 (2d Cir. 1995) ("Whether rooted in the Due Process Clause of the Fifth Amendment or in the Compulsory Process Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the right to present a defense.").

Even if this evidence were not directly relevant to Mr. Archer's defense, it would still be admissible to impeach Galanis – a witness whose out-of-court statements the government intends to introduce for their truth. Under Federal Rule of Evidence 609, felony convictions for witnesses in criminal cases "must" be admitted, subject only to the Rule 403 balancing test. Yet the government would suffer no prejudice from the introduction of this evidence.

If the government really wants to show the jury what kind of person Mr. Archer did business with, [ECF No. 339, at 5; ECF No. 369, at 5], then the jury should be entitled to hear the full picture of that man.

### A. Galanis's Prior Conviction and Cooperation Is Probative of Mr. Archer's Defense, and There Is No Basis for Excluding It

After reciting the evidence of Jason Galanis's prior bad acts that it *does* want admitted, the government argues that any other evidence the defendants would seek to admit that reflects Jason Galanis's prior conduct should be precluded. The Court should decline to permit such a blatantly one-sided presentation of the conduct of a key player in the events at issue in this case.

As the government concedes, a defendant does not have as great a burden to show the admissibility of evidence of similar acts as does the government. *See United States v.*

3

*Aboumoussallem*, 726 F.2d 906, 912 (2d Cir. 1984) ("[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword."). Indeed, this principle is reflected in the structure of Rule 404(b), which requires a prosecutor, at a defendant's request (but not the other way around), to provide certain pre-trial notice regarding evidence falling within Rule 404(b). *Cf. also* 18 U.S.C. § 3500 (imposing obligations on the government, but not defendants, to produce prior statements of its witnesses).

The principle in *Aboumoussallem* also applies to the analysis under both Rules 404(b) and 403: The similar acts evidence that the government seeks to exclude is probative of Mr. Galanis's talents and *modus operandi* as a manipulator – which in turn is probative of Mr. Archer's intent and knowledge, which goes to an essential element of the crime charged by the government. Because Jason Galanis is not a codefendant, there is no risk of the kind of prejudice that is contemplated by Rule 404(b). *Aboumoussallem*, 726 F.2d at 911 n.4 ("Such risk might well arise if the similar acts evidence concerned prior acts of a co-defendant . . . .").

The Second Circuit has recognized that evidence of prior deception is probative of a claim that a defendant was also deceived. In *Aboumoussallem*, the Second Circuit wrote:

> We disagree with the District Court to the extent it excluded the proposed testimony as irrelevant or as inadmissible under Rule 404(b). The proffered evidence satisfies the liberal relevancy standard of the Federal Rules of Evidence: It tends to make the existence of a consequential fact, Yagih's knowledge, less probable. What Yagih sought to prove was that Nazih and Pierre had a plan to import narcotics from Lebanon into the United States using duped couriers. The existence of such a plan would lend some support to the inference that Yagih was duped and thereby bolster his defense of lack of knowledge.

*Id.* at 912; *see also id.* at 912 n.6 ("Relevant evidence encompasses evidence tending to establish negative as well as positive facts.").

The government argues that Galanis's prior conviction and cooperation is inadmissible

4

propensity evidence, caricaturing the defendant's arguments. The argument is not "because Galanis duped or lied to the [government] in 2010 and 2011, he must have lied to his co-conspirators in 2014." Mot. at 4. The argument is that Galanis's supreme skills of deception make it more likely that he successfully fooled Mr. Archer, and therefore tend to support Mr. Archer's core defense.

Experience teaches that this argument is right: the skill of the liar is directly relevant to whether the audience is deceived. Imagine playing cards with a seven-year old child and a world-class poker champion. The child and the champion might well hold the same cards, bet the same way, and try the same bluff – but the likelihood of being fooled by both is not the same. The champion is the better liar, protected by a practiced poker face, while the child's mischievous grin would give her away in a second.

Simply put, Jason Galanis's unique skills as a liar makes it more likely that Mr. Archer was fooled by his lies. In this case, no witness will testify about any conversation or interaction with Mr. Archer in which the criminal nature of Galanis's scheme was discussed. The government will not introduce a single document in which Mr. Archer discusses or was apprised of the true nature of Galanis's scheme. There will be no evidence that Mr. Archer profited from the alleged fraud. But there will be evidence that Galanis lied to Mr. Archer; that Galanis used Mr. Archer to take actions without knowing their true purpose; and that Galanis defrauded Mr. Archer out of money. On these facts, Galanis's supreme skill as a liar is critically important.

Allowing the government to present some evidence of Galanis's prior bad acts, while precluding Mr. Archer from showing through powerful evidence that Galanis was capable of deceiving and defrauding Mr. Archer as well, would prevent Mr. Archer from presenting his defense. *See Blum*, 62 F.3d at 67. Indeed, there can be no doubt that evidence concerning Galanis's deception of Mr. Archer is core to his defense – the Court has already recognized as

5

much.  *See* April 13, 2018 Tr. at 15 (recognizing that Mr. Archer's "state of mind . . . in light of his anticipated defense at trial, will be an essential element for the jury to resolve").  It therefore would be unfairly prejudicial to Mr. Archer's constitutional right to put on a defense to preclude him from offering such probative evidence.  *See Blum*, 62 F.3d at 67-68 (holding that it was prejudicial error for district court to preclude, under Rule 608(b) or Rule 403, defendant to support his defense by showing that third party created false production logbook, and further holding that such evidence was "plainly admissible under Rule 404(b)").

In *Blum*, the defendant's proffered evidence was not only probative to support his specific claim as to lack of knowledge or participation in a specific instance of fraud, it also "would bolster his entire defense" that he did not participate in the theft at issue.  *See id.* at 68 ("Importantly, introduction of this testimony would not have diverted the jury's attention from the central issue of Blum's guilt or innocence; rather, it would have aided the jury in making this ultimate determination.").  Here, as in *Blum*, the admission of evidence showing that Jason Galanis is a supremely skilled liar would "pose[] no realistic threat of confusing the issues before the jury, let alone one which present[s] a danger 'substantially outweigh[ing]' the evidence's probative value" to Mr. Archer's defense.  *Id.* (last alteration in original).

Moreover, precluding Mr. Archer from offering such evidence would leave the jury with only half the story.  This incomplete presentation of the evidence, not its admission, would mislead and confuse the jury.  Thus, to the extent that the government seeks to exclude such evidence under Rule 403, it utterly fails to carry its burden.  *See id.* at 68 ("Indeed, given the importance of the . . . testimony to the defense, whatever confusion . . . that may have resulted from its admission would have to have been overwhelming to satisfy Rule 403's balancing test."

6

(omissions in original) (quoting *United States v. Harvey*, 547 F.2d 720, 723 (2d Cir. 1976) (internal quotation marks omitted)).[1]

The government's citation to *Aboumoussallem* is not availing: The Second Circuit's opinion stated that the evidence offered – which is remarkably similar to the evidence the government seeks to prematurely exclude – would be admissible under Rule 402's relevancy standard, and, moreover, expressed skepticism about the government's Rule 403 argument. *See Aboumoussallem*, 726 F.2d at 912 (noting that it had "rejected" the argument of unfair prejudice in its Rule 404(b) analysis, and consider[ed] the jury confusion concern "somewhat exaggerated"). The *Aboumoussallem* court nevertheless affirmed due to its reluctance "to substitute [its] judgment for that of the trial judge." *Id.* In other words, although affirming under the highly deferential abuse of discretion standard, the *Aboumoussallem* court criticized the very argument the government presses here; its ruling in no way bolsters the government's case. If anything, the Second Circuit's avowed skepticism in *Aboumoussallem* regarding the exclusion of such evidence under Rule 403 supports the admissibility of such evidence in this case.[2]

### B. Evidence of Galanis's Tax Fraud Conviction and Cooperation Is Probative of Galanis's Credibility and *Must* Be Admitted Pursuant to Rule 609

The government specifically states that it intends to offer Jason Galanis's testimony under the co-conspirator exception. *See* Mot. at 7. "When a hearsay statement . . . has been

---

[1] To the extent that the evidence may show that Jason Galanis was so skilled at deception that he convinced one United States Attorney's Office of his innocence regarding conduct for which another United States Attorney's Office later prosecuted him, any embarrassment caused the government by that evidence is not the sort of prejudice that the law recognizes.

[2] To the extent that the government's motion seeks to preclude admission of any "other" evidence of Jason Galanis's prior conduct, it is overbroad and offers Mr. Archer no basis on which to respond. The Court should defer any ruling that would preclude the admissibility of such evidence until such a time as the government makes a showing supporting such preclusion, or one of the defendants tries to introduce it. Mr. Archer will then have an opportunity to respond to particularized arguments and the Court will be able to consider a specific offer of proof from the defense.

admitted in evidence, the declarant's credibility may be attacked, and then supported, by *any evidence* that would be admissible for those purposes if the declarant had testified as a witness."

Fed. R. Evid. 806 (emphasis supplied). Federal Rule of Evidence 609 provides, in turn:

> The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:
>
> (1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:
>
>> (A) *must* be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant.

Fed. R. Evid. 609(a)(1)(A) (emphasis supplied).[3] Thus, to the extent the defendants seek to admit evidence of Jason Galanis's prior conviction and cooperation for tax fraud, that evidence *must* be admitted, subject only to the Rule 403 analysis, because tax fraud is a felony (*i.e.*, is punishable by imprisonment for more than one year), and Galanis is not a defendant.

The government's motion, moreover, does not seriously argue that it will be unduly prejudiced by this evidence. It claims only that it may have to introduce evidence about the circumstances of Galanis's crime and cooperation, and the efforts by the government to verify the information he provided. *See* Mot. at 5-6. But none of this is prejudicial, let alone unduly prejudicial, nor is there any credible dispute that Galanis defrauded the government. The jury is entitled to hear this evidence, and the defendants are entitled to present it because it is directly probative of Galanis's credibility as an out-of-court declarant.

---

[3] Different rules apply for convictions older than ten years old. The government has, for reasons that are not clear, failed to produce the judgment of conviction in Galanis's tax fraud case. However, the government's sentencing memorandum ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (GX 3511-5).

8

    **C.**    **The Government's Request with Respect to Other Potential Impeachment Evidence Concerning Galanis Is Premature**

The government's motion further seeks to require the defendants to provide the foundation for any impeachment evidence aimed at Jason Galanis. As set forth above, the foundation for evidence of Galanis's tax fraud conviction and cooperation is Rule 609, among other things. With respect to other impeachment evidence, the government's request is premature. Until the government's evidence comes in, Mr. Archer cannot decide how he intends to impeach it. Mr. Archer certainly has no objection, however, to allowing the government to object to any such impeachment evidence when offered. *See* Mot. at 8.

**II.**    **The Court Should Preclude *Any* Evidence of Michelle Morton's Purported "Cooperation" or "Whistleblowing" (*e.g.*, GXs 103, 104, 1403, and 2658)**

Mr. Archer joins the government's motion to exclude evidence of Michelle Morton's attempted cooperation or whistleblowing, *see* Mot. at 8-12, as that evidence is unduly prejudicial. But as set forth in Mr. Archer's motions *in limine*, [ECF No. 402 at 20-22], the government's exhibit list includes precisely that evidence, including Ms. Morton's after-the-fact statements that her co-defendants "took advantage of our good intentions and by deceit, fraud and manipulation, used our company for their own illicit purposes, misleading us and our employees, and wrongfully tarnishing our reputations in the investment community." [ECF No. 402, Ex. 11 (GX 103); *see also* Exs. 12-14]. This evidence is inadmissible hearsay and highly prejudicial, and its introduction at trial would violate Mr. Archer's constitutional right to confront the witnesses against him. The Court should exclude these exhibits. If the Court declines to exclude these exhibits, at a minimum, the most egregious portions should be redacted in full, as the government has conceded is necessary, *see* Apr. 13, 2018 Tr. at 33:3-9 ("We can either redact those statements or not offer them from where she claims the other

9

defendants . . . ."), 34:18-23 ( "[T]hey are going to redact everything and not just the names." . . . AUSA: "That is what we offered, yes, your Honor.").

As set forth at length in both Mr. Archer's and the government's memoranda of law in support of their motions *in limine*, Ms. Morton's self-serving statements to both government investigators and her clients are hearsay. [ECF No. 370 at 9-10; ECF No. 402 at 20-22]. They plainly are not statements against a party-opponent (for Mr. Archer is not a party-opponent for this purpose) or co-conspirator statements (since they were not in furtherance of any conspiracy). [*See* ECF No. 402 at 20-22]. Nor do any hearsay exceptions warrant their admission: they are merely a "self-serving explanation of past events," *United States v. Blake*, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016), with zero "circumstantial guarantees of trustworthiness," Fed. R. Evid. 807(a)(1); *see also* ECF No. 402 at 21-22.

Moreover, the statements are both prejudicial and serve no probative purpose. Their use at trial will only confuse the jury and unduly prejudice Mr. Archer. What's more, because Mr. Archer won't have the opportunity to challenge on cross-examination the veracity of Ms. Morton's statements or her motives for making them, the admission of these statements against Mr. Archer would violate his constitutional right to confront the witnesses against him. A limiting instruction, such as that the statements can be admitted against Ms. Morton only, will not keep jurors from hearing that Ms. Morton was manipulated and defrauded by her co-defendants – especially when Ms. Morton's counsel hammers that theme repeatedly through every witness and argument.

Of course, severing Ms. Morton's trial from Mr. Archer's would also resolve any conflicts created by the admission of evidence appropriately heard against or offered by Ms. Morton that is inadmissible as to Mr. Archer. [*See generally* ECF No. 290]. Indeed, it may well be appropriate that a trial against Ms. Morton alone would include evidence of her interactions

with the government, her attempts to cooperate, and her contemporaneous statements to her clients. But that evidence has no place in a trial against Mr. Archer, where it would only serve to prejudice him and deny him his Confrontation Clause rights. As the difficulties presented by proposed GXs 103, 104, 1403, and 2658 illustrate, Ms. Morton's defenses and the evidence both she and the government have indicated they intend to offer are inadmissible against Mr. Archer and antagonistic to his defenses. In the absence of severance, only the exclusion of *all* evidence regarding Ms. Morton's self-serving statements to either the government or her former clients will protect Mr. Archer's right to a fair trial.

### III. The Court Should Admit Evidence of Witnesses' Failure to Pay Child Support

Evidence of the government witnesses' failure to pay child support is probative of their character for truthfulness and is a proper subject of cross-examination. The government's half-hearted motion on this point should be denied.[4]

The failure to pay child support – a serious, court-ordered obligation – is precisely the kind of topic that is appropriate for cross-examination. *See, e.g.*, *United States v. Whitmore*, 359 F.3d 609, 621 (D.C. Cir. 2004) (vacating conviction where trial court denied cross-examination regarding a suspended driver's license and failure to pay child support). The government cites cases that do not involve the payment of child support. *See* Mot. at 12-13. They either involve highly prejudicial sex crimes or other violent crimes that had no bearing on the witnesses' character for truthfulness, *see United States v. Salameh*, 152 F.3d 88, 131-32 (2d Cir. 1998); *United States v. Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978); *United States v. Schlussel*, No. 08 Cr. 694(JFK), 2009 WL 536066, at *3 (S.D.N.Y. Feb. 27, 2009); *United States v. Flaharty*, 295

---

[4] Based on Mr. Archer's review of the government's 3500 material, which is ongoing, Mr. Archer does not presently intend to impeach Witness-1 regarding the fact that he paid for sex with prostitutes, most recently in 2009 and 2010. *See* Mot. at 12. However, to the extent that Witness-1's disclosure was misleading or incomplete, Mr. Archer does intend to cross-examine Witness-1 on his lack of truthfulness. Fed. R. Evid. 608(b).

11

F.3d 182, 190-91 (2d Cir. 2002), or the topic for cross-examination lacked a good-faith basis or was "equivocal, thus the records would not support cross-examination pursuant to Rule 608(b)." *United States v. Crowley*, 318 F.3d 401, 418-19 (2d Cir. 2003).

The government tries to discount the probative value of the anticipated testimony by arguing that the witnesses' failure to pay child support is, "in large part," the result of their involvement in the Wakpamni bond scheme. *See* Mot. at 12. But that is not the kind of "equivocation" that justifies precluding the evidence. *See Crowley*, 318 F.3d at 418. There is no question that the government witnesses have actually failed to pay child support. *Cf. id.* (noting that after an *in camera* review by the trial judge, the court determined that the witness's alleged false accusations were "never determined to be fallacious or wholly unsubstantiated"). Here, the question the government raises is *why* the witnesses have failed to pay child support, not whether they failed to. But just as the government would surely argue – and with respect to Ms. Morton does argue – that the defendant's reasons for engaging in the charged conduct are irrelevant, so is the witness's reason for failing to pay child support. To the extent those reasons have any probative value, the value of that testimony is for the jury to decide.

### IV. The Court Should Preclude Evidence of Ms. Morton's ▮▮▮▮▮

Mr. Archer joins the government's motion to preclude evidence about Ms. Morton's ▮▮▮▮▮. These are each deeply powerful stories that will without a doubt cause the jury to empathize with her. This evidence would be extremely prejudicial to Mr. Archer in a trial where Ms. Morton will accuse him of victimizing and taking advantage of her. The corollary that the jury would draw – that Ms. Morton was the sympathetic victim in both narratives – is emotionally driven and entirely natural. It is also an improper inference and grossly prejudicial to Mr. Archer.

12

A central theme of Ms. Morton's defense is that she was deceived and taken advantage of by Jason Galanis "and his alleged cohorts Hirst, John Galanis, Dunkerley, Archer, and Cooney," whom she refers to as "Galanis's inner circle." *See* Morton Pretrial Brief at 38-39 [ECF No. 298]. Mr. Archer agrees with Ms. Morton that the conflicting defenses in this case justify severance, but evidence of Ms. Morton's unrelated victimization and sympathetic personal history is an entirely different question altogether. If the Court allows this evidence, the jury will be presented with Ms. Morton's defense that Mr. Archer somehow deceived and victimized her – despite their having virtually zero contact with each other – *and* that she "is particularly vulnerable to being attacked in any form, and particularly by domineering white men." *Id.* at 8 n.6.

The emotional effect that her personal story will have on the jury is not one that can be corrected by any limiting instruction. Hearing what Ms. Morton has gone through will change how the jury hears and interprets evidence, and the unfair prejudice to Mr. Archer is that the jury will be more likely to view him as another white man who took advantage of her. Because this will touch the jury on a raw, emotional level, any limiting instructions will be ineffective. *See United States v. Schiff*, 612 F.2d 73, 82 (2d Cir. 1979) ("[T]o regard cautionary instructions as talismans for the solution of any possible prejudice problem is tantamount to effecting a repeal of the prejudice rule, which by its terms concedes the possibility that the negative aspects of some evidence may simply be unmanageable for the factfinder regardless of instructions." (internal quotation marks omitted)). The Court should therefore preclude Ms. Morton from eliciting any information about ███████████████████████████████████████. Fed. R. Evid. 403.

13

## **CONCLUSION**

As set forth above, the Court should deny the government's motions *in limine*. Mr. Archer also joins in his co-defendants' arguments to the extent applicable to him.

Dated: April 18, 2018
        New York, New York

        Respectfully,

        /s/ Matthew L. Schwartz
        Matthew L. Schwartz
        BOIES SCHILLER FLEXNER LLP
        575 Lexington Avenue, 7th Floor
        New York, New York 10022
        Tel.: (212) 446-2300
        Fax: (212) 446-2350
        mlschwartz@bsfllp.com

        *Attorneys for Devon Archer*