LAW OFFICES
**PAULA J. NOTARI**
152 W. 57th Street, Suite 800
New York, New York 10019
Tel. (646) 943-2172

April 24, 2018

The Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re:  <u>United States v. Jason Galanis et al.</u>
       16-cr-0371-4 (RA)

Dear Judge Abrams:

      We write on behalf of our client, Bevan Cooney, in response to the government's letter, filed April 19, 2018, ECF No. 417, seeking to relitigate the Court's tentative 404(b) ruling with respect to alleged misrepresentations Mr. Cooney made to City National Bank ("CNB").

      We urge the Court to consider definitive evidence submitted herewith which contradicts the government's theory of admissibility. We reject the government's efforts to yet again mischaracterize the facts surrounding Mr. Cooney's alleged misrepresentations to CNB. We urge the Court to pay close attention to the timeline and emails between those who directly participated in these transactions which prove that CNB was fully aware that Mr. Cooney no longer owned his tribal bonds at the time he signed the promissory note in June of 2015.

      With each filing on this issue the government's arguments have been a moving target and by their last filing try to take yet another bite at the apple. The government conceded at the April 13, 2018 hearing that Mr. Cooney **only** signed one financial statement in January of 2015 and that was in connection with an entirely separate 100,000 line of credit. At the time Mr. Cooney completed this financial statement in January of 2015, he did, in fact, own $5 million of Wakpamni Bonds and he additionally owned, *inter alia*, approximately $2 million worth of stock.

      In June 2015, Mr. Cooney was given a larger bridge loan of $1.2 million for 6 months. The record is replete with documentary evidence that the tribal bonds were completely inconsequential to the lending decision by CNB to later grant Mr. Cooney another more significant loan in June of 2015 based on the increased value of his Code Rebel Stock. In addition to the emails already submitted, undersigned counsel has recently reviewed yet another email which proves that the bonds were never a basis for CNB granting Mr. Cooney a 1.2 million dollar loan.

      On May 20, 2015 Steven Shapiro from CNB emailed Matthew Fillman and asks: What are the basis of the said exciting loan? Matthew Fillman responds almost immediately (22 minutes later) <u>See</u> DX G :

      Stock Secured - Single Sock - Nadaq Traded (at least it's not a penny stock) – IPO was yesterday IPO Price 5
      Trading at 3-5 times that
      He has 500M shares so 12MM
      Looking for 750M-1MM - would hold shares in CNS
      Restricted for 90 days-from IPO

> FYI- you have the bank account for Code Rebel - so expect KYCQ coming your way soon as well.  See DX G :

No where in this email thread does Matthew Fillman ever mention Mr. Cooney's tribal bonds as a basis for the loan. Consistent with this email—CNB changed its position and agreed to lend Mr. Cooney a more significant amount in June of 2015 because of the value of Mr. Cooney's Code Rebel Stock and not the value of his tribal bonds (which were never even mentioned).

The government does not appear to contradict the above sequence of events. In oral argument, they affirmed the above noting:

> *[T]here is a January 2015 financial statement that Mr. Cooney filled out, and then in June 2015, in connection with getting a promissory note, he was asked to confirm the information on the prior promissory -- the prior financial statement. It is in the promissory note itself. It says that he confirmed the prior financial statement from January.*

Tr. of Hr'g dated Apr. 13, 2018 at 9.

What the government is referring to here is their exhibit 414 which includes the following language (emphasis added):

> *FINANCIAL STATEMENT CERTIFICATION. Borrower represents and promises to Lender that (a) the most recent financial statements Borrower has given to Lender are true and correct in all respects, (b) they fairly represent Borrower's financial condition **as of the date shown on the statements**, and (c) no **material adverse change has occurred in Borrower's financial condition** since that date.*

The Government argues now that Mr. Cooney's signature on the promissory note was false because by the time of the June promissory note, "Cooney had transferred his $5 million of bonds to Bonwick and thus no longer even possessed them."  Gov't at page 8.

What the Government fails to acknowledge is the **definitive evidence** that CNB and Steven Shapiro, the CNB employee who exclusively handled the 1.2 million dollar loan with Mr. Cooney was directly involved in the irrevocable transfer of Mr. Cooney's bonds less than 2 months before Mr. Cooney ever signed the promissory note dated June 24, 2015.  We attach for the Court's consideration emails between Steven Shapiro, Mr. Cooney and Mr. Cooney's financial money managers at Fulton & Meyer --that were directly involved in the (medallion guaranteeing) irrevocable transfer of Mr. Cooney's bonds to Burnham and later to Bonwick on May 28, 2015.  See DX I through DX M. The emails submitted herewith confirm that Steven Shapiro was involved on two separate dates with medallion guaranteeing Mr. Cooney's bonds.  On the first date on April 24, 2015, the forms were made out to irrevocably transfer the bonds to Burnham but the parties later realized the forms should have designated Bonwick, not Burnham.  See DX L  (May 27, 2015 email to Steven Shapiro.  On May 28, 2015, Steven Shapiro essentially re-did the process and medallion guaranteed Mr. Cooney's bonds to Bonwick which was again an irrevocable transfer meaning that Mr. Cooney no longer owned the bonds.  See DX M.

A medallion signature guarantee is a guarantee by the transferring financial institution that the signature is genuine and the financial institution accepts liability for any forgery.  https://en.wikipedia.org/wiki/Medallion_signature_guarantee.  A medallion signature guarantee protects shareholders by preventing unauthorized transfers and possible investor losses. A medallion signature guarantee also limits the liability of the transfer agent who accepts the

certificates.  *Id*.   A medallion signature guarantee is a binding warranty, issued by an agent of the authorized guarantor institution, that: (a) the signature was genuine; (b) the signer was an appropriate person to endorse, and (c) the signer had legal capacity to sign.   The clear terms of the bond transfer that CNB certified through this process made clear that this was an irrevocable transfer of Mr. Cooney's bond power to Bonwick and that he no longer held a subsequent interest in the bond.  See DX M.

The Government's argument that Mr. Cooney somehow misrepresented that he no longer owned the bonds when he signed the June 24, 2015 promissory note is absurd.  That argument is analogous to accusing someone of misrepresenting to the doctor who delivered their baby that they were never pregnant.  Steven Shapiro from CNB signed the medallion in April of 2015 and then again in May of 2015 and he therefore cannot argue that in June of 2015 that he was unaware that Mr. Cooney had irrevocably transferred  his bonds and they were no longer available as collateral for his loan.

The obvious question here is, "why didn't CNB just ask Mr. Cooney to fill out a new financial statement in June of 2015?"  CNB certainly knew that Mr. Cooney no longer had the bonds.[1]  If CNB actually cared about the bonds, they would have noted right away that Mr. Cooney had a "material adverse change" in his "financial condition."  The reason CNB didn't have Mr. Cooney fill out a new financial statement is simple, there was no material change in his financial condition vis a vis CNB.  At most the financial service certification appears to have been a mistake by both parties not to file an addendum financial statement or specify that Mr. Cooney no longer possessed the bonds.  Mr. Cooney certainly relied on his financial advisors from Fulton & Meyer and Steven Shapiro's direct involvment in the transfer of his bonds when he signed the promissory note and he was not trying to intentionally mislead anyone.

The Government's argues that when Mr. Cooney – one year later in 2016 --was asked to consider selling the bonds to repay the loan, it was at that point that Cooney first disclosed that he no longer possessed the bonds and could not sell them.  Gov't at page 8.  Again we urge the court to review the definitive evidence in this case that CNB had signed the medallion guarantee transfer in April and May of 2015 and therefore CNB of course knew that Mr. Cooney no longer owned the bonds.

Why did CNB even raise the issue of the bonds when clearly they knew Mr. Cooney had already transferred them ?   We can only surmise that in the Spring of 2016 – one year after Mr. Cooney had transferred his bonds and his financial situation had collapsed (because of his victimization by Jason Galanis and Mr. Cooney's Code Rebel stock lost its value and could not be sold to repay the 1.2 million dollar loan). After attempts to settle and collect on the now defaulted $1.2 million loan and with Mr. Cooney's bankruptcy looking imminent-- CNB filed a lawsuit against Mr. Cooney and either failed to enlighten their attorneys that they had assisted in the transfer of  Mr. Cooney's bonds before he ever signed the June 2015 promissory note or they conveniently overlooked this detail.

Another detail the Court should consider, in connection with Mr. Cooney's request to obtain a short term loan in January of 2015, he contacted Matthew Fillman, his banking and investment consultant from Fulton & Meyer,  On January 27, 2015, Fillman emailed Mr. Cooney a financial statement to be filled out and stated:

---

[1] The same CNB executive VP dealing with the loan signed the bond transfer (See gov. exhibit 410).

Bevan

Sure I can work something out but can you take a minute and complete the attached. **Big round numbers – not too detailed**. I just don't have a good handle of what should be on your balance sheet, plus I need the signed form to work as an application for regulatory reasons. Also would rather get something perm rather than short term loan. <u>See</u> DX H (emphasis added).

This is the same financial statement which the government now relies upon.[1] The government should not be permitted to bootstrap erroneous theories of admissibility which are directly refuted by on point email correspondence by the parties involved in these transactions.

This brings us back to the relevance of this evidence to the charged offence in the instant case. The government still, on the eve of trial, cannot articulate how this supposed misrepresentation is actually related to the charged crime. At the last court date, the government was appropriately questioned by the Court how the above facts related to Mr. Cooney's "motive, intent, or knowledge." The lack of any articulable theory in the government's response was telling. The government simply said that:

> *[I]t is probative of inconsistencies. He first says owns the bonds. Then he says he doesn't. His inconsistencies in that and his false statements, frankly, are probative of his consciousness of guilt ... Again, it's highly probative because it goes to his state of mind with respect to the bonds.*

Tr. of Hr'g dated Apr. 13, 2018 at 23:

The government goes on to say "It's highly relevant. It's proof that he bought the bonds, that he possessed the bonds, and that he lied about the bonds." (Id.) This attempt by the government to rely upon obviously false claims by CNB made in the heat of litigation contradicted by documentary evidence in the guise of evidence of knowledge and fraudulent intent is nothing more than forbidden propensity evidence.

We reiterate here again the government's own proffered reason for the introduction of this evidence – to show how Mr. Cooney lied to the bank about his ownership of the bonds – is refuted by evidence that CNB assisted Mr. Cooney with the irrevocable transfer of his bonds months before he ever signed the promissory note in June of 2015.

In all candor, we anticipate that after review of this evidence the government should recant its notice to offer this evidence against Mr. Cooney because it is simply false evidence and their theory is refuted by the documentary evidence. This reliance demonstrates that the government intends to rely on CNB's false claims for the impermissible purpose of arguing nothing more than that Mr. Cooney has a "propensity" to engage in criminal conduct. Fed. R. Evid. 404; *Huddleston*, 485 U.S. at 689 (holding that 404(b) evidence must be relevant to be admissible and more probative than prejudicial); *United States v. Gordon*, 987 F.2d 902, 909 (2d Cir. 1993).

Here, the admissibility of the proffered evidence for the reasons argued by the Government is dangerously prejudicial because it could result in the conviction of an innocent man based on falsehoods and it erroneously suggests Mr. Cooney's propensity to lie and /or commit fraud. This utterly false evidence is prejudicial and distracting and will consume the court and the jury with wasted time during which Mr. Cooney will be forced to bring in witnesses and evidence to prove that he never lied to CNB bank and will result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on forbidden propensity evidence. In a case

---

[1] We caution the Court to attach any significance to a financial statement that was given to Mr. Cooney with the proviso "use big numbers –not too detailed." This is the kind of evidence which the Government is relying upon here to convict Mr. Cooney in a case where there is virtually no evidence against Mr. Cooney of the crimes charged in the indictment.

where there is virtually no evidence against Mr. Cooney, the risk that he could be convicted based on the prejudice of this false evidence alone weighs in favor of its exclusion by this Court.

## II.

**The Court Should Preclude Government Exhibit 2280 Relating to An Unofficial Draft of a Profit Loss Statement From 2014**

We object to government exhibit 2280, which is an email Mr. Cooney sent to Gary Hirst at the following email address Gary@hirstlaw.com.  This exhibit is a draft of an unofficial profit and loss statement prepared by Mr. Cooney's money management consultant as Fulton & Meyer. Undersigned counsel has requested a proffer from the government as to the relevancy of this exhibit and has since been advised that the government believes this email is admissible among other reasons to demonstrate the relationship between Cooney and Hirst.  Certainly, there is other evidence via documentary evidence and witnesses who will testify to the nature and extent of Mr. Cooney's relationship with Gary Hirst.  The government has not given Mr. Cooney any notice to date that it plans to introduce evidence that Mr. Cooney used this profit and loss statement for any reason pursuant to Rule 404(b). If it had, this issue would have been fully briefed in the extensive 404 briefing that has already occurred in this case. That the government will nevertheless attempt at trial to inform the jury that this document was somehow used in an inappropriate way or representative of some allegation which cannot be substantiated undercuts the purpose of the notice requirement in Rule 404(b). See Fed. R. Evid. 404(b)(2)(A).

Even if the government had timely indicated that it intended to introduce unofficial evidence of Mr. Cooney's profit and loss statement, they should in any event be excluded pursuant to Rules 404(b) and 403. Admission of the draft statement would imbue the allegations in the present case with the aura of official confirmation, as the jury will improperly be led to believe that the accounting must be representative of Mr. Cooney's finances when that is hardly the case. The unofficial statement has no probative value beyond showing that Mr. Cooney and Mr. Hirst were known to each other which is not an issue disputed in the case and can easily be established through other evidence. This document is nothing more than a draft profit loss statement for 2014, and without knowing exactly what the Government intends to argue, Mr. Cooney urges the Court to disallow this use of propensity evidence.

Pursuant to Rule 403, the district court may exclude even relevant evidence if it finds that the probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time. Any argument by the Government on a theory that will be tantamount to propensity evidence must be disclosed in advance of trial, and is certain to confuse and prejudice the jury, and should be precluded. This evidence is not probative of any issues and would simply be used for the purpose of showing that Mr. Cooney is a bad person.

Respectfully submitted,
/s/ Paula Notari
The Law Office of Paula J. Notari
152 West 57th Street, 8th Floor
New York, New York 10019

Cc: (via ECF)

Abraham J. Hassen
O'NEILL / HASSEN

*Attorneys for Bevan Cooney*