# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 28, 2018

<u>**BY EMAIL**</u>

Paula Notari
315 Madison Avenue, Ste. 901
New York, NY 10165

Gregory Morvillo
Orrick LLP
51 West 52nd Street
New York, NY 10019-6142

Michael Tremonte
Sher Tremonte LLP
80 Broad Street, Suite 1301
New York, NY 10004

Matthew Lane Schwartz
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022

David Touger
Peluso & Touger, LLP
70 Lafayette Street, 2nd Floor
New York, NY 10013

Barry Levin
100 Fairway Road
Lido Beach, NY 11561

### <u>United States v. Jason Galanis, et al, 16 Cr. 371 (RA)</u>

Counsel:

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the Government hereby provides the following information regarding anticipated expert witness testimony.

#### <u>Enrique Santos</u>

The Government expects to call Enrique Santos, a Mobile Forensics Examiner with the U.S. Attorney's Office, to testify regarding the analysis of the Michelle Morton's cellphone, an image of which was produced in discovery on or about August 16, 2016. Mr. Santos will explain the procedures for retrieving and analyzing forensic data from such electronic media and describe the types of retrieval and analysis done in this case.[1]

---

[1] Mr. Santos is expected to testify about facts relating to forensic image processes and/or searches he conducted and not to offer opinions. Thus, although this notice is being provided in an abundance of caution, Rule 16(a)(1)(G) does not require expert disclosures under these circumstances. *See United States v. Marsh*, 568 F. App'x 15, 16-17 (2d Cir. 2014) (summary order) (finding no error in allowing lay, non-expert testimony relating to search of electronic device where witness simply "explained his training," "described" his search, and "testified to the contents of the messages retrieved from the phone"); *United States v. Berry*, 318 F. App'x 569, 569 (9th Cir. 2009) (unpublished opinion) (expert testimony not necessary where witness "simply

<u>Arthur Laby</u>

The Government also anticipates calling Arthur Laby, a professor at Rutgers Law School, whose resume is attached. We expect to elicit testimony from Mr. Laby regarding the following:

- An investment adviser is a person or firm in the business of providing advice about investing in financial assets – including stocks, bonds, and mutual funds – for compensation.

- Investment advisers may be compensated in multiple ways including through an asset based fee (i.e., a percentage of the assets managed), a performance fee (i.e., based on the performance of the client's account), a commission, or a flat fee.

- Client relationships with investment advisers are typically governed by an investment advisery agreement which dictates the services to be performed by the investment adviser. These agreements also typically specify the fees to be paid and any parameters governing investments in the clients' accounts.

- The Investment Advisers Act of 1940 regulates individual investment advisers.

- The Securities and Exchange Commission regulates investment advisers and determines whether an individual or firm is acting as an investment adviser.

- There are generally recognized standards of practice in the investment advisery industry, including:

    o Investment Advisers have a fiduciary duty to their clients. A fiduciary duty requires an investment adviser to act in the best interest of their clients at all times and includes both a duty of loyalty and a duty of care.
    o The duty of care requires that investment advisers act in a prudent, careful and diligent manner with respect to clients. Thus, an investment adviser may recommend a particular investment to a client only after exercising care and diligence. Investment advisers may not simply rely on the representations of third parties in choosing investments.
    o The duty of loyalty requires that an investment adviser avoid harming the client in any way. As a result, an investment adviser must put the client's interests ahead of the interests of the investment adviser or other persons.

---

testified to what he found on the hard drive of [defendant's] computer, without expressing an opinion that required specialized knowledge or offering insight beyond common understanding"); *United States v. Scott-Emuakpor*, No. 99 Cr. 138, 2000 WL 288443, at *12 (W.D. Mich. 2000) ("The question before the Court at this time is not whether these witnesses have the expertise, for example, to develop sophisticated software programs. The question is whether they have the skill to find out what is on a hard drive or a zip drive. Apparently, they have this skill because they determined what was on the drives.").

An investment adviser may not engage in self-dealing or operate with a conflict of interest unless such conflict has been fully disclosed to the client.
  - Investment advisers must disclose any conflict of interest to a client prior to participating in any transaction involving the conflict of interest.
  - Conflicts of interest are typically disclosed to a client in writing.

- Investment advisery contracts are not transferrable without client consent. Accordingly, an investment adviser must notify clients and obtain consent prior to any sale of the firm.  In the absence of such notice by the selling investment adviser, the purchasing investment adviser is similarly obligated to make such a disclosure.  The incoming investment adviser may not make investments on clients' behalf until such notification and consent has been obtained.

- A Fixed Income investment strategy is focused on generating stable and predictable returns.  In particular, a "fixed income" investment adviser focuses on investments which produce a "fixed" rate of income, such as bonds and bond mutual funds.

- Certain investment advisers, typically those who have met a certain threshold of assets under management, are required to register with the SEC.  An individual, however, may be an investment adviser even if not registered with the SEC.  The duties of an investment adviser described above are equally applicable to registered and unregistered investment advisers.

- In order to register, an investment adviser must filed an annual form ADV with the SEC.  The ADV includes information about the firm including where it is located, who the principals are, who the owners are, who the control persons (individuals who directly or indirectly control the management or policies of the investment adviser) are, who makes investment decisions, what kinds of strategies the adviser employees, what types of clients the adviser serves, any disciplinary problems by anyone working at the adviser, and how the adviser is paid. Investment advisers must also provide a copy of the ADV to each client.

- In order to issue a security, including a bond, an issuer must file a registration statement with the SEC.  There are however, various exemptions that allow issuers to issue securities without filing a registration statement.  Securities issued pursuant to such an exception are generally "restricted," meaning that they cannot generally be resold.

- There are certain exceptions pursuant to which a restricted security may be resold. One of these exceptions is Rule 144a which permits a restricted security to be sold to a buyer who meets certain requirements.  Rule 144a does not apply to a security sold by the issuer.  It applies only to the resale of that security.

<u>Martha Haines</u>

The Government also anticipates calling Martha Haines, the former head of Municipal Securities at the Securities and Exchange Commission, whose resume is attached.  We expect to elicit testimony from Ms. Haines regarding:

- A common type of security is a stock or bond

- A bond is a fixed income security through which an investor loans money to the issuer of the bonds, typically so the issuer can finance projects or other activities.

- Under the terms of a typical bond, the investor, or bond-holder is to receive back the amount of money they initially loaned to the issuer ("principal"), plus interest, at a set date in the future, often called the "maturity date."

- A revenue bond is a bond that a government agency or similar entity issues to get cash to finance revenue-producing projects.  The funds from the project are then used to make interest and principal payments on the bonds.

- The terms of a bond offering—including the total amount of the bonds the issuer is selling, the interest rate, and the maturity date, as well as the duties and responsibilities of the various parties—are usually set forth in a document called an indenture or trust indenture.

- A bond trustee is a financial institution that is given the power to enforce the terms of a bond indenture.  Among other thing, the trustee makes sure that interest payments and principal payments are made on time and represents the interests of bond holders.

- Issuers typically market bonds to potential investors through a document called an offering memorandum.  When the bond is being offered only to certain investors, as opposed to the general public, the offering memorandum is called a private placement memorandum.

- The private placement memorandum may be prepared by either counsel for the issuer or, in some cases, by a placement agent.  Often, the placement agent is also responsible for helping the issuer find buyers for the bonds and preparing other marketing materials.

- Ratings agency, such as Moody's, Standard and Poor's, and Fitch, provide ratings for bonds.  A bond rating is similar to a personal credit rating.  It indicates the likelihood that the bond issuer will be able to pay interest over the life of the bond, pay back the principal at the end of the life of the bond, and the marketability of the bonds over their life.

- Bond investors very frequently do not hold bonds until the maturity date.  Instead, bonds are bought and sold among investors on the open market.

- The Depository Trust Company, based in New York City, is a securities depository. If a bond meets certain requirements, it can be listed on the DTC system. Among other things, this allows investors to buy or sell the bond electronically. The vast majority of bonds traded in the United States are listed on the DTC. Generally, if a bond is not on the DTC, an issuer or investor that is selling the bond must deliver a physical copy of the bond, i.e., a piece of paper, to the buyer. As such, DTC eligibility makes it much easier to freely trade bonds.

- Bonds are generally rated from Triple A through C or D depending on the ratings agency.

- Bonds in level A and some levels of B are considered "investment grade." Bonds below a certain level of B are considered "not investment grade."

- An unrated bond is a bond that has not been assessed by any of the major ratings agencies.

- Bond proceeds are generally invested until the issuer needs to spend the money, and the investment income is usually used to help make principal and interest payments on the bonds.

- Generally, the law prohibits the sale of bonds and others securities unless the securities are registered with the Securities and Exchange Commission. The law and applicable regulations, however, provide a number of exceptions to the registration requirement. One exception, known as Rule 144A, allows bond investors to re-sell bonds to other investors, provided the buyers of the bonds meet certain criteria.

<u>Demand for Reciprocal Notice</u>

Pursuant to Rule 16(b)(1)(C) and the parties' previously agreed-upon schedule, the Government hereby demands reciprocal notice regarding any expert witness that the defendant intends to rely upon, including a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence no later than March 30, 2018.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

by: _____/s_____
Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360 / 2190 /2444