

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 19, 2018

The Honorable Ronnie Abrams
United States District Judge,
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:     United States v. Devon Archer, et al., S3 16 Cr. 371 (RA)

Dear Judge Abrams:

    The Government writes in response to defendant Devon Archer's May 18, 2018 letter ("Archer Ltr.").

## I.     The Government's Photos of the Defendants Are Admissible

    The photographs of the defendants that the Government has marked as exhibits, GX 3600, 3601, and 3603, are admissible.[1]  To begin with, while Archer claims the pictures are "unmistakable 'mug shots,'" that is not so.  (Archer Ltr. at 3).  The defendants appear in street clothes and they are not visibly restrained.   Indeed, the photos are similar to any type of governmental or work identification photo.  *See United States* v. *Vasquez Soto*, No. 11 Cr. 986 (GBD), 2013 WL 1898174, at *6 (S.D.N.Y. May 2, 2013) (admitting arrest photo of defendant and noting that "it was not a 'classic' mug shot: it did not depict the Defendant in prison garb, it did not depict the defendant in profile, and it did not contain prison identification numbers.  It could have been a photograph from the Department of Motor Vehicles or one supplied by the Defendant himself").  Further, the three-part test that Archer cites applies only "when the Government seeks to introduce a photograph from a *prior* arrest."  *See id.* (emphasis in original).  In any event, the Government has a demonstrable need for the photographs, which are routinely introduced in multi-defendant conspiracy cases like this one; the photographs do not suggest the defendants have any prior criminal record; and the Government will not elicit testimony about the source or implication of the photographs.[2]

---

[1] The photos are attached as Exhibit A.

[2] While Archer claims *United States* v. *Mohammed*, 27 F.3d 815, 822 (2d Cir. 1994) found the introduction of a mug shot to be reversible error, that is not so.  To the contrary, the Second Circuit found a photograph taken at the time of the defendant's arrest was properly admitted. *United States* v. *Mohammed*, 27 F.3d 815, 822 (2d Cir. 1994) ("Here, the photographs were taken at the time of Mohammed's arrest for the crimes charged in this case.  Thus, the jury was

## II.     The Court Should Exclude DX 4910, 4916, and 4924

The Court should reject Archer's arguments regarding DX 4910, 4916, and 4924.

With respect to DX 4910 and 4916, the Government continues to object to these photos because, as stated in the Government's initial brief, they appear intended to make Cooney and Momtzai appear to be "'gamblers, drinkers, and generally less upstanding" than Archer. Notably, while disclaiming he "intend[s] to argue or insinuate that Mr. Cooney and Mr. Momtazi are 'gamblers' or 'drinkers,'" Archer Ltr. at 2, Archer is silent on whether he intends to argue that Cooney and Momtazi were "generally less upstanding" than Archer, presumably because he intends to use these photos to make just that point. As such, the Court should exclude these photographs for the reasons set forth in the Government's May 16, 2018 letter, ECF No. 465.

Similarly, the Court should exclude DX 4924, a photo of Archer and his wife as toddlers. As Archer notes "the fact that he," along with everyone else in the courtroom, "was once upon a time a baby is . . . obvious." (Archer Ltr. at 4). It has also no relevance to the charges in this case and is purely designed to gain jury sympathy. As such, the Court should exclude DX 4924.

## III.     Michael Milken

The Court should reject Archer's arguments regarding Michael Milken.[3]

There are ample ways for the Government to establish that Michael Milken was convicted of securities fraud in a highly publicized case.

First, the Government could simply ask a witness about what they knew about Milken's reputation.[4]  To the extent the witness answered, in substance, that Milken was previously convicted of securities fraud, that evidence would not be offered for the truth of the matter asserted, but simply to show that Milken's criminal history is well known, particularly among those who work in financial services. In any event, Rule 803(21) provide an exception to the hearsay rule for "reputation . . . in the community concerning a person's character." *See* Fed. R. Evid. 803(21); *Sadowy* v. *Sony Corp. of America*, 93 F.R.D. 450, 452 (S.D.N.Y. 1982) ("Certainly, Ms. Fiegel may properly testify as to Sadowy's reputation in the electronics industry. See Fed.R.Evid. 803(21). Thus, she may offer that Sadowy's reputation is that he was fired by Sonam for committing fraud.").

---

not improperly exposed to evidence of Mohammed's criminal record. Accordingly, we conclude that the district court did not err by receiving the photographs in evidence.").

[3] The Government has no objection to the Court including Milken's name in the "People and Places List" used during *voir dire*.

[4] The Government would not ask the witness to interpret GX 2217 or any of the other exhibits that reference Milken.

Second, and alternatively, the Government could (and hereby does) ask the Court to take judicial notice that Milken was convicted of securities fraud in a highly publicized case in 1990. Under Federal Rule of Evidence 201 "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, "the court . . . *must* take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c) (emphasis added)).

Here, Milken's prior securities fraud conviction meets either of Rule 201(b)'s requirements. Milken's conviction is well known in the New York area, and indeed throughout the country, particularly among those who work in financial services. And Milken's conviction "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201, by referencing news articles from the time of Milken's sentence, among other sources. *Patsy's Italian Rest., Inc.* v. *Banas*, 575 F. Supp. 2d 427, 443 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet."); *Magnoni* v. *Smith & Laquercia, LLP*, 701 F. Supp. 2d 497, 501 (S.D.N.Y. 2010) ("The Court takes judicial notice that 'Quickie' is the brand name of a wheelchair, and finds that Laquercia's explanation [of a conversation] is more plausible than Magnoni's.'").

Accordingly, the Government attaches three articles reporting on Milken's sentencing, one from the New York Times, one from the Los Angeles Times, and one from the Washington Post, and respectfully requests that the Court take judicial notice that Milken was convicted of securities fraud in a highly-publicized case in 1990.

If the Court took judicial notice of Milken's prior conviction, the Government would have no objection to the Court similarly taking judicial notice that Milken worked at Drexel Burnham in the 1970s and 1980s and was considered an innovator in the high-yield bond industry.

Third, the Government could also introduce Milken's judgment of conviction as a public record under Rule 803(8). *See United States* v. *Serrano*, 192 F.Supp.3d 407, 414–15 (S.D.N.Y., 2016) (allowing admission of third-party's prior conviction under Rule 803(8)).

To the extent the Court does not find any of these options appropriate, the Government would likely seek to call the Honorable Kimba M. Wood, who presided over Milken's case, to offer brief testimony about Milken's plea and sentencing and the publicity it received.[5]

---

[5] The Government has not yet discussed this possibility with Judge Wood or begun to seek the approvals necessary to call Judge Wood, but would do so promptly if the Court rejected the Government's other options for putting evidence of Milken's conviction into the record.

### IV. The Jason Galanis, Hirst, and Morton Pleas Are Admissible, If at All, Solely Under Rules 609 and 806

The Government is considering the defendants' request for a stipulation regarding the guilty pleas of Jason Galanis, Gary Hirst, and Michelle Morton in this case.

However, those guilty pleas are admissible, if at all, only under Rules 609 and 806 to impeach the declarants' out of court statements. Thus, if admitted, the Court must ensure, including possibly through appropriate limiting instructions, that the defendants use this evidence solely for its permissible purpose—arguing to the jury that it should not credit statements by Jason Galanis, Morton, and Hirst because the declarants are untrustworthy. But the Court should preclude the defendants from making other arguments from this evidence, including, for example, that defendants who are guilty plead guilty while those who are innocent go to trial or arguing about the significance of the charges to which the defendants' plea guilty. In this regard, it is the fact alone of these recent guilty pleas that is admissible pursuant to Rules 609 and 806. The details relating to what the individuals pleaded guilty to, or the content of their plea allocutions, is not.

### V. Archer's Other Arguments

The Government rests on its prior submissions regarding (i) the Cooney Recordings, (ii) ███ ██████████████████████████████████████████████████ and (iii) the propriety of repeated limiting instructions regarding the acts of each co-conspirator.[6]

Respectfully submitted,

ROBERT KHUZAMI
Attorney for the United States, Acting Under
Authority Conferred by 28 U.S.C. § 515

By: /s/ Brendan F. Quigley
Rebecca Mermelstein
Brendan F. Quigley
Negar Tekeei
Assistant United States Attorneys
(212) 637-2360/2190/2442

cc:     Counsel of record (via email)

---

[6] The Government strongly disagrees with the statement on page ten of Archer's letter that "there is nothing about the John Galanis statements to the WLCC . . . that is an integral part of the conspiracy." As the Government will prove at trial, "the John Galanis statements to the WLCC" resulted in the WLCC issuing the Wakpamni bonds, without which there could have been no recycling or other misappropriation of bond proceeds in the first place. As such, John Galanis's role was certainly "integral" to the conspiracy of which Archer and Cooney were also a part.