

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

May 25, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:   *United States v. Galanis, et al.*, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

    I represent Devon Archer. I write in follow-up to the end-of-day discussion on the record yesterday, in which the government asked the Court to reconsider its prior ruling that the fact of Jason Galanis's September 2015 arrest is inadmissible. As Mr. Archer has argued for months—and as the Court explicitly agreed in its April 13, 2018 ruling—Jason Galanis's arrest in the Gerova case is probative of nothing against Mr. Archer and is "wholly unrelated and irrelevant to the current case." (4/13/2018 Tr. at 26 (statement of the Court)). Accordingly, there is no basis to reconsider the Court's earlier ruling.

**I.    The Parties' Briefing and the Court's Rulings Plainly Contemplated the Complete Exclusion of Jason Galanis's Arrest**

    The fact of Jason Galanis's arrest in September 2015 is not relevant to any issue in the current trial. Indeed, when the government was challenged yesterday to identify any prejudice to its case from the exclusion of the arrest, it was unable to do so.

    As Mr. Archer has argued for the past several months, "[k]nowing that the BIT Board's confrontation was in the wake of Galanis's arrest on totally unrelated charges adds nothing that is probative to Mr. Archer's guilt or innocence—let alone that it was securities fraud[.]" [ECF No. 355, at 22]. There is no fact related to the case against Mr. Archer that is made more or less probable by virtue of Jason Galanis's arrest; in contrast, the prejudicial impact of the arrest is enormous. *Id.*

    The Court agreed in its April 13 ruling, holding in unequivocal language:

> I am not going to permit the government to introduce evidence relating to the arrests and convictions of Mr. Hirst and John **and Jason Galanis** in Gerova. I just fail to see how it is direct evidence of this conspiracy.



May 25, 2018
Page 2

(4/13/2018 Tr. at 25 (emphasis added)). The government immediately asked the Court to reconsider, (*id.*), which the Court refused to do. (*See id.* at 26 ("I think it is too prejudicial.")). When the government continued to press for reconsideration, the Court acknowledged that there might be "certain arguments that the defendants [will make to] open the door to this," but that in the absence of such an argument, the evidence was "just . . . too prejudicial" and would be excluded. (*Id.* at 26).

In that discussion, the Court acknowledged that there likely was "some other evidence that can come in . . . about Jason Galanis and his **conduct** in the past" that did not carry the same prejudicial impact as his Gerova arrest. (*Id.* at 28 (emphasis added)). By referring specifically to "conduct" – and the Court's other references to evidence about the "previous relationships" between Jason Galanis and certain defendants, (*id.* at 27) – it was plain that that the Court contemplated some evidence of the underlying course of dealings between certain of the defendants and Galanis, but not the arrest, which could not in any way be described as Galanis's "conduct" in the past.[1]

Following the April 13 hearing, the Court permitted the government to submit a letter solely addressed to John Galanis's reply, to which it had not had an opportunity to respond. (*See id.* at 27-28). In that letter – seven single-spaced pages of briefing replete with citations to the April 13 hearing transcript – the government never challenged the transcript's accuracy or urged the Court to reconsider its exclusion of Jason Galanis's Gerova arrest. Moreover, in attempting to explain away its own prior and "repeated" assertion that "the Gerova matter was wholly unrelated and irrelevant to the current case," (*id.* at 25-26), the government stated:

---

[1]   On the record yesterday, Your Honor similarly pointed out that at the April 13 hearing the Court had mentioned that there might be some other way to introduce evidence about John Galanis and Gary Hirst's knowledge about Jason Galanis's "misconduct" in the past – *i.e.,* the substantive interactions between them, not the fact of a prior arrest. And pointing to page 29 of the April 13 transcript, Your Honor quoted:

> I say again, "So maybe there is a way to getting in the fact that they" – I think it is clear from that context that they is Hirst and John Galanis – "knew about it," meaning Jason Galanis's arrest and conviction in Gerova perhaps in addition to other prior conduct without getting into the fact that they were convicted of fraud themselves.

5/24/2018 Tr. at 234. With respect, however, the "it" in that sentence could not have referred to the Gerova arrest or conviction. Rather, Your Honor was responding to the government's statement that "I'm sure there will be plenty of evidence of Jason Galanis's misconduct." (4/13/2018 Tr. at 29). The "it" in the Court's sentence was a reference – as it was throughout – to *conduct*, not arrests or convictions. There was nothing in the April 13 transcript that suggested the Court was wavering on the admissibility of Jason Galanis's arrest.



> Respectfully, the government's assertions on that issue came in the context of a motion by defendant Archer seeking access to Gerova discovery materials on a theory that they constituted *Brady* material or were material to his defense under Rule 16.
>
> **The Government is not now asserting that the Gerova evidence is relevant against Archer.** It is relevant, and always has been relevant, against Gary Hirst and John Galanis. . . .

[ECF No. 417, at 4 n.4 (emphasis added)]. This explicit admission underscored that the government was no longer attempting to introduce the Jason Galanis arrest against Mr. Archer, and that it had tactically limited its motion for reconsideration to issues relevant to John Galanis and Gary Hirst.

Mr. Archer relied on that representation, and on the Court's prior ruling. Indeed, Mr. Archer put in his own response in which he called out specifically the just-quoted language, and argued that to the extent that the Court was inclined to reconsider its Gerova ruling, Mr. Archer needed to be severed from John Galanis and Gary Hirst. [ECF No. 424, at 1]. There was no need in that response to mention the possibility that the government would attempt to introduce Jason Galanis's arrest against Mr. Archer: the Court had already ruled it inadmissible, and the government's motion for reconsideration explicitly disavowed any relevance of the Gerova evidence to Mr. Archer, not mentioning the argument it makes now.

Similarly, when the government put in its sur-sur-sur-reply, it argued that, in the event that the Court reversed its prior decision and the Gerova evidence was admitted, Mr. Archer did not need to be severed. [ECF No. 449, at 6-8]. In that brief, the government revived the notion that Jason Galanis's arrest provided context for Mr. Archer's statements to the BIT Board, (*id.*), but the government **never** suggested that Jason Galanis's arrest was not barred by the Court's prior order. To the contrary, the government was arguing that **if** the Court reversed its prior order – a prior order in which the Court held that it was not going "to permit the government to introduce evidence relating to the arrests and convictions of Mr. Hirst and John and Jason Galanis in Gerova," (4/13/2018 Tr. at 25) – then a joint trial was still appropriate. Everyone had the same understanding of the Court's order, which was consistent with Your Honor's plain language.

Because the government in its response had suggested that Mr. Archer himself might introduce evidence about Gerova, Mr. Archer subsequently clarified that he had no intention of doing so. Mr. Archer stated that he "rest[ed] on his prior submissions (and the Court's prior ruling)" with respect to Gerova, and added the following clarification:

> To be perfectly clear, Mr. Archer has no present intention to introduce any evidence about the Gerova fraud, arrest, or convictions, assuming the Court adheres to its prior Rule 404(b) order. That evidence has no place in a trial involving Mr. Archer, and if the Court orders it admissible against Gary Hirst and John Galanis, then Mr. Archer's trial should be severed.



[ECF No. 458, at 7-8]. Thus, it was clear that the Court's prior ruling barred *any* evidence about the Gerova arrests and convictions, and that all parties had the same understanding.

When the parties returned to Court on May 16, neither the government nor the Court corrected Mr. Archer's (plainly correct) understanding of the Court's ruling. To the contrary, in the course of "revisit[ing] the issue of the Gerova fraud and Mr. Archer's April 24 letter," the Court stated it had "read the most recent submissions" and had "**not changed [its] thinking on the issue**," although it was of course possible that one of the defendants could open the door to the Gerova evidence. (5/16/2018 Tr. at 7 (emphasis added)).

Mr. Archer then reiterated that, in the event that one of the other defendants opened the door to Gerova, he should not be prejudiced, which is why that evidence had no place in a joint trial. In the event that the Court ordered a joint trial *and* the Gerova evidence came in, Mr. Archer argued that "very robust limiting instructions" would be needed, and the government agreed. (*Id.* at 9-10).

It was in that context – the government's continuing disagreement with the Court's original ruling and against the backdrop of all of the foregoing – that the government stated at the May 16 conference that it "continue[d] to believe that we don't think this is part of your Honor's 404(b) ruling that testimony that Jason Galanis was arrested in . . . September 2015 without reference to any defendant's involvement in that arrest is relevant because it's necessary to provide context for communications related to this charged conspiracy." (*Id.* at 10:11-17). That is, this was just another attempt by the government to re-litigate the Court's clear ruling of a month earlier.

The Court indicated it would "talk about that a little bit later" in light of the government's motion *in limine* "with respect to prior activity of Jason Galanis. I know it's clear from your letter two things you think should come in, but then I want to talk about it more not only in the context of 404(b) but in the context of impeachment." (*Id.* at 10:19-11:1 (emphasis added)). As set forth in the government's motion *in limine*, those "two things" were Jason Galanis's SEC bar – which the government argued was "admissible because it provides context for defendant Archer's false and misleading statement to the [BIT Board]" – and "the arrests and convictions of Jason and John Galanis and Gary Hirst in the Gerova case." [ECF No. 370, at 1].

To be clear, the government's *in limine* motion had been filed on April 2 – prior to the April 16 conference at which the Court held the Gerova arrests to be inadmissible – and did not seek permission to introduce any evidence. Rather, the government's motion sought to *exclude other* bad acts of Jason Galanis – principally his California arrest and fraudulent cooperation.

When, at the May 16 conference, the Court returned to the question of Jason Galanis's prior bad acts, it did so in the context of the impeachment value of his California tax fraud conviction and fraud upon the government during his cooperation. (5/16/2018 Tr. at 27-38]. Significantly, the Court never returned to, let alone reconsidered or reversed, its early and explicit ruling that the government could not introduce "evidence relating to the arrests and convictions of Mr. Hirst and John and Jason Galanis in Gerova."


Simply put, there is just no way that it can be claimed that there was any ambiguity on this issue. The Court ruled in plain terms that Jason Galanis's arrest was out. The government explicitly acknowledged that the Gerova evidence had no relevance to Mr. Archer. And while the government repeatedly tried to re-litigate the Court's ruling, there was never any indication that the Court was wavering in the least from its clear statement that Jason Galanis's arrest was inadmissible.

**II.      Mr. Archer Would Be Seriously Prejudiced By Evidence Of Jason Galanis's Arrest**

The Court's April 13 order also happens to be right. The prejudicial value of Jason Galanis's Gerova arrest is overwhelming. The fact that Jason Galanis was charged with securities fraud in the midst of the conduct at issue in this case will overshadow everything else, as the jury will draw the unsupportable inference that Mr. Archer was somehow involved in or knowledgeable about that conduct. *See Krulewitch v. United States*, 336 U.S. 440, 454 (Jackson, *J.*, concurring) ("It is difficult for the individual to make his own case stand on its merits in the minds of jurors who are ready to believe that birds of a feather are flocked together").

Moreover, the way that this evidence will be introduced is deeply prejudicial. The government intends to offer evidence of Jason Galanis's arrest, but refuses to stipulate that Mr. Archer was not involved in or knowledgeable about the Gerova conduct or investigation – despite the fact that Mr. Archer did not yet know Jason Galanis when the Gerova fraud was ongoing. There is no other way for Mr. Archer to make this point, except perhaps by calling the Gerova case agents to testify about that investigation, which will only compound the prejudice by further calling attention to the issue.[2]

GX 2103, which the government proffered yesterday, is a perfect example of the prejudice. That exhibit is an SEC press release describing the Gerova arrests and charges, including the nature of the charges and the names of the co-defendants. When those names are redacted, the jury will be left to speculate that one of them is Mr. Archer's. There is no rational way to redact that exhibit that will not be deeply prejudicial, for literally no added probative value, as explained further below. Mr. Archer's response to receiving the press release from Jon Burnham (not alleged to be a co-conspirator) was: "Surprise to both of us" – meaning Mr. Archer and Andrew Godfrey, a BSI executive who is also not alleged to be a co-conspirator – "We're pleased with the actions we took." This is nothing more than a reaffirmation that Mr. Archer was honest with the BIT Board before; it adds nothing.

---

[2]      For the same reason, the government's suggestion that there is no prejudice from the Gerova arrest because the jury will already know about Jason Galanis's California tax fraud conviction and his conviction in this case is misplaced. Part of the parties' proposed stipulation regarding the California arrest and conviction is that that case was under seal. [ECF No. 468 (setting out competing versions of the stipulation)]. And Galanis's arrest in this case obviously post-dated the events in question. Thus, Mr. Archer is presently able to argue what is functionally undisputed, which is that he had no indication about Jason Galanis's criminal past. Evidence of the Gerova arrest – a securities fraud arrest, not less – will strip him of the ability to make that argument.



Finally, Mr. Archer would be prejudice by the introduction of the Gerova arrest because he relied upon the Court's ruling in preparing for trial. As explained on the record yesterday, Mr. Archer would have discussed the Gerova arrest in his opening – just as I discussed Jason Galanis's SEC bar – to pull the sting from that horrendously prejudicial fact. Now, it will come out in the middle of trial as a surprise, to Mr. Archer's serious detriment.

### III.    There Is No Prejudice To The Government

On the other hand, there is zero prejudice to the government to excluding the arrest. The government has made clear that, with respect to Mr. Archer, the sole purpose for which it seeks to introduce the arrest is to provide "context" for his September 2015 interactions with the BIT Board. But the fact of Jason Galanis's arrest is utterly unnecessary to make that point.

The fact is that throughout much of 2014, the BIT Board raised questions about various issues, including the role of Jason Galanis, with representatives of CORFA and BAM Holdings, which were in the process of acquiring Burnham Financial Group. The government contends that Mr. Archer made misrepresentations about Galanis's role; the defense contends otherwise. In September 2015, the BIT Board went back to Mr. Archer, who (the government will argue) reiterated his prior statements about Galanis's role with Burnham Financial Group. The government says this is lies-on-top-of-lies; the defense contends otherwise. But it adds absolutely nothing to the government's proof to tell the jury that the prompt for the question to Mr. Archer was Galanis's arrest. The relevant fact is simply whether the representations were true or false, and Galanis's arrest is not probative on that question.

The sole reason why the government wants to introduce the fact of the arrest is to prejudice Mr. Archer with the taint of another arrest of Jason Galanis. This will make the whole thing seem much more sinister, especially given that the BIT Board's initial round of questions were prompted in part by Galanis's SEC bar – which the Court has already allowed in, over Mr. Archer's objection. Knowing that the BIT Board's renewed questioning was in the wake of Galanis's arrest on totally unrelated charges adds nothing that is probative to Mr. Archer's guilt or innocence – let alone that it was securities fraud. *See United States v. Bradwell*, 388 F.2d 619, 622 (2d Cir. 1968) (discussing the undue prejudice that can result when the "minute peg of relevancy [is] entirely obscured by the dirty linen hung upon it" (citation omitted) (quoted approvingly in *Williams*, 585 F.3d at 708)).

### CONCLUSION

For the reasons just given, the Court should adhere to its prior ruling and exclude evidence of Jason Galanis's September 2015 arrest in Gerova.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz