

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 25, 2018

**BY ECF**
The Honorable Ronnie Abrams
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Devon Archer, et al.</u>, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

      The Government writes in response to the letters filed earlier today by Devon Archer and Bevan Cooney. There is no reason for the Court to expand its prior ruling regarding John Galanis's Gerova conviction to also preclude evidence of Jason Galanis's September 2015 arrest.

**I. Jason Galanis's September 2015 Arrest is Relevant and Admissible**

      Jason Galanis's September 2015 arrest, during the time of the charged conspiracy, is highly relevant for multiple reasons.

      First, with respect to defendant Cooney, the evidence of Jason Galanis's arrest is highly relevant to show defendant Cooney's consciousness of guilt. As proffered by the Government yesterday, an immunized witness, Francisco Martin, will testify, in substance, that defendant Cooney called him to tell him that Jason Galanis had been arrested but not to worry because the arrest did not involve the Wakpamni bonds, but related to an old case, Gerova. This vignette is relevant in several material ways. The mere fact that Cooney called Martin to relay the fact of Galanis's arrest shines light on the nature of Cooney and Martin's relationship. The fact that Cooney made explicit that the arrest did not involve Wakpamni reveals Cooney's knowledge that both he and Martin were each involved in the Wakpamni matter with Galanis and provides the basis for an inference that Cooney appreciated that there was a possibility that Galanis could have been arrested for conduct relating to the Wakpamni bonds. Put differently, Cooney's efforts to reassure Martin that the arrest did not relate to Wakpamni makes clear that Cooney understood himself to be involved in a criminal enterprise relating to Wakpamni, such that a risk of arrest existed.

      Second, evidence of the 2015 arrest is necessary to provide context for communications made by the defendants following the arrest. For example, on September 25, 2015, the day after Jason Galanis's arrest, Archer emailed Bevan Cooney and two other individuals, stating that "our dear friend," i.e., Jason Galanis, "will be pre occupied for the foreseeable future" due to "yesterday's unfortunate events." (See GX 2102, attached as Exhibit A). In the email, Archer sets out a list of "items" for "immediate discussion," including "Indian bond due diligence & closing";

Case 1:16-cr-00371-RA   Document 480   Filed 05/25/18   Page 2 of 5

Page 2

"damage control"; the costs of running Burnham's New York City office; issues related to Valor; and an "Atlantic fund request Michelle [Morton] [might] as well be asking for $1 billion." Cooney then responds to this email stating "Good prelim checklist Arch. Let's all conference this am."

These emails thus show both Archer and Cooney's direct involvement in many of the entities at the center of the charged scheme, including Burnham, the purported placement agent for all four bond issuances; Atlantic Asset Management; and Valor, the company that funded the acquisition of Atlantic Asset Management. And the email further makes clear Archer and Cooney's understanding that, because Galanis's arrest would "pre occupy" him "for the foreseeable future," it was for them to take over Galanis's responsibilities.

Third, as discussed at yesterday's conference, with respect to defendant Archer, the Gerova arrest is necessary to provide context for Archer's continued false statements to the board of the Burnham Investor's Trust. In a letter dated September 26, 2014, a year before Galanis's arrest, for example, Archer "confirmed" to the Board that Jason Galanis would "not be involved with any of the Burnham entities and their 'affiliated persons'"; that Jason Galanis would have "no interest of any kind, direct or indirect, in any of the Burnham entities or their successors"; and "that the Burnham entities will not invest with or in, directly or indirectly, any business or enterprise" associated with Galanis. (*See* GX 762).

This was obviously false. But, in the aftermath of Galanis's arrest, Archer doubled down on these lies. As reflected in GX 2103, on September 25, 2015, Archer told Jon Burnham, the president of Burnham Financial Group, that Galanis's arrest was a "surprise" and that "we're pleased with the actions we took," i.e., falsely suggesting that he had cut ties with Galanis. (*See* GX 2103, attached as Exhibit B). Similarly, in a meeting with the Board of Burnham Investor's Trust on October 19, 2015, Archer again falsely indicated he had cut Galanis out of Burnham-related entities. The minutes of that meeting reflect that Archer told the Board that "he had been shocked" by Galanis's arrest and "thanked the Independent Trustees for their insistence that Mr. Galanis not be involved in [the] management of Burnham." (*See* GX 781).

Fourth, Jason Galanis's Gerova arrest was one reason the Wakpamni scheme started to unravel and is accordingly relevant to complete the factual narrative of the charged scheme. While Mr. Touger stated at yesterday's conference that it was the issuance of SEC subpoenas that caused the scheme to implode, the Government anticipates introducing testimonial evidence that a combination of events—including Jason Galanis's arrest, the receipt of subpoenas, and issues related to making payments on the bonds—resulted in the scheme coming apart.

Fifth, evidence of Jason Galanis's arrest is not unfairly prejudicial to Archer or Cooney under Rule 403. For one, the evidence concerns a prior bad act of Jason Galanis, not any of the trial defendants. Simply because the evidence is relevant and incriminating does not make it prejudicial. Moreover, Archer and Cooney clearly seek to pin the blame for the Wakpamni fraud on Jason Galanis. They have sought to introduce evidence of his prior conviction in California and his guilty plea in this case. Archer's counsel described him in opening as a "master manipulator," Tr. 93, and Cooney's counsel tagged him as a "fraudster" and "a conman," who was "very good at masterminding [and] manipulating people," Tr. 110. In light of the arguments and evidence the defendants have already made in this trial, and are anticipated to make, regarding Galanis, it is

simply ludicrous to argue that Jason Galanis's September 2015 arrest is a "horrendously prejudicial fact." (Archer 5/25/18 Ltr. at 6).[1]

Finally, it is similarly wrong to argue that evidence of Jason Galanis's September 2015 arrest will "overshadow everything else" in this case. (Archer 5/25/18 Ltr. at 5). To be clear, the Government is not seeking to introduce any evidence of the conduct underlying the Gerova fraud. Instead, as indicated above, the evidence at issue concerns simply the fact of Galanis's arrest. While critically important as evidence of Cooney's consciousness guilt and to provide context for communications made in the aftermath of the arrest, the evidence consists of several emails and limited testimonial evidence, and occurs within the narrative of the charged conspiracy.

## II. The Court Should Not Expand Its Prior Ruling

The Court should reject Cooney and Archer's efforts to expand the scope of the Court's prior ruling regarding John Galanis and Gary Hirst's Gerova convictions, to include Jason Galanis's arrest.

First, the Court's April 13 ruling, although making a passing reference to "the arrests and convictions of Mr. Hirst and John and Jason Galanis in Gerova," (4/13/18 Tr. at 25), was clearly and unmistakably focused on the convictions of Gary Hirst and John Galanis, both of whom were then anticipated to be trial defendants, and the resulting prejudice to *those two defendants*. The Court noted:

- "the substantial prejudice that would result from jurors in one criminal prosecution hearing that a jury in a previous matter had *convicted two of the defendants for engaging in a scheme to defraud*" (*id.* at 26) (emphasis added).

- "I think it is too prejudicial. *They were convicted before another jury in another case*." (*id.* at 27) (emphasis added).

- "[M]aybe there is evidence that could come in about their knowledge of his misconduct in the past that's not so prejudicial as to tell this jury that *John Galanis and Mr. Hirst were previously convicted . . . "* (*id.* at 28-29) (emphasis added).

- "So maybe there is a way to get in the fact that they knew about it without getting in the fact that *they were convicted of fraud themselves*." (*id.* at 29).

---

[1] The Government would be willing to stipulate that the Gerova investigation concerned neither Mr. Archer nor Mr. Cooney; that neither Mr. Archer nor Mr. Cooney were subjects of the Gerova investigation; and/or that the Government's investigation into Gerova was not public until September 24, 2015, the day charges were unsealed and Galanis was arrested.

Further, the Court's ruling was decidedly not focused on *Jason* Galanis. To the contrary, in the same colloquy, the Court recognized that "frankly, there is going to be a lot of it, I imagine, that is going to come in anyway about Jason Galanis and his conduct in the past." (*Id.* at 29).

In short, the Court's ruling clearly concerned, and was correctly understood by the Government as concerning, the Gerova convictions of then-trial defendants Gary Hirst and John Galanis. The Government proceeded in its trial preparation in reliance on that (correct) understanding of the Court's ruling.

First, the Government's April 18, 2018 letter, which asked the Court to re-consider its April 13 ruling, focused only why the Court should allow evidence of Gary Hirst and John Galanis's convictions and involvement in Gerova. (*See, e.g.*, 4/18/18 Ltr. at 5 ("In short, although not identical frauds, Wakpamni and Gerova are sufficiently similar to make Gerova probative of John Galanis's and Hirst's knowledge and intent . . . . in seeking to introduce evidence of Hirst and John Galanis's conviction, the Government was and is seeking to present the Gerova-related evidence in a streamlined, efficient fashion.").[2] That letter did not revisit whether the mere fact of Galanis's Gerova arrest could be admitted, because the Government correctly understood that evidence was not precluded by the Court's April 13 ruling.

Second, at the final pre-trial conference, the Court explained that it had "not changed [its] thinking as to the Gerova evidence." (5/16/18 Tr. at 9). The Government then made clear its understanding that Jason Galanis's September 2015 arrest, "without reference to any defendant's involvement in that arrest," was not encompassed by the Court's 404(b) ruling and remained "direct proof." (5/16/18 Tr. at 10). Although the Court did not return to that issue at the conference, the defense was clearly on notice about the Government's understanding of the ruling.

Third, on May 18, the Government re-produced redacted versions of several exhibits in light of the Court's rulings at the final pre-trial conference. This exhibits included the version of GX 2103, which is attached hereto as Exhibit A. Consistent with the Government's understanding of the Court's Gerova ruling, the redactions removed references in the SEC press release to Gary Hirst, John Galanis, and other members of the Galanis family—but not Jason Galanis. As evidenced by the email below in which counsel for defendant Archer asks the Government to change the black redactions to white redactions, defense counsel clearly received and reviewed these newly redacted exhibits and thus was on notice of that the Government viewed evidence of Jason Galanis's September 2015 arrest as admissible, further undercutting any claim of surprise:

---

[2] Archer takes out of context the Government's statement in a footnote in the April 18 letter that "the Government is not now asserting that the Gerova evidence is relevant against Archer," (Archer Ltr. at 3, quoting ECF No. 417 at 4 n.4). The "Gerova evidence" at issue concerned the discovery in the Gerova case, which Archer had sought in discovery as potential *Brady* material. The Government is not contending, either then, now, or ever, that investigative materials gathered in Gerova—as opposed to the mere fact of Galanis's arrest on September 24, 2015—are relevant to Mr. Archer.

| | |
|---|---|
| From: | Matthew L. Schwartz <mlschwartz@BSFLLP.com> |
| Sent: | Friday, May 18, 2018 7:54 PM |
| To: | Sheinwald, Ellie (USANYS) [Contractor]; paulanotari@aol.com; Abraham Hassen; dtouger@aol.com |
| Cc: | Mermelstein, Rebecca (USANYS); Quigley, Brendan (USANYS); Wissman, Eric (USANYS) [Contractor]; Tekeei, Negar (USANYS) |
| Subject: | RE: US v. Galanis et al |

Thank you. For the exhibits that you have redacted, could you please use white redactions rather than black, as we previously requested?

---

From: Sheinwald, Ellie (USANYS) [Contractor] [mailto:Ellie.Sheinwald@usdoj.gov]
Sent: Friday, May 18, 2018 5:47 PM
To: paulanotari@aol.com; Abraham Hassen; Matthew L. Schwartz; dtouger@aol.com
Cc: Mermelstein, Rebecca (USANYS); Quigley, Brendan (USANYS); Wissman, Eric (USANYS) [Contractor]; Tekeei, Negar (USANYS)
Subject: US v. Galanis et al

Counsel:

I will be uploading new government exhibits, 3500 material, and a discovery production to USA FX shortly. I am attaching our updated 3500 list and exhibit list.

Best,

Ellie

In short, the Court's original ruling applied only to Gary Hirst and John Galanis's convictions in Gerova; it was correctly understood as such by the Government; the defendants were well aware of the Government's understanding and did nothing to challenge or clarify the Court's ruling; the defendants have not been prejudiced by any alleged misunderstanding with respect to the Court's rulings; and evidence of Jason Galanis's September 2015 arrest remains highly relevant and admissible. Accordingly, the Court should not expand the scope of its prior ruling.

    Respectfully submitted,

    ROBERT KHUZAMI
    Attorney for the United States, Acting Under
    Authority Conferred by 28 U.S.C. § 515

By: /s/ Brendan F. Quigley
    Rebecca Mermelstein
    Brendan F. Quigley
    Negar Tekeei
    Assistant United States Attorneys
    (212) 637-2360/2190/2442

cc:    Counsel of record (via ECF)