

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 30, 2018

**BY EMAIL AND ECF**
The Honorable Ronnie Abrams
United States District Judge, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:    **United States v. John Galanis, et al.**, S3 16 Cr. 371 (RA)

Dear Judge Abrams:

The Government writes regarding the anticipated testimony of Michael Smith about the disclosures made to him on an April 23, 2015 phone call regarding conflicts of interest surrounding the purchase of the Wakpamni bonds on April 16, 2015.

On April 23, 2015, Smith participated in a conference call with Michelle Morton; Morton's business partner, Richard Deary; the prior owner of Atlantic, Ronald Sellers; and others.  During this call, Smith was told, *inter alia*, that Atlantic had purchased the Wakpamni bonds on behalf of OSERS.  Further, Smith was told the transaction presented a potential conflict of interest because two entities that benefitted from the bond sale—the placement agent and the annuity provider—were related to the entity that had provided financing to Atlantic's new owners, Morton and Deary, in connection with their acquisition of Atlantic.  Shortly thereafter, Smith informed Atlantic that he wanted the Wakpamni bond sold immediately out of OSERS' portfolio.  The Government also anticipates that Smith will testify that, had he known of the conflicts of interest before the bond was purchased, he would not have approved the purchase.

Smith's testimony about the disclosure regarding conflicts of interest is highly relevant and admissible as non-hearsay for at least three reasons.

First, the testimony is relevant to show the materiality of the failure to disclose the conflicts of interest.  The substantive securities fraud Count of the Indictment alleges, *inter alia*, that "the defendants engaged in a scheme to misappropriate the proceeds of several bond issuances by the WLCC and also caused investor funds to be used to purchase the bonds . . . *without disclosure to those investors of material facts*, *including the existence of multiple conflicts of interest . . . .*"

Smith's testimony that he learned about the conflicts of interest involving the placement agent, the annuity provider, and Atlantic's financial backers, and found them highly significant— indeed, resulting in his near-immediate request for Atlantic to liquidate the Wakpamni position— is thus highly relevant evidence of the materiality of the failure to disclose those conflicts.

The Second Circuit's decision in *United States* v. *Cuti*, 720 F.3d 453 (2d Cir. 2013) is instructive.  In that case, the defendant, charged with accounting fraud, challenged the testimony of two accountants who testified "as to how they had accounted for the proceeds from the fraudulent transactions; how they would have accounted for the transactions had they been aware of the full facts; and how the material information that was withheld from them led to misstatements in the company's financial statements."  *Cuti*, 720 F.3d at 456.  In rejecting that challenge, the Second Circuit explained that, "a witness may testify to the fact of what he did not know and how, if he had known that independently established fact, it would have affected his conduct or behavior. . . ."

Similarly, in *United States* v. *Tagliaferri*, 13 Cr. 115 (RA), a securities and wire fraud trial involving a defendant's undisclosed conflict of interest, the Government asked multiple investor witnesses on direct examination whether they would have invested with the defendant had they known about the undisclosed conflict of interest.  (*See*, *e.g.*, 7/1/14 Trial Tr. at 819, Doc. 69 (Q: "If you had known that the defendant was receiving a portion of your funds in exchange for investing your money . . ., would you have done anything differently? A: Yes . . .  I likely would have taken the accounts —taken the money elsewhere.").

The Government here is seeking to do nothing more than what the Second Circuit approved in *Cuti*.  Under *Cuti*, it is clearly proper for the Government to ask Mr. Smith, "If you had known beforehand that the placement agent and the annuity provider were related to the entity that had provided financing to Atlantic's new owners, would you have approved the investment in the Wakpamni bonds?"  There is nothing remotely improper or inappropriate to asking Smith about his reaction to having actually, as to opposed to hypothetically, learned that information.

Second, and relatedly, the testimony is relevant for the non-hearsay purpose of explaining the disclosure's effect on Smith and his subsequent actions in attempting to liquidate the Wakpamni bonds.  *United States* v. *Rowland*, 826 F.3d 100, 115 (2d Cir. 2016) ("The statement was offered for its effect on the listeners, not its truth, and was therefore not hearsay.").

Third, the testimony is relevant to Michelle Morton's state of mind.  Although Morton is not a trial defendant, she remains charged as a co-conspirator and her state of mind is thus relevant to establishing the existence of the charged conspiracy.  In *United States* v. *Kaufman*, for instance, Judge Furman admitted recorded conversations involving a co-conspirator who was not a trial defendant, as probative of the co-conspirator's state of mind, finding the fact that the trial defendant was not involved in those conversations "of no moment."  *United States* v. *Kaufman*, No. 13 Cr. 411 (JMF), 2014 WL 2048198, at *10 (S.D.N.Y.  May 19, 2014) ("Thus, the relevance of [the non-trial defendant co-conspirator's] state of mind in the period leading up to [the events giving rise to the charged conduct] was anything but 'minimal' . . . .  The fact that [the trial defendant] herself was not involved in the recorded conversations at issue is of no moment.").  So too here.  Morton's presence in a conversation in which conflicts of interest were disclosed is relevant to her knowledge of those conflicts, and thus to her state of mind.

In short, Smith's testimony about what he was told about the conflicts of interest during a call with Morton and others is highly relevant and should be admitted for the reasons stated above.


                                        Respectfully submitted,

                                        ROBERT KHUZAMI
                                        Attorney for the United States, Acting Under
                                        Authority Conferred by 28 U.S.C. § 515

                                   By:  /s/ Brendan F. Quigley_____
                                        Rebecca Mermelstein / Brendan F. Quigley
                                        Negar Tekeei
                                        Assistant United States Attorneys
                                        (212) 637-2360/2190/2442

cc:     Counsel of record (via email and ECF)