IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Civil Action No. 2:13-CV-05968-RBS

PATRICIA BOOTH, on Behalf of Herself and
All Others Similarly Situated,

        Plaintiff,

vs.

BMO HARRIS BANK, N.A., FIRST
INTERNATIONAL BANK & TRUST, a
North Dakota-Chartered Bank, and NORTH
AMERICAN BANKING COMPANY, a
Minnesota State-Chartered Bank,

        Defendants.

## DECLARATION OF RAYCEN RAINES IN SUPPORT OF DEFENDANT BMO HARRIS BANK, N.A.'S MOTION TO COMPEL ARBITRATION AND TO STAY LITIGATION

I, **RAYCEN RAINES,** hereby declare and state as follows:

1. I am an employee of **WLCC II**, an entity wholly owned and operated by the Oglala Sioux Nation of Pine Ridge Reservation. I make this declaration in support of BMO Harris Bank, N.A.'s Notice of Intent to Compel Arbitration. I make this declaration based on personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify to the following facts.

2. I have been employed with **WLCC II** since **2012** and currently serve as its Commercial Director. **ZENDORA INTERNATIONAL S.R.L.**("Zendora") operates as a shared service provider for MyCashAdvance.com ("My Cash Advance"). My Cash Advance is a lending entity also wholly owned and operated by **WLCC II**. The shared services **ZENDORA** provides for My Cash Advance and its lending portfolios include: employee staffing, human

resources, information technology—including web and software maintenance—customer service, collections, accounting, project management, and strategic planning.

3. I understand that Plaintiff Patricia Booth has brought suit based on a loan made to her by My Cash Advance. Through my employment with **WLCC II** and in connection with **ZENDORA**'s provision of services to My Cash Advance, I have access to and gained familiarity with My Cash Advance's loan documents and record-keeping systems for customer account information.

4. My Cash Advance performs its lending operations online through a website.

## Loan Application and Loan Documents

5. At My Cash Advance, the loan application process begins when a customer proactively searches online for a short-term loan. Individuals who obtain the loans must satisfy four criteria. First, they must be U.S. citizens at least 18 years of age. Second, they must be gainfully employed with an income of at least $1,000 per month. Third, they must have a current checking account and thus an established banking relationship. Fourth, they have to be functionally capable of navigating the Internet due to the online nature of the relationship extended.

6. When beginning the loan application process on My Cash Advance's website, a customer first views the homepage. On the homepage, the customer clicks "Apply Now" to begin the loan application process. A true and correct copy of the My Cash Advance homepage as it would have appeared on July 10, 2013 is attached as Exhibit 1.

7. A customer begins the loan application process by providing information and proceeding through a series of sequential pages of questions covering his or her: (1) Personal Information; (2) Contact Information; (3) Employment Information; (4) Bank Information.

Following these questions is a Terms and Conditions section with a scrollable text box entitled "CONSENT TO ELECTRONIC DISCLOSURE." Below the Disclosure section, the customer must acknowledge by checking a series of boxes that he or she has read and agreed to all of the notices and disclosures and that he or she consents to be contacted by various means. A true and correct copy of the Application page as it would have appeared on July 10, 2013 is attached as Exhibit 2. To submit the application for processing, the customer clicks "Submit Application."

8. Once the customer completed the application process and My Cash Advance tentatively approved the customer's loan, the customer would then be directed to the "Change Loan Amount" page where he/she will be prompted to change the loan amount if he /she requires a lesser amount.

9. After the customer has completed the application process and My Cash Advance has tentatively approved the customer's loan, the customer is then directed to the "Review and Sign the Loan Agreement" page. A true and correct copy of the Review and Sign the Loan Agreement page as it would have appeared on July 10, 2013 is attached as Exhibit 3.

10. The customer was also shown a "Promissory Note and Lending Disclosure Statement" prominently disclosing the cost of the credit to the customer in accord with the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* By electronically signing the application, the customer confirms that he/she has read and accepted the terms and conditions which include the following documents: Application, Loan Agreement, Promissory Note and Lending Disclosure Statement (which includes an arbitration provision clause), Payment Authorization and Election, Right to cancel and Extended Payment Note. Finally, the customer *types his or her full name* to provide an electronic signature to agree and accept the loan from My Cash Advance pursuant to the terms and provisions of the loan documents and type in the phrase "I AGREE". If a customer does not

properly check all of the required boxes to confirm he or she has read and accepted the terms of the loan documents, the customer's application will not be deemed acceptable and will not be processed.

11. If the loan application process is completed by the customer and the loan is subsequently approved by My Cash Advance, the customer is then directed to a "Thank You and Print Documents" page, from which the customer could print the following loan documents: Loan Agreement Promissory Note and Disclosure, Payment Authorization and Election, Right to Cancel, Extended Payment Loan Agreement, Promissory Note and Disclosure. A true and correct copy of the Thank You and Print Confirmation page as it would have appeared on July 10, 2013 is attached as Exhibit 4.

### Plaintiff Patricia Booth

12. In connection with **ZENDORA**'s provision of services to My Cash Advance, **ZENDORA** keeps, in its ordinary course of business and on behalf of **WLCC II**, records of customer loan agreements. I am familiar with those records in the course of my work for **WLCC II**. I have reviewed those records to determine the date on which Plaintiff Patricia Booth received the loan from My Cash Advance.

13. Patricia Booth alleges that she applied for and received a $600 loan from My Cash Advance on or about July 10, 2013. (Compl. ¶ 78.) **ZENDORA** has a record of a Consumer Loan Agreement for $600 dated July 10, 2013 from Plaintiff Booth. A true and correct copy of Plaintiff Booth's Consumer Loan Agreement, dated July 10, 2013, is attached as Exhibit 5.

## Arbitration Provision

14. Customers who apply and receive a loan from My Cash Advance agree to an arbitration provision. (Exhibit 5.) The arbitration provision states that a customer agrees to arbitrate, among other disputes, any "federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the Loan Agreement." (Exhibit 5.)

15. The arbitration provision provides a consumer with the opportunity to opt out of the provision by sending written notice within thirty (30) days of the loan being funded (Exhibit 5.)

16. Plaintiff Booth never opted out of the arbitration provision to which she agreed in her Consumer Loan Application.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 11, 2013.

_____
**RAYCEN RAINES**