

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

June 23, 2018

**BY EMAIL AND ECF**
The Honorable Ronnie Abrams
United States District Judge,
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:   United States v. John Galanis, et al., S3 16 Cr. 371 (RA)

Dear Judge Abrams:

The Government writes in advance of the anticipated testimony of Seth Fliegler, who the Government understands is the only witness defendant Archer intends to call on Monday.

Mr. Fliegler[1] will apparently testify as a summary witness regarding various financial transactions between (i) Archer and Rosemont Seneca Bohai, on the one hand; and (ii) US Bancorp; Wealth Assurance Private Client, Bonwick Capital, Burnham Financial Group, Alix Partners, Teneo Consulting, Thorsdale Fiduciary and Guaranty, Francisco Martin; Seymour Capital; and Thunder Valley Engineering, on the other.  (*See* DX 9003).

Mr. Fliegler apparently intends to testify that the result of these transactions was that "Archer and RSB experienced a net loss of $826,142.36."  (DX 9003 at 6).

As a threshold matter, Fliegler's conclusions that "Archer and RSB experienced a net loss of $826,142.36," *see id.*, and  that "Mr. Archer and RSB are in a loss position," *see* DX 9003 at 1, are not appropriate in a summary chart that the defense seeks to admit as evidence.  In *United States* v. *Janati*, 374 F.3d 263 (4th Cir. 2004), for example, the court distinguished between (i) "'pedagogical'" summary charts, which may "include witnesses' conclusions or opinions" but which are not admissible as evidence and (ii) summary charts used to summarize the content of voluminous records, which are admissible as evidence under Rule 1006.  *See* 374 F.3d at 273; *see also United States* v. *Milkiewicz*, 470 F.3d 390, 397 (1st Cir. 2006); *United States* v. *Dish Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014) (explaining that summary charts admissible as evidence "must be a compilation of data without opinion").  Accordingly, the Court should require Archer to either (i) delete Fliegler's opinions from the charts themselves or (ii) not admit the charts as evidence.

---

[1] As the Court may recall, Mr. Fliegler previously testified in the defense case as a summary witness on various changes to the organizational structure of Burnham Financial Group, Burnham Securities, and Burnham Asset Management around the time of the charged offenses.

      Moreover, Fliegler's charts do not address Archer's receipt of Code Rebel shares. While Fliegler's conclusion is that "Archer and RSB are in a loss position," one inference Archer clearly seeks to have the jury draw from Fliegler's testimony is that Archer would not have "take[n] money out of [his] own pocket and put it into the scheme" if he knew there was a fraud afoot. (Tr. 97-98 (opening of Mr. Schwartz)).

      The Code Rebel evidence is thus directly relevant to Fliegler's testimony in at least two ways.

      For one, it is an appropriate basis for impeachment. Fliegler's analysis includes Archer and RSB's transactions with many people and entities mentioned in this case, including US Bancorp; Wealth Assurance Private Client, Bonwick Capital, Burnham Financial Group, Alix Partners, Teneo Consulting, Thorsdale Fiduciary and Guaranty, Francisco Martin, Seymour Capital, and Thunder Valley Engineering. It does not, however, include anything about the Code Rebel shares, which Archer received as a result of his relationship with Jason Galanis. It is certainly fair game for the Government to inquire as to why Fliegler chose to include certain entities in his analysis (some of which have, at best, a tangential relationship to the relevant facts), but not others, including Code Rebel.

      Second, the Code Rebel evidence rebuts the inference that Archer would not have "take[n] money out of [his] own pocket and put it into the scheme" if he knew a fraud was occurring. (Tr. 97-98 (opening of Mr. Schwartz)). Evidence that, through his association with Galanis, Archer received a note, which was then converted into Code Rebel shares worth $19 million at one point, *see* GX 301 at 156 (in evidence), provides a powerful explanation as to why Archer would have continued putting money into Galanis-associated entities—because he believed he would ultimately profit substantially.

      As such, the Court should either (i) preclude Fliegler's testimony or (ii) allow the Government to cross-examine Fliegler regarding Code Rebel and introduce Code Rebel-related evidence in a rebuttal case.

                             Respectfully submitted,

                             ROBERT KHUZAMI
                             Attorney for the United States, Acting Under
                             Authority Conferred by 28 U.S.C. § 515

By: _____
     Rebecca Mermelstein
     Brendan F. Quigley
     Negar Tekeei
     Assistant United States Attorneys
     (212) 637-2360/2190/2442

cc:    Defense Counsel (via e-mail)