

MATTHEW L. SCHWARTZ
Tel.: (212) 303-3646
E-mail: mlschwartz@bsfllp.com

June 23, 2018

**BY ECF**

Hon. Ronnie Abrams
United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: *United States v. Galanis*, S3 16 Cr. 371 (RA)**

Dear Judge Abrams:

I represent Devon Archer. I write to respond to the government's most recent letter, which seeks an order precluding the testimony of summary witness Seth Fliegler, and/or reconsidering the Court's prior decision with respect to Code Rebel [ECF No. 527]. The government's application should be denied.

First, the government's attempt to re-litigate the Court's Code Rebel ruling should be rejected. The Court already rejected the government's attempt to introduce this evidence, even though it argued – repeatedly and strenuously – that the defendants' opening statements justified its admission. *See* Tr. at 1493-94 (excluding Code Rebel evidence, even in light of the fact that "[b]oth defendants opened in part on a theory that they did not make any money in this alleged conspiracy."); *see also* Tr. at 974 (government arguing that Code Rebel evidence should be admitted because "the defendants [got] up in opening and sa[id] we didn't get anything, we lost money, when they in fact had received all of these shares"); ECF No. 492, at 3-4 (government arguing that "the significance of this evidence has only increased. That is because both Archer and Cooney argued extensively in their opening statements that they had not benefited from their participation in the charged scheme, but indeed, had lost money. . ."); ECF No. 494, at 2-3 ("Such evidence is all the more important in light of Archer's opening statement in which he falsely claimed to have lost money on this fraud. The Government is, of course, entitled to respond to allegations made by the defendant in his opening statement."); *id.* at 5 ("In short, the Government is entitled to show the jury the manner in which Archer and Cooney financially benefited from this fraud. To preclude such evidence – especially in light of the defendants' explicit arguments that their lack of profit evinces a lack of guilt – would pervert the jury's ability to accurately assess the guilt of these defendants."); *see generally* Tr. at 1490-95 (ruling of the Court, rejecting all of those arguments and others).

Nothing about Mr. Fliegler's proposed testimony counsels in favor of reevaluating the Court's prior decision, let alone coming to a different conclusion. Mr. Fliegler is a summary witness, meaning that he will be providing summaries of voluminous records, the overwhelming majority of which are already in evidence or subject to a business records stipulation. Presenting that evidence in summary form cannot open doors that were left closed by the introduction of the

evidence itself. Indeed, the government did not even try to make its current argument when Mr. Cooney presented his own summary chart, which served an identical purpose as Mr. Archer's.[1]

Moreover, the introduction of any Code Rebel evidence at this point in the trial would be so supremely prejudicial to Mr. Archer that it should be excluded even if the Court were otherwise swayed by the government's arguments. Mr. Archer can no longer cross-examine the fact witnesses who have knowledge of the Code Rebel evidence, including most significantly Francisco Martin – who of course is outside of the subpoena power of this Court, and who only testified the first time because the government promised him safe passage.[2]

The Court should also reject the government's request to edit the text of the chart. Mr. Archer's chart carefully avoids offering any opinions, and merely summarizes the underlying evidence. Thus, some of the charts are titled, accurately, "Mr. Archer and RSB are in a net loss position." This is simply a statement of the net accounting effect of the listed transfers, and is not presented as opinion or argument – the chart does not, for example, say "Devon Archer lost money." Moreover, there is nothing prejudicial, inflammatory, or confusing about the titles on Mr. Fliegler's charts. Similar summary charts are routinely admitted. *See, e.g.*, *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845 (10th Cir. 1985) ("There is evidence in the record to lay a foundation for the summary of actual losses as a compilation of business records admissible under Rule 1006."); *United States v. Stein*, 584 F. Supp. 2d 660, 662 (S.D.N.Y. 2008) (approving summary chart that identified "tax loss" to the IRS).

Indeed, the government's charts similarly had titles that reflected the conclusions depicted on them. For example, GX 4006 is titled "Proceeds of the Second Bond Series Sent Back to Thorsdale." The titles on Mr. Archer's slides are certainly no more argumentative than this, whereas the cases cited by the government bear no resemblance to this one. *See United States v. Janati*, 374 F.3d 263 (4th Cir. 2004) ("The district court has not definitively ruled on

---

[1] The government's argument that the Code Rebel evidence impeaches Mr. Fliegler's chart is also wholly without merit. As the government has repeatedly observed, a witness cannot be impeached with extrinsic evidence, which is what the Code Rebel evidence would be. More fundamentally, however, a witness cannot be impeached because he or she "chose" not to present evidence the Court had precluded. Such a "choice" does not reflect on the witness's credibility or decision-making, but rather reflects adherence to the Court's rulings. Cross-examining Mr. Fliegler with Code Rebel would serve only to question the Court's ruling, not to impeach Mr. Fliegler's credibility or competence.

[2] The government also repeats its theory that Mr. Archer somehow received $19 million of Code Rebel shares. As the government is aware, and as the Court previously recognized, Mr. Archer could still accurately argue that he lost money from Code Rebel on a cash basis, which is what Mr. Fliegler's analysis is. The undisputed fact is that Mr. Archer paid several hundred thousand dollars of his own money to invest in Code Rebel, and lost it all. *See* Tr. 1494 (THE COURT: "The defendants did not sell the shares for gain but the introduction of this evidence may mislead the jury into thinking they profited on the market value of the shares that they held."). Of course we have not depicted that fact on the summary chart, in an attempt to stay far away from any evidence of Code Rebel, consistent with the Court's ruling.

any charts, expressing at the fourth pretrial conference: 'I have told the Government that in principle they may use summary charts. I don't know whether they are admissible or they are not admissible. We will have to look at the charts when they come.' The court's general ruling that charts may be used, leaving specified rulings on them until later, does not constitute an abuse of discretion, and on this we affirm.");[3] *United States v. Milkiewicz*, 470 F.3d 390 (1st Cir. 2006) (in tax fraud prosecution, approving of summary charts that calculated tax consequences of certain income and expense items); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916 (C.D. Ill. 2014) (in case alleging violations of "Do Not Call" registry, summary chart that "opined repeatedly that certain calls were violations or violative" were improper under Rule 1006).

In sum, Mr. Fliegler should be permitted to testify using the current version of his charts, and the government should be precluded from raising Code Rebel in its cross-examination.

Thank you for your consideration.

Respectfully,

 /s/  Matthew L. Schwartz
Matthew L. Schwartz

---

[3] *Janati* is a remarkable outlier, and it is notable that it is the best case the government can find. In that case, the government took an interlocutory appeal at the time of trial of a complex, 61-count healthcare fraud and conspiracy case after the district court gave the government only three trial days to put on its case, and limited the government to evidence of the overt acts identified in the indictment. Even so, the Court of Appeals held only the later was error – of course the government's proof is not limited to the overt acts alleged in the indictment – and that the rest of the district court's ruling was within its "broad discretion to manage the scope of this large conspiracy case." 374 F.3d at 267.