LAW OFFICES
**PAULA J. NOTARI**
125 PARK AVENUE
8th Floor
NEW YORK, NEW YORK 10017
---------
Tel. (646) 943-2172

May 31, 2023

BY ECF and Email

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

*Re: United States v. Bevan Cooney, S1 16 Cr. 371 (RA)*

Dear Judge Abrams:

    This letter is respectfully submitted on behalf of Bevan Cooney, the defendant in the above-entitled matter to request that the Court approve modification of his conditions of supervised release which is set to expire in May of 2024. Based on the extenuating circumstances presented herein, Mr. Cooney is requesting that the Court modify his conditions of supervision to allow travel to the following states without getting prior authorization from the United States probation department: Michigan, Ohio, Nevada, California, Idaho, Washington, and New York. Additionally, Mr. Cooney is requesting that the Court terminate his drug testing condition. Notably, Mr. Cooney's pretrial conditions of bond allowed him to freely travel to the Southern and Eastern Districts of New York, all districts in Michigan, all districts in California, the district of Nevada, the district of Montana (there is only one district in Montana) and with the consent from pretrial services all districts in Ohio. See Exhibit G (ECF Doc 32) and (ECF Doc 97). [1]

**Background**

    Mr. Cooney was convicted after a six-week jury trial of substantive securities fraud and conspiracy to commit securities fraud. Mr. Cooney was sentenced on July 31, 2019, to 30 months to be followed by a term of supervised release of 3 years. See Exhibit H (Judgement). The Court

---

[1] Undersigned counsel for Mr. Cooney was appointed later in Mr. Cooney's case after his bond conditions had been settled and did not realize at the time of sentencing that Mr. Cooney needed to travel to the requested areas. Mr. Cooney has tried not to inconvenience the probation department or the Court with repeated travel requests but at this juncture, his personal needs require that he travel to the requested locations as set forth herein.

1 | P a g e

also recommended Mr. Cooney's participation in the Bureau of Prison's (BOP) 500 drug program. Mr. Cooney self-surrendered to FCI Sheridan Oregon on October 19, 2019. He applied to and was accepted into the RDAP program at that facility. In approximately January of 2020 he began the RDAP program. He completed approximately two months in the RDAP program when COVID struck. Although he was required to complete much of the remainder of the program under lockdown conditions due to the pandemic, he completed the 500-hour program as planned. It is difficult to summarize for the Court, the stressful circumstances of Mr. Cooney's incarceration during the early stages of the pandemic. The Bureau of Prisons reacted to the pandemic by installing quarantines, locking down all inmates at times 24 hours per day, 7 days per week, prohibiting phone calls with lawyers and family, allowing showers once every three days, and no clean clothing for up to a week. Mr. Cooney explains that for approximately two months, he was on lockdown in the J Unit in a 9x6 cell, and the conditions were the most harsh and inhumane treatment he could have ever imagined. For example, he was not released from his cell except for 10 to 20 minutes every three days, to take a shower in a location that he described as filthy. The showers were ice cold; there was no hot water. The cell area was continuously cold and uncomfortable. During this lockdown, he was provided only sparse, cold meals, and he was required to eat all of his exclusively cold meals in his cell. The toilet in his cell did not work properly and flushed in limited intervals. He was required to eat his food in a foul-smelling, cell shared with another inmate. He was aware of the pandemic and fearful that his fragile father would get Covid and succumb to the illness while he was incarcerated. During this time, Mr. Cooney was on continuous lock-down, and he had virtually no communication with the outside world for extended periods of time.

Notwithstanding, the harsh, inhumane conditions of Mr. Cooney's confinement, he served his time and did not file a motion with this Court requesting compassionate release. Mr. Cooney had no disciplinary or other issues while in custody at FCI Sheridan. After serving 15 months in prison at FCI Sheridan, he was sent to a BOP halfway house in Billings Montana known as the Alpha House for an additional term of 6 months where he was immediately placed on a 21-day quarantine. Mr. Cooney maintained perfect compliance at the halfway house. In May of 2021, Mr. Cooney was released from the halfway house to his residence in Missoula, Montana where he has since resided while on supervised release.

**Current Status**

███████████████████████████████████████████████████████████. Mr. Cooney is currently limited in his ability to work because he is the primary caregiver to his 81-year-old father who is suffering ████████████████████████████████████████████████████████████████. See Exhibit E. Mr. Cooney is required to manage all of his father's medical care and transportation to doctor's appointments and ████████████████████. Mr. Cooney has maintained perfect compliance with the conditions of his release since his arrest on the instant charges in May of 2016 until the present time. He is currently living with his new wife and her three children. Although his ability to work has been impacted by his father's health and his felony conviction, he has successfully paid his monthly restitution payments towards the victims in compliance with this Court's order, and he will continue to do so. Mr. Cooney faithfully pays his monthly child support payments but as detailed herein ██

███████████████████████           See Exhibit D.

**Hardship Caused by Continued Term of Supervised Release**

Despite the challenges of Mr. Cooney's conviction and sentence, Mr. Cooney has made an exemplary transition to the community and is thriving except the existing terms of his supervised release relating to drug testing and travel continue to serve as a hardship in his life towards leading a normal life as detailed below.

> **A. Notwithstanding the fact that Mr. Cooney has never tested positive for drugs since his arrest in 2016, the U.S. probation department has employed an onerous drug testing regiment which continues until the present time.**

As part of the Court's conditions of supervised release, this Court required one drug test within 15 days of Mr. Cooney's release and at least two periodic drugs tests thereafter. See Exhibit H (page 3 of Judgment). After Mr. Cooney's release from the halfway house, the probation department required a ten-month random drug testing where Mr. Cooney had to call a phone number every morning, seven days per week. At times, if his number was randomly chosen, he was required to drive 25 minutes to give a urine sample. On some weeks he was required to travel three days in one week, to give a urine sample. Mr. Cooney's drug tests have all been negative since his arrest in the underlying case dating back to May of 2016, and Mr. Cooney has successfully completed the 500 RDAP program detailed above. These strict conditions of drug testing persisted for 10 months, and the probation department continues to randomly show up at his home ████████████████████████████████████████.



**B. The probation department has denied routine travel requests for personal circumstances and made it extremely difficult for Mr. Cooney to resume a normal life since he has been released from prison.**

Mr. Cooney cannot currently travel even 25 minutes from his home (within his home state of Montana) to a local lake house owned by his wife's family without getting prior authorization for an overnight visit. ████████████████████████████████████ Although they fully hoped to go on a honeymoon, the probation department denied Mr. Cooney's request to travel for his honeymoon even though the trip was being paid for by his future wife's American Express reward miles and they were going to stay with friends. Mr. Cooney was told that he could not travel unless he could make a significant restitution payment to the victims in this case.

As another example, Mr. Cooney was recently denied permission to participate in his mother's memorial service in San Francisco, unless he first contributed additional restitution to his victims resulting in a $500 payment. See Exhibit A. While Mr. Cooney understands that his supervised release term is not intended to be a pleasant experience, Mr. Cooney is not a threat to the community, and he was simply trying to do his part as a family member to help his family properly pay tribute to his deceased mother; his efforts to participate in an out-of-town memorial service.

**C. Mr. Cooney respectfully requests that the Court allow him to freely travel to Ohio and Michigan so that he can freely visit his children and begin the process to achieve custody and visiting rights pertaining to his minor children.**

Most significantly, Mr. Cooney must be able to urgently travel freely to Ohio, ████████



See Exhibit B.



D. **In light of personal circumstances Mr. Cooney is also in need of travelling out-of- state to the following locations due to personal circumstances**

    (i)    **Idaho and Washington:** ████████████████████████████████████████████████████ This is an ongoing need and therefore he would respectfully ask the Court to grant permission for him to travel for this purpose.

    (ii)    **Nevada and California:** Mr. Cooney's extended family resides predominantly in Nevada and California. ████████████████████████████ As already noted above, Mr. Cooney's request to travel to California to spread his mother's ashes with his family members was denied by the probation department until Mr. Cooney paid additional restitution to his victims. ████████████████████████████; Mr. Cooney would like to take his elderly father to Nevada to visit his brother who is recovering.

      (iii)    **New York**: Mr. Cooney would like to visit his longtime friends in New York this summer who recently lost their father.

Mr. Cooney's period of supervised release terminates in May of 2024. Short of asking this Court to terminate his term of supervised release early we are asking the Court to consider modifying the above conditions to make life easier for Mr. Cooney to maintain his responsibilities to his minor children, his family and his close friends who have supported him. Although external to Mr. Cooney's progress, there are a few other salient points submitted for your consideration.

At sentencing, the Court may recall that it granted Mr. Cooney a minor role adjustment finding that he was "substantially less culpable than the average participant in the Wakpamni bond fraud." (Dkt. 801, Page 10 Bevan Cooney Sentencing Tr. at 30). The Court recognized Mr. Cooney's record of good conduct prior to his arrest and sentenced him far below his guideline range. The Court even noted that she was confident that Mr. Cooney would be successful on supervised release. Mr. Cooney has essentially been supervised by this Court since May of 2016 without a single incident, and there can be no doubt that the harsh conditions of confinement during the pandemic served as both punishment and deterrence towards him ever re-offending. As noted herein, he takes seriously his commitment to make his monthly restitution payments. Most importantly we urge the Court to consider that Mr. Cooney has demonstrated that he is capable of managing his own affairs in a constructive, law-abiding fashion without the intervention of extended supervision.

Based on the foregoing we respectfully that the Court modify the conditions of Mr. Cooney's supervised release to: (1) terminate drug testing condition and (2) allow Mr. Cooney to freely travel Ohio, Michigan, Washington, California, Nevada, and New York without getting prior authorization from the probation department. Thank you for your consideration of this motion.

                                                              Respectfully submitted,
                                                             By:_____/s/_____
                                                             Paula J. Notari
                                                             Attorney for Bevan Cooney
                                                             125 Park Avenue, 8th Floor
                                                             New York, New York 10017
                                                             (646)943-2172 (Tel.)